# EXHIBIT "A"

> The Securities and Exchange Commission has not necessarily reviewed the information in this
> filing and has not determined if it is accurate and complete.
> The reader should not assume that the information is accurate and complete.

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM D

### Notice of Exempt Offering of Securities

| OMB APPROVAL | |
| --- | --- |
| OMB Number: | 3235-0076 |
| Expires: | June 30, 2012 |
| Estimated average burden hours per response: | 4.00 |

---

## 1. Issuer's Identity

CIK (Filer ID Number)

Previous Names    [X] None

Entity Type

0001484888

[X] Corporation
[ ] Limited Partnership
[ ] Limited Liability Company
[ ] General Partnership
[ ] Business Trust
[ ] Other (Specify)

Name of Issuer

Emerge Surgical, Inc.

Jurisdiction of Incorporation/Organization

COLORADO

Year of Incorporation/Organization

[ ] Over Five Years Ago
[X] Within Last Five Years (Specify Year) 2010
[ ] Yet to Be Formed

---

## 2. Principal Place of Business and Contact Information

Name of Issuer

Emerge Surgical, Inc.

| Street Address 1 | Street Address 2 | |
| --- | --- | --- |
| 283 COLUMBINE ST. | SUITE 190 | |

| City | State/Province/Country | ZIP/PostalCode | Phone Number of Issuer |
| --- | --- | --- | --- |
| DENVER | CO | 80206 | 303-319-0907 |

---

## 3. Related Persons

| Last Name | First Name | Middle Name |
| --- | --- | --- |
| Stassen | Zachary | W. |

| Street Address 1 | Street Address 2 | |
| --- | --- | --- |
| 1616 14th Street | Apt. 4F | |

| City | State/Province/Country | ZIP/PostalCode |
| --- | --- | --- |
| Denver | CO | 80202 |

Relationship:  [X] Executive Officer  [X] Director  [ ] Promoter

Clarification of Response (if Necessary):

| Last Name | First Name | Middle Name |
|---|---|---|
| Marotta | John | P |
| Street Address 1 | Street Address 2 | |
| 464 Garfield | | |
| City | State/Province/Country | ZIP/PostalCode |
| Denver | CO | 80206 |

Relationship: ☐ Executive Officer  ☐ Director  ☒ Promoter

Clarification of Response (if Necessary):

Mr. Marotta is a founder of the Issuer and will become an executive officer and director of the Issuer upon completion of this offering.

## 4. Industry Group

☐ Agriculture

Banking & Financial Services
- ☐ Commercial Banking
- ☐ Insurance
- ☐ Investing
- ☐ Investment Banking
- ☐ Pooled Investment Fund

  Is the issuer registered as an investment company under the Investment Company Act of 1940?
  ☐ Yes          ☐ No
- ☐ Other Banking & Financial Services

☐ Business Services

Energy
- ☐ Coal Mining
- ☐ Electric Utilities
- ☐ Energy Conservation
- ☐ Environmental Services
- ☐ Oil & Gas
- ☐ Other Energy

Health Care
- ☐ Biotechnology
- ☐ Health Insurance
- ☐ Hospitals & Physicians
- ☐ Pharmaceuticals
- ☒ Other Health Care

☐ Manufacturing

Real Estate
- ☐ Commercial
- ☐ Construction
- ☐ REITS & Finance
- ☐ Residential
- ☐ Other Real Estate

☐ Retailing

☐ Restaurants

Technology
- ☐ Computers
- ☐ Telecommunications
- ☐ Other Technology

Travel
- ☐ Airlines & Airports
- ☐ Lodging & Conventions
- ☐ Tourism & Travel Services
- ☐ Other Travel

☐ Other

## 5. Issuer Size

| Revenue Range | OR | Aggregate Net Asset Value Range |
|---|---|---|
| ☒ No Revenues | | ☐ No Aggregate Net Asset Value |

☐ $1 - $1,000,000

☐ $1,000,001 - $5,000,000

☐ $5,000,001 - $25,000,000

☐ $25,000,001 - $100,000,000

☐ Over $100,000,000

☐ Decline to Disclose

☐ Not Applicable

☐ $1 - $5,000,000

☐ $5,000,001 - $25,000,000

☐ $25,000,001 - $50,000,000

☐ $50,000,001 - $100,000,000

☐ Over $100,000,000

☐ Decline to Disclose

☐ Not Applicable

## 6. Federal Exemption(s) and Exclusion(s) Claimed (select all that apply)

☐ Rule 504(b)(1) (not (i), (ii) or (iii))

☐ Rule 504 (b)(1)(i)

☐ Rule 504 (b)(1)(ii)

☐ Rule 504 (b)(1)(iii)

☐ Rule 505

☒ Rule 506

☒ Securities Act Section 4(6)

☐ Investment Company Act Section 3(c)

☐ Section 3(c)(1)        ☐ Section 3(c)(9)

☐ Section 3(c)(2)        ☐ Section 3(c)(10)

☐ Section 3(c)(3)        ☐ Section 3(c)(11)

☐ Section 3(c)(4)        ☐ Section 3(c)(12)

☐ Section 3(c)(5)        ☐ Section 3(c)(13)

☐ Section 3(c)(6)        ☐ Section 3(c)(14)

☐ Section 3(c)(7)

## 7. Type of Filing

☒ New Notice    Date of First Sale 2010-02-09   ☐ First Sale Yet to Occur

☐ Amendment

## 8. Duration of Offering

Does the Issuer intend this offering to last more than one year?   ☐ Yes ☒ No

## 9. Type(s) of Securities Offered (select all that apply)

☒ Equity

☐ Debt

☐ Option, Warrant or Other Right to Acquire Another Security

☐ Security to be Acquired Upon Exercise of Option, Warrant or Other Right to Acquire Security

☐ Pooled Investment Fund Interests

☐ Tenant-In-Common Securities

☐ Mineral Property Securities

☐ Other (describe)

## 10. Business Combination Transaction

Is this offering being made in connection with a business combination transaction, such as a merger, acquisition or exchange offer?    ☐ Yes ☒ No

Clarification of Response (if Necessary):

## 11. Minimum Investment

Minimum investment accepted from any outside investor $10,000 USD

## 12. Sales Compensation

| | |
|---|---|
| Recipient | Recipient CRD Number ☒ None |
| (Associated) Broker or Dealer ☒ None | (Associated) Broker or Dealer CRD Number ☒ None |
| Street Address 1 | Street Address 2 |
| City | State/Province/Country    ZIP/Postal Code |

State(s) of Solicitation (select all that apply)
Check "All States" or check individual States    ☐ All States    ☐ Foreign/non-US

## 13. Offering and Sales Amounts

Total Offering Amount    $1,500,000 USD  or ☐ Indefinite

Total Amount Sold         $200,000 USD

Total Remaining to be Sold $1,300,000 USD  or ☐ Indefinite

Clarification of Response (if Necessary):

## 14. Investors

☐ Select if securities in the offering have been or may be sold to persons who do not qualify as accredited investors, and enter the number of such non-accredited investors who already have invested in the offering.

Regardless of whether securities in the offering have been or may be sold to persons who do not qualify as accredited investors, enter the total number of investors who already have invested in the offering:    | 2 |

## 15. Sales Commissions & Finder's Fees Expenses

Provide separately the amounts of sales commissions and finders fees expenses, if any. If the amount of an expenditure is not known, provide an estimate and check the box next to the amount.

Sales Commissions $0 USD ☐ Estimate

Finders' Fees $0 USD ☐ Estimate

Clarification of Response (if Necessary):

No sales commissions or finders' fees are being paid.

## 16. Use of Proceeds

Provide the amount of the gross proceeds of the offering that has been or is proposed to be used for payments to any of the persons required to be named as executive officers, directors or promoters in response to Item 3 above. If the amount is unknown, provide an estimate and check the box next to the amount.

$325,000 USD [X] Estimate

Clarification of Response (if Necessary):

First year budgeted salaries of founders, a portion of which could be paid from proceeds of the offering.

## Signature and Submission

**Please verify the information you have entered and review the Terms of Submission below before signing and clicking SUBMIT below to file this notice.**

**Terms of Submission**

In submitting this notice, each issuer named above is:

- Notifying the SEC and/or each State in which this notice is filed of the offering of securities described and undertaking to furnish them, upon written request, in the accordance with applicable law, the information furnished to offerees.*

- Irrevocably appointing each of the Secretary of the SEC and, the Securities Administrator or other legally designated officer of the State in which the issuer maintains its principal place of business and any State in which this notice is filed, as its agents for service of process, and agreeing that these persons may accept service on its behalf, of any notice, process or pleading, and further agreeing that such service may be made by registered or certified mail, in any Federal or state action, administrative proceeding, or arbitration brought against it in any place subject to the jurisdiction of the United States, if the action, proceeding or arbitration (a) arises out of any activity in connection with the offering of securities that is the subject of this notice, and (b) is founded, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these statutes, or (ii) the laws of the State in which the issuer maintains its principal place of business or any State in which this notice is filed.

- Certifying that, if the issuer is claiming a Rule 505 exemption, the issuer is not disqualified from relying on Rule 505 for one of the reasons stated in Rule 505(b)(2)(iii).

Each Issuer identified above has read this notice, knows the contents to be true, and has duly caused this notice to be signed on its behalf by the undersigned duly authorized person.

For signature, type in the signer's name or other letters or characters adopted or authorized as the signer's signature.

| Issuer | Signature | Name of Signer | Title | Date |
|---|---|---|---|---|
| Emerge Surgical, Inc. | Zach Stassen | Zachary W. Stassen | Chief Operating Officer | 2010-02-22 |

*Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB number.*

* This undertaking does not affect any limits Section 102(a) of the National Securities Markets Improvement Act of 1996 ("NSMIA") [Pub. L., No. 104-290, 110 Stat. 3416 (Oct. 11, 1996)] imposes on the ability of States to require information. As a result, if the securities that are the subject of this Form D are "covered securities" for purposes of NSMIA, whether in all instances or due to the nature of the offering that is the subject of this Form D, States cannot routinely require offering materials under this undertaking or otherwise and can require offering materials only to the extent NSMIA permits them to do so under NSMIA's preservation of their anti-fraud authority.

# EXHIBIT "B"

# John Marotta, MBA

CEO of Emerge Medical, Inc

Greater Denver Area

|  |  |
|---|---|
| **Current** | • CEO at Emerge Medical, Inc |
| **Past** | • Regional Manager at Synthes<br>• Health Care at Johnson & Johnson |
| **Education** | • University of Dayton<br>• University of Denver - Daniels College of Business |
| **Connections** | 119 connections |
| **Industry** | Medical Devices |

# John Marotta, MBA's Experience

### CEO

**Emerge Medical, Inc**

(Medical Devices industry)

2010 — Present (1 year )

### Regional Manager

**Synthes**

(Public Company; Medical Devices industry)

2003 — 2010 (7 years )

### Health Care

**Johnson & Johnson**

(Public Company; JNJ; Pharmaceuticals industry)

2001 — 2003 (2 years )

# John Marotta, MBA's Education

**University of Dayton**

BS ,

**University of Denver - Daniels College of Business**

MBA ,

# EXHIBIT "C"



# OFFICE OF THE SECRETARY OF STATE
## OF THE STATE OF COLORADO

# CERTIFICATE

I, Bernie Buescher, as the Secretary of State of the State of Colorado, hereby certify that, according to the records of this office,

### Emerge Medical, Inc.

is a **Corporation** formed or registered on 01/13/2010 under the law of Colorado, has complied with all applicable requirements of this office, and is in good standing with this office. This entity has been assigned entity identification number 20101024342.

This certificate reflects facts established or disclosed by documents delivered to this office on paper through 11/09/2010 that have been posted, and by documents delivered to this office electronically through 11/15/2010 @ 10:21:08.

I have affixed hereto the Great Seal of the State of Colorado and duly generated, executed, authenticated, issued, delivered and communicated this official certificate at Denver, Colorado on 11/15/2010 @ 10:21:08 pursuant to and in accordance with applicable law. This certificate is assigned Confirmation Number 7791833.



_____
Secretary of State of the State of Colorado

**************************************************End of Certificate**************************************************

*Notice: A certificate issued electronically from the Colorado Secretary of State's Web site is fully and immediately valid and effective. However, as an option, the issuance and validity of a certificate obtained electronically may be established by visiting the Certificate Confirmation Page of the Secretary of State's Web site, http://www.sos.state.co.us/biz/CertificateSearchCriteria.do entering the certificate's confirmation number displayed on the certificate, and following the instructions displayed. Confirming the issuance of a certificate is merely optional and is not necessary to the valid and effective issuance of a certificate. For more information, visit our Web site, http://www.sos.state.co.us/ click Business Center and select "Frequently Asked Questions."*

# EXHIBIT "D"



Colorado Secretary of State
Date and Time: 06/23/2010 05:10 PM
ID Number: 20101024342

Document number: 20101356713
Amount Paid: $10.00

Document must be filed electronically
Paper documents will not be accepted.
Document processing fee
Fees & forms/cover sheets
are subject to change.
To access other information or print
copies of filed documents,
visit www.sos.state.co.us and
select Business Center.

$10.00

ABOVE SPACE FOR OFFICE USE ONLY

### Statement of Change
### Changing the Principal Office Address
filed pursuant to § 7-90-305.5 and § 7-90-705 of the Colorado Revised Statutes (C.R.S.)

1. The entity ID number and the entity name, or, if the entity does not have an entity name, the true name are

   Entity ID number       20101024342
                          *(Colorado Secretary of State ID number)*

   Entity name or True name    Emerge Medical, Inc.

2. The entity's principal office address has changed.

   Such address, as changed, is

   Street address       1530 Blake Street
                        *(Street number and name)*
                        Suite 204
                        Denver                     CO        80202
                        *(City)*              *(State)*      *(ZIP/Postal Code)*
                                        United States
                        *(Province – if applicable)*   *(Country)*

   Mailing address
   (leave blank if same as street address)    *(Street number and name or Post Office Box information)*

                        *(City)*              *(State)*      *(ZIP/Postal Code)*

                        *(Province – if applicable)*   *(Country)*

3. *(If applicable, adopt the following statement by marking the box and include an attachment.)*
   ☐ This document contains additional information as provided by law.

4. *(Caution:* <u>Leave blank</u> *if the document does not have a delayed effective date. Stating a delayed effective date has significant legal consequences. Read instructions before entering a date.)*

   *(If the following statement applies, adopt the statement by entering a date and, if applicable, time using the required format.)*
   The delayed effective date and, if applicable, time of this document are _____
                                                                          *(mm/dd/yyyy hour:minute am/pm)*

**Notice:**

Causing this document to be delivered to the Secretary of State for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that such document is such individual's act and deed, or that such individual in good faith believes such document is the act and deed of the person on whose behalf such individual is causing such document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S. and, if applicable, the constituent documents and the organic statutes, and that such individual in good faith believes the facts stated in such document are true and such document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the Secretary of State, whether or not such individual is identified in this document as one who has caused it to be delivered.

5.  The true name and mailing address of the individual causing this document to be delivered for filing are

| Knight | Charles | K. | |
|--------|---------|-----|------|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

2701 Larimer Street
*(Street number and name or Post Office Box information)*

#200

| Denver | CO | 80205 |
|--------|-----|-------|
| *(City)* | *(State)* | *(ZIP/Postal Code)* |

| | United States |
|--|----------------|
| *(Province – if applicable)* | *(Country)* |

*(If applicable, adopt the following statement by marking the box and include an attachment.)*
☐ This document contains the true name and mailing address of one or more additional individuals causing the document to be delivered for filing.

**Disclaimer:**

This form/cover sheet, and any related instructions, are not intended to provide legal, business or tax advice, and are furnished without representation or warranty.  While this form/cover sheet is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form/cover sheet.  Questions should be addressed to the user's legal, business or tax advisor(s).

# EXHIBIT "E"



Document must be filed electronically.
Paper documents will not be accepted.
Document processing fee
Fees & forms/cover sheets
are subject to change.
To access other information or print
copies of filed documents,
visit www.sos.state.co.us and
select Business Center.

$50.00

Colorado Secretary of State
Date and Time: 01/13/2010 04:18 PM
ID Number: 20101024342

Document number: 20101024342
Amount Paid: $50.00



ABOVE SPACE FOR OFFICE USE ONLY

## Articles of Incorporation for a Profit Corporation
filed pursuant to § 7-102-101 and § 7-102-102 of the Colorado Revised Statutes (C.R.S.)

1. The domestic entity name for the corporation is

    Emerge Surgical, Inc.

    *(The name of a corporation must contain the term or abbreviation "corporation", "incorporated", "company", "limited", "corp.", inc.", "co." or "ltd.". See §7-90-601, C.R.S. If the corporation is a professional or special purpose corporation, other law may apply.)*

    *(Caution: The use of certain terms or abbreviations are restricted by law. Read instructions for more information.)*

2. The principal office address of the corporation's initial principal office is

    Street address     464 Garfield St
    *(Street number and name)*

    Denver                              CO      80206
    *(City)*                           *(State)*   *(ZIP/Postal Code)*
                            United States
    *(Province – if applicable)*        *(Country)*

    Mailing address
    (leave blank if same as street address)
    *(Street number and name or Post Office Box information)*

    *(City)*                           *(State)*   *(ZIP/Postal Code)*

    *(Province – if applicable)*        *(Country)*

3. The registered agent name and registered agent address of the corporation's initial registered agent are

    Name
    (if an individual)
                        *(Last)*      *(First)*      *(Middle)*   *(Suffix)*

    **OR**

    (if an entity)      Venture Law Advisors, LLC
    *(Caution: Do not provide both an individual and an entity name.)*

    Street address      7400 E Orchard Rd #320s
    *(Street number and name)*

    Greenwood Village            CO      80111
    *(City)*                    *(State)*   *(ZIP/Postal Code)*

Mailing address
(leave blank if same as street address) _____
                                        (Street number and name or Post Office Box Information)

_____
_____ CO _____.
      (City)            (State)      (ZIP/Postal Code)

*(The following statement is adopted by marking the box.)*
☑ The person appointed as registered agent above has consented to being so appointed.

4. The true name and mailing address of the incorporator are

Name
(if an individual)   Knight            Charles          K
                     (Last)            (First)          (Middle)        (Suffix)

**OR**

(if an entity)       _____
*(Caution: Do not provide both an individual and an entity name.)*

Mailing address      7400 E Orchard Rd #320s
                     (Street number and name or Post Office Box Information)

                     Greenwood Village      CO    80111
                     (City)                 (State)  (ZIP/Postal Code)
                                            United States
                     (Province -- if applicable)   (Country)

*(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
☐ The corporation has one or more additional incorporators and the name and mailing address of each
  additional incorporator are stated in an attachment.

5. The classes of shares and number of shares of each class that the corporation is authorized to issue are as
   follows.

   *(If the following statement applies, adopt the statement by marking the box and enter the number of shares.)*
   ☐ The corporation is authorized to issue _____ common shares that shall have unlimited voting
     rights and are entitled to receive the net assets of the corporation upon dissolution.

   *(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
   ☑ Additional information regarding shares as required by section 7-106-101, C.R.S., is included in an
     attachment.
   *(Caution: At least one box must be marked. Both boxes may be marked, if applicable.)*

6. *(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
   ☑ This document contains additional information as provided by law.

7. *(Caution: Leave blank if the document does not have a delayed effective date. Stating a delayed effective date has
   significant legal consequences. Read instructions before entering a date.)*

   *(If the following statement applies, adopt the statement by entering a date and, if applicable, time using the required format.)*
   The delayed effective date and, if applicable, time of this document is/are _____
                                                                        (mm/dd/yyyy hour:minute am/pm)

**Notice:**

Causing this document to be delivered to the Secretary of State for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the Secretary of State, whether or not such individual is named in the document as one who has caused it to be delivered.

8. The true name and mailing address of the individual causing the document to be delivered for filing are

| Saunders | Timothy | Michael John | |
|----------|---------|--------------|---|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

7400 E Orchard Rd #320s
*(Street number and name or Post Office Box information)*

| Greenwood Village | CO | 80111 |
|-------------------|-----|-------|
| *(City)* | *(State)* | *(ZIP/Postal Code)* |

United States

| | |
|---|---|
| *(Province – if applicable)* | *(Country)* |

*(If the following statement applies, adopt the statement by marking the box and include an attachment.)*

☐ This document contains the true name and mailing address of one or more additional individuals causing the document to be delivered for filing.

**Disclaimer:**

This form/cover sheet, and any related instructions, are not intended to provide legal, business or tax advice, and are furnished without representation or warranty.  While this form/cover sheet is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form/cover sheet.  Questions should be addressed to the user's legal, business or tax advisor(s).

# Click the following links to view attachments

Attachment 1
Emerge Surgical Articles of Incorporation

# EXHIBIT "F"

Document must be filed electronically.
Paper documents will not be accepted.
Document processing fee
Fees & forms/cover sheets
are subject to change.
To access other information or print
copies of filed documents,
visit www.sos.state.co.us and
select Business.



$25.00

Colorado Secretary of State
Date and Time: 06/23/2010 05:01 PM
ID Number: 20101024342

Document number: 20101356696
Amount Paid: $25.00



ABOVE SPACE FOR OFFICE USE ONLY

## Articles of Amendment
filed pursuant to §7-90-301, et seq. and §7-110-106 of the Colorado Revised Statutes (C.R.S.)

ID number: 20101024342

1. Entity name: Emerge Surgical, Inc.
*(If changing the name of the corporation, indicate name BEFORE the name change)*

2. New Entity name:
   (if applicable)   Emerge Medical, Inc.

3. Use of Restricted Words *(If any of these terms are contained in an entity name, true name of an entity, trade name or trademark stated in this document, mark the applicable box):*

☐ "bank" or "trust" or any derivative thereof
☐ "credit union"   ☐ "savings and loan"
☐ "insurance", "casualty", "mutual", or "surety"

4. Other amendments, if any, are attached.

5. If the amendment provides for an exchange, reclassification or cancellation of issued shares, the attachment states the provisions for implementing the amendment.

6. If the corporation's period of duration as amended is less than perpetual, state the date on which the period of duration expires:
   _____
   *(mm/dd/yyyy)*

   **OR**

   If the corporation's period of duration as amended is perpetual, mark this box:   ☑

7. *(Optional)* Delayed effective date:   _____
   *(mm/dd/yyyy)*

Notice:

Causing this document to be delivered to the secretary of state for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the secretary of state, whether or not such individual is named in the document as one who has caused it to be delivered.

8. Name(s) and address(es) of the individual(s) causing the document to be delivered for filing:

| Knight | Charles | K. | |
|---|---|---|---|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

c/o Venture Law Advisors, LLC

2701 Larimer St., #200
*(Street name and number or Post Office information)*

| Denver | CO | 80205 |
|---|---|---|
| *(City)* | *(State)* | *(Postal/Zip Code)* |

| | United States |
|---|---|
| *(Province -- if applicable)* | *(Country -- if not US)* |

*(The document need not state the true name and address of more than one individual. However, if you wish to state the name and address of any additional individuals causing the document to be delivered for filing, mark this box ☐ and include an attachment stating the name and address of such individuals.)*

**Disclaimer:**

This form, and any related instructions, are not intended to provide legal, business or tax advice, and are offered as a public service without representation or warranty. While this form is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form. Questions should be addressed to the user's attorney.

# EXHIBIT "G"


EMERGE
MEDICAL

HOME     MEDICAL PROFESSIONAL     SUPPLY CHAIN     PATIENT     INVESTOR     CONTACT US     PLACE ORDER

We develop, manufacture, and distribute orthopedic devices of the highest quality at cost effective levels.



Contact Us at: 1.866.653.0376
- Sales and Contract Info: sales@emergemedical.com
- Investor Info: info@emergemedical.com
- Compliance: compliance@emergemedical.com

## TRAUMA

For a complete list of our current trauma products please click here.

## SPINE

Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department.

## SPORTS MEDICINE

Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department.

## RECONSTRUCTION

Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department.

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

 EMERGE MEDICAL      HOME      MEDICAL PROFESSIONAL      SUPPLY CHAIN      PATIENT      INVESTOR      CONTACT US      PLACE ORDER

## MEDICAL PROFESSIONAL

### Emerge Product Satisfaction

Emerge manufactures and distributes high quality surgical implants and instruments that are guaranteed to meet FDA requirements. All products are manufactured here in the US in registered FDA facilities. Many of our devices are made in the same manufacturing plants as the big name device companies and out of the same metals and alloys. All products are FDA cleared.

### Emerge Surgical Service

Emerge is committed to providing excellent service to its surgeons  and operating room staff. We  provide extensive in-servicing where necessary to educate medical professionals on proper technique and utilization of our surgical devices.

While we promise extensive service, our goal is to eliminate traffic in the OR by removing surgical reps from cases where they may not be necessary in order to pass savings onto the hospital.

Common cases that Emerge's surgical team have identified where this may be possible:

- Hip Pinnings
- Ankle Fractures
- Percutaneus Pinnings

### Emerge Service Commitment

If there is ever a question about an instrument, implant, or set, we will address it personally and immediately. We are available 24/7 to address any concern or question.  866-553-0376

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval.  If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval.  If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval.  If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

Education | GHX | Our Products | Corporate Overview | Employment Opportunities



HOME          MEDICAL PROFESSIONAL          SUPPLY CHAIN          PATIENT          INVESTOR          CONTACT US          PLACE ORDER

## SUPPLY CHAIN

EMERGE is the only orthopedic device manufacturer that offers standard orthopedic products at fair prices..
Emerge is partnered with GHX.

**Emerge Fair Price Commitment**

While Emerge never compromises on quality, we feel that Hospital systems should not have to pay a premium for everyday items.  Emerge charges
fair prices for "low surgeon preference" items. These items have been identified through extensive research and confirmed by our Elite Surgical Team.

Emerge's focus on "low surgeon preference" items allows us to remove surgical reps and consultants from procedures where they are not necessary
(for a list of common procedures please click here).  By minimizing intraoperative rep involvement, Emerge is able to pass savings onto you and the
patient and also reduces operating room foot traffic.

**Emerge Quality Promise**

Emerge never compromises on quality. The Emerge devices are commonly made from the same metal stock, in the same manufacturing facilities on
the same machines that several of the larger well known device companies make their devices.  Emerge products are of statistically equivalent quality
as the products you currently use in your operating rooms. We manufacture our devices in the United States at only the most experienced FDA
registered medical device manufacturing facilities.

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval.  If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval.  If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval.  If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

· Education  |  GHX  |  Our Products  |  Corporate Overview  |  Employment Opportunities

 **EMERGE** MEDICAL    HOME    MEDICAL PROFESSIONAL    SUPPLY CHAIN    PATIENT    INVESTOR    CONTACT US    PLACE ORDER

## PATIENT

As someone who is about to undergo a surgical procedure or has already undergone a procedure, the last thing that you should have to worry about is the quality of the devices being used or the cost of the procedure. We, at Emerge, promise you the highest quality devices and will reduce your procedural cost.

### Emerge Quality Promise

We commit to never compromise on the quality of our devices as we all have friends and family that undergo surgery everyday that are just like you: everyone deserves the highest quality surgical devices. We manufacture our devices in the United States at only the most experienced FDA registered medical device manufacturing facilities. Every product is FDA cleared and has been tested against the other products on the market.

### How Emerge can save you money?

We sell directly to hospitals and eliminate several middle men. By doing so, we are able to charge fair prices for the devices that your surgeon chooses to use. These price savings are then passed onto you the patient.

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

11/16/2010

 **EMERGE** MEDICAL    HOME    MEDICAL PROFESSIONAL    SUPPLY CHAIN    PATIENT    INVESTOR    CONTACT US    PLACE ORDER

## INVESTOR

Please contact our Investor Relations Team to inquire about investment questions.

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

 EMERGE MEDICAL

HOME    MEDICAL PROFESSIONAL    SUPPLY CHAIN    PATIENT    INVESTOR    CONTACT US    PLACE ORDER

## CONTACT US

**Customer Service:** customerservice@emergemedical.com

**EMERGE Medical Inc.**

1530 Blake Street
Suite 204
Denver, CO 80202
Main: 866-553-0376
Fax: 800-698-1440

**Sales and Contract Info:** sales@emergemedical.com
Direct: 303-217-8409

**Investor Info:** Info@emergemedical.com

**Compliance:** compliance@emergemedical.com
866-553-0376

---

### TRAUMA
For a complete list of our current trauma products please click here.

### SPINE
Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department.

### SPORTS MEDICINE
Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department.

### RECONSTRUCTION
Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department.

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

PLACE ORDER

 **EMERGE** MEDICAL   HOME   MEDICAL PROFESSIONAL   SUPPLY CHAIN   PATIENT   INVESTOR   CONTACT US   PLACE ORDER

## PLACE ORDER

Customer Service: customerservice@emergemedical.com

EMERGE Medical Inc.
1530 Blake Street
Suite 204
Denver, CO 80202
Main: 866-553-0376
Fax: 800-698-1440

Sales and Contract Info: sales@emergemedical.com
Direct:  303-217-8409

---

### TRAUMA

For a complete list of our current trauma products please click here.

### SPINE

Emerge will be entering the spine market in the near future pending FDA approval.  If you have an immediate need for spinal implants and instruments, please contact our Sales Department.

### SPORTS MEDICINE

Emerge will be entering the sports medicine market in the near future pending FDA approval.  If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department.

### RECONSTRUCTION

Emerge will be entering the reconstruction market in the near future pending FDA approval.  If you have an immediate need for recon implants and instruments, please contact our Sales Department.

Education  | GHX | Our Products | Corporate Overview | Employment Opportunities

 **EMERGE** MEDICAL

HOME   MEDICAL PROFESSIONAL   SUPPLY CHAIN   PATIENT   INVESTOR   CONTACT US   PLACE ORDER

## EDUCATION

Emerge recognizes the importance of Surgeon and Staff education and is committed to ensuring that all users of Emerge products are comfortable, familiar, and capable of utilizing the instruments and implants. Emerge will educate staff through extensive in-servicing and sawbone demonstrations where appropriate.

### Emerge Education Commitment

If there is ever a question about a procedure, an instrument, an implant, or a set, we will address it personally and immediately. We will then follow up again within 72 hours to make certain that the entire staff feels comfortable and is familiar with the surgical technique and application of Emerge devices. Someone is available 24/7 to address any concern or question.

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

 EMERGE MEDICAL    HOME    MEDICAL PROFESSIONAL    SUPPLY CHAIN    PATIENT    INVESTOR    CONTACT US    PLACE ORDER

## GHX

Emerge is partnered with GHX to help minimize the price of orthopedic surgical devices in order to pass cost savings onto patients and hospitals across the US.  Emerge's Fair Price Commitment will result in substantial procedural savings and decrease annual costs for any sized operative facility.

www.ghx.com

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval.  If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval.  If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval.  If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

Education  |  GHX  |  Our Products  |  Corporate Overview  |  Employment Opportunities

 **EMERGE** MEDICAL     HOME     MEDICAL PROFESSIONAL     SUPPLY CHAIN     PATIENT     INVESTOR     CONTACT US     PLACE ORDER

## OUR PRODUCTS

Emerge and its Elite Surgical Team have identified several "low preference items" through extensive research. These items are used everyday across the US and have become commoditized. Emerge manufactures and distributes these devices to facilities large and small. If there is a device that you need and do not see, please inquire with our Sales Department. sales@emergemedical.com

**Emerge Quality Promise**

Emerge never compromises on quality. The Emerge devices are commonly made from the same metal stock, in the same manufacturing facilities on the same machines that several of the larger well known device companies make their devices. Emerge products are of statistically equivalent quality to those being used in operating rooms across the US.

| TRAUMA | SPINE | SPORTS MEDICINE | RECONSTRUCTION |
|---|---|---|---|
| For a complete list of our current trauma products please click here. | Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department. | Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department. | Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department. |

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

PORATE OVERVIEW



HOME    MEDICAL PROFESSIONAL    SUPPLY CHAIN    PATIENT    INVESTOR    CONTACT US    PLACE ORDER

CORPORATE OVERVIEW

**The EMERGE Philosophy; A New Approach To Low Cost Orthopedic Devices**

In most industries, manufacturers generate lower profits on "basic" commodity products when compared to high-tech products. Why isn't that true of the American Health Care Industry? Why are basic orthopedic products like plates and screws priced with the same high profit margins as artificial total joints?

EMERGE Medical changes that paradigm in orthopedics. EMERGE believes that the rising costs of surgical devices are unsustainable. EMERGE manufactures and distributes the highest quality orthopedic devices to meet the demands of the surgical market while significantly decreasing costs to the hospital and to the patient. We believe this new approach is required to meet the needs of the U.S. Healthcare Industry in the 21st century.

**The EMERGE & Hospital Systems Partnership**

The U.S. Healthcare System is under increasing political and economic pressure. Hospital Systems must reduce their expenses and are looking for partners to help that happen. EMERGE works closely with Hospital Systems to cut their costs for medical devices by manufacturing high quality low-physician preference items at fair prices.

**The EMERGE Product Family**

EMERGE has identified specific orthopedic surgical devices, through market and surgeon research, that fit the EMERGE model. EMERGE offers devices that are familiar to the surgeon yet economical for the hospital and the patient. These products, including orthopedic plates and screws are "basic," commodity-like, low-physician preference items.

EMERGE plans to expand its product line from orthopedic to other surgical specialties in the future.

**The Source of EMERGE's low prices**

EMERGE keeps its costs low by only manufacturing "basic" orthopedic surgical items.   The results is minimal R&D costs and minimal need for intraoperative rep involvement.  All of this results in fair, low prices for you.

**The Source of EMERGE's high quality**

EMERGE's products maintain high quality by using the same product design and often the same outsourced manufacturing plants as the larger, higher -priced orthopedic product manufacturers. EMERGE's engineering and manufacturing team has world-class experience and our stringent quality control programs in US-based FDA-registered facilities ensure you and your patients a consistent high quality product.

**The EMERGE guarantee**

On most EMERGE products, we guarantee to reduce your prices every year if you are an EMERGE Preferred Partner.* An EMERGE Preferred Partner must commit to a multiyear partnership with EMERGE. Please contact  EMERGE (hyperlink in sales addy), for more information about this revolutionary new approach to medical device pricing.

*This guarantee is based on normal fluctuations in commodity prices such as stainless steel and titanium

**The EMERGE Promise**

- Fair prices for "basic" surgical products
- Complete line of low-physician preference products
- High quality products manufactured at FDA registered facilities in the U.S.
- Focus on reducing Hospital System costs, including implementation on hospital's terms and IT systems
- Elimination of the "rep" where not necessary

**TRAUMA**

For a complete list of our current trauma products please click here.

**SPINE**

Emerge will be entering the spine market in the near future pending FDA approval.  If you have an immediate need for spinal implants and

**SPORTS MEDICINE**

Emerge will be entering the sports medicine market in the near future pending FDA approval.  If you have an immediate need for sports medicine

**RECONSTRUCTION**

Emerge will be entering the reconstruction market in the near future pending FDA approval.  If you have an immediate need for recon

| Instruments, please contact our Sales Department. | Implants and Instruments, please contact our Sales Department. | Implants and Instruments, please contact our Sales Department. |

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

 EMERGE MEDICAL

HOME    MEDICAL PROFESSIONAL    SUPPLY CHAIN    PATIENT    INVESTOR    CONTACT US    PLACE ORDER

## EMPLOYMENT OPPORTUNITIES

Please submit resumes to careers@emergemedical.com

### TRAUMA

For a complete list of our current trauma products please click here.

### SPINE

Emerge will be entering the spine market in the near future pending FDA approval. If you have an immediate need for spinal implants and instruments, please contact our Sales Department.

### SPORTS MEDICINE

Emerge will be entering the sports medicine market in the near future pending FDA approval. If you have an immediate need for sports medicine implants and instruments, please contact our Sales Department.

### RECONSTRUCTION

Emerge will be entering the reconstruction market in the near future pending FDA approval. If you have an immediate need for recon implants and instruments, please contact our Sales Department.

Education | GHX | Our Products | Corporate Overview | Employment Opportunities

# EXHIBIT "H"

 

**EMERGE**
MEDICAL

## *"Fair Prices for Standard Products"*

Welcome to Emerge Medical!

As a decision maker in the medical community, you are faced with choices regarding medical devices and their associated manufacturers on a daily basis.  Over the past ten years, these choices have become more difficult to make as products have become standardized/commoditized and the differentiating factors between vendors have dissipated.  The choice for you and your hospital is now focused on service and cost.

Emerge Medical manufactures high quality orthopedic medical devices that you are already familiar with at fair prices.  Our products are all FDA cleared and manufactured here in the US. We guarantee substantial cost savings on many of your AO, Stryker, Depuy, Zimmer, and Smith & Nephew devices.

We understand that a commitment to quality is paramount for you because the patient comes first.  We will never compromise the quality of the devices that you chose to use and ask that you consider us when cost becomes a topic of discussion at your facility.

We look forward to partnering with you and your facility to decrease your device costs as well as developing a relationship built upon a foundation of fairness, quality, and integrity.

Please read through the following brochure and call our Director of US Sales, Chaun Powell, to discuss contract opportunities with your facility.

Warmest Regards,

Chaun Powell
303.217.8409
chaun.powell@emergemedical.com
Director of US Sales
Emerge Medical

www.emergemedical.com

# EXHIBIT "I"

G. MAROTTI

**SYNTHES**

REGIONAL MANAGER

CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

In consideration of my promotion to Regional Manager with Synthes (U.S.A.), and the other consideration as described in more detail below, the receipt and sufficiency of which I hereby acknowledge, I state and agree as follows:

ACKNOWLEDGMENTS:

I acknowledge that: (1) Synthes (U.S.A.), its partners, and its and their parents, affiliates, subsidiaries, divisions, and related companies or entities, including but not limited to Synthes, Inc., Synthes Spine Company, L.P., Synthes Maxillofacial, Synthes North America, Inc., Spine Solutions, Inc., SYTH, Inc. and Norian Corporation (collectively referred to herein as "Synthes"), are engaged in the business of developing, designing, manufacturing, and selling surgical, medical and veterinary implants, medical, biomaterial and endoscopic technologies, products and services in connection with osteosynthesis, musculoskeletal, maxillofacial and spine surgery, including, but not limited to, compression plates and screws, intermedullary nails, external fixation devices, percutaneous devices, cranio-facial implants, mandible implants, spinal implants and screws, surgical instruments, osteobiologic and disc replacement products, and minimally invasive and endoscopic products (the "Business"); (2) the Business encompasses a broad range of technologies, products and services that Synthes now provides and may in the future develop internally or obtain through acquisitions, merger, sub-contracting or otherwise; (3) Synthes is in a highly competitive industry; (4) Synthes invests substantial time, money, and effort, on an ongoing basis, to train its employees with specialized skills and knowledge unique to Synthes and its Business, to develop technologies, products and services for the Business, to develop and maintain a proprietary data base of prospects, to maintain and expand its customer base, and to improve and develop its technologies, products and services; (5) from the outset of and during my employment with Synthes, I have had and will continue to have access to, receive, learn, develop and/or conceive technical, customer, prospect, financial or other information that is proprietary and/or confidential to Synthes; (6) this information must be kept in strict confidence to protect Synthes' Business and maintain its competitive position in the marketplace, and this information would be useful to Synthes' existing and potential

competitors for indefinite periods of time; (7) from the outset of and during my employment with Synthes, I have had and will continue to have access to and will be required to maintain, supervise, develop and initiate customer relationships and goodwill that are valuable to Synthes and which it has a legitimate interest in protecting; (8) Synthes would be irreparably harmed by my subsequent work with, for or as a competitor of Synthes, in an executive, managerial, marketing, sales, technical, administrative, or product development capacity, due to the possibility that there would be inadvertent or other disclosures of Synthes' proprietary and/or confidential information or that there would be improper interference with its valuable customer relationships and goodwill; (9) I acknowledge that my promotion to Regional Manager constitutes adequate consideration for signing this agreement and that, as further consideration for this agreement and the restrictions contained herein, I acknowledge that I have been given access to confidential, proprietary and trade secret information of Synthes; and (10) the restrictions in this agreement are reasonable and necessary to protect Synthes' legitimate business interests.

CONFIDENTIALITY:

I understand that Synthes' proprietary, confidential and trade secret information includes (without limitation): (1) customer lists, customer preferences and customer usage history; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6) forecasts, budgets and other non-public financial information; (7) product performance information, product technical information, product know-how, inventions (whether or not reduced to practice), discoveries, methodologies, algorithms, formulas, protocols, reports, data, results, observations, computer programs, patent applications, strategic plans, hypotheses, research directions, developments, improvements, drawings, designs, specifications, opinions of legal counsel, and draft or final regulatory filings; and (8) expansion plans, management policies and other business strategies and policies. In exchange for my being provided access to such information, I agree that, at all times during and after my employment with Synthes, I will not disclose or communicate any of this information to any competitor or other third party, or use or refer to any of this information

2

for any purpose, including but not limited to in the course of future employment for myself or any entity other than

Synthes, or remove materials containing any of this information from Synthes' premises, except as necessary for me

to properly perform services for Synthes during my employment. Upon termination of my employment, I will

immediately return to Synthes all correspondence files, business card files, customer and prospect lists, price lists,

product lists, software, manuals, technical data, forecasts, budgets, notes, electronically stored information or data,

and other materials that contain any of this information, and I will not retain any copies of those materials. I

understand that these provisions apply even to information of this type that is developed or conceived by me, alone

or with others, at Synthes' instruction or otherwise. I also understand that these provisions apply to all information I

may receive that is confidential and/or proprietary to any customer or other person or entity who does business with

Synthes.

<u>NO CONTACT WITH OR SOLICITATION OF CUSTOMERS & PROSPECTS</u>:

I agree that, during my employment and for a period of twelve (12) months after my employment with

Synthes terminates for any reason, voluntary or involuntary, I will not solicit, contact, or provide services to (or

attempt to do any of the foregoing), directly or indirectly, for the purpose or effect of competing or interfering with

any part of Synthes' Business:  (1) any Customer of Synthes within my assigned territory; (2) any Customer of

Synthes that I contacted, solicited, received compensation on sales, to whom I provided coverage, or in any way

supported or dealt with at any time during the last two years of my employment; (3) any prospective Customer of

Synthes that I contacted, for whom I had coverage responsibility, or who received or requested a proposal or offer

from me on behalf of Synthes at any time during the last two years of my employment; or (4) any existing or

prospective Customer of Synthes for which I had any direct or indirect responsibility at any time during the last two

years of my employment.  For purposes of this Agreement, "Customer" shall include, without limitation, hospitals;

hospital employees who influence or may influence the use or purchase of medical devices in the Business, as

defined, including materials management, operating room, sterile processing, and related personnel; and physicians

who use or may use the devices supplied within the Business, as defined, and their partners, employees, and staff

nurses.

<u>NO SOLICITATION OR HIRING OF EMPLOYEES</u>:

I agree that, during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not, directly or indirectly, (1) solicit, induce, or encourage any employee of Synthes to leave his/her employment with Synthes, (2) offer any employee of Synthes employment elsewhere, (3) participate in the recruitment of any employee of Synthes to work elsewhere, or (4) hire any employee of Synthes to work elsewhere.

<u>NO COMPETITION IN SAME REGION</u>:

I agree that, during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not, directly or indirectly, compete in my former Region with Synthes' Business. This means that I will not work for or be involved in the Business of any Competitor of Synthes in an executive, managerial, marketing, sales, technical, administrative, or product development capacity, whether as an owner, principal, partner, employee, consultant, contractor, agent or representative. "Competitor", as used in this Agreement, shall mean any persons or entities who now, or in the future, manufacture, develop, sell, or intend to sell, technologies, products, or services in the Business described above. "Region", as used in this Agreement, shall mean the geographic area for which I had responsibility within the last two years of my employment with Synthes, including all accounts within the territories assigned to sales consultants in this geographic area.

<u>FORMER EMPLOYERS</u>:

I will not disclose to Synthes or use for its benefit any information that, to my knowledge, is proprietary or confidential to any of my former employers, without proper consent from my former employer. I have not signed any non-competition or other contract that prohibits me from being employed by Synthes or assigning my works and ideas to Synthes.

<u>THIRD PARTY BENEFICIARIES</u>:

I acknowledge that this Confidentiality, Non-Solicitation and Non-Competition Agreement is intended to

4

benefit Synthes (U.S.A.), its partners, and its and their parents, affiliates, subsidiaries, divisions, and related companies or entities, including but not limited to Synthes, Inc., Synthes Spine Company, L.P., Synthes Maxillofacial, Synthes North America, Inc., Spine Solutions, Inc., SYTH, Inc. and Norian Corporation. I further acknowledge that the intended beneficiaries of this Confidentiality, Non-Solicitation and Non-Competition Agreement are entitled to enforce the provisions of this agreement by seeking injunctive relief or any other appropriate remedy.

REMEDIES AND REFORMATION:

I acknowledge that it would be extremely difficult to measure the damages that might result from any breach by me of this agreement, and that a breach may cause irreparable injury to Synthes or the third-party beneficiaries that could not be compensated by money damages. Therefore, Synthes and any of the third-party beneficiaries will be entitled to enforce this agreement by obtaining a court order prohibiting me from breaching this agreement. The limitations in this agreement which apply for a period of twelve (12) months after termination shall be enforced by a court from the date of the last breach or violation of the applicable restriction(s) up to twenty-four (24) months after termination of employment. If a court decides that any provision of this agreement is not enforceable for any reason, then the rest of this agreement will not be affected. If a court decides that any provision of this agreement is too broad, then the court may limit and/or reform that provision and enforce it as limited and/or reformed. A decision by Synthes or any third-party beneficiary to enforce certain breaches of this agreement but not others shall not be construed as a waiver of any possible remedy that Synthes or any third-party beneficiary has for my breach of this agreement regardless of any claims that I may have against Synthes.

ATTORNEYS' FEES:

I agree to indemnify Synthes for its reasonable attorneys' fees and costs incurred in enforcing the terms of this agreement should I violate any of its terms.

5

CHOICE OF LAW AND FORUM:

This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania. I agree that this agreement shall exclusively be enforced by any federal or state court of competent jurisdiction in the Commonwealth of Pennsylvania and hereby consent to the personal jurisdiction of these courts.

INTENT TO BE BOUND:

I intend to be legally bound by this agreement, and I intend this to be a sealed instrument.

Date: 9/23/07

[EMPLOYEE'S NAME]

Date: 10/8/07

Synthes (U.S.A.)

6

# EXHIBIT "J"

John Marotta

⊛ SYNTHES®

SALES CONSULTANT

CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

In consideration of my employment with Synthes (U.S.A.) and my assignment of a specific territory representing it, the receipt and sufficiency of which consideration I hereby acknowledge, I agree as follows:

ACKNOWLEDGMENTS:

I acknowledge that:  (1) Synthes (U.S.A.) and its divisions, affiliates, subsidiaries, and related companies, including but not limited to Synthes Spine Company, L.P. and Norian Corporation (collectively "Synthes"), are engaged in the business of developing, designing, manufacturing, and selling medical, bone implant and endoscopic technologies, products and services; (2) Synthes' business encompasses a broad range of technologies, products and services that Synthes now provides and may in the future develop internally or obtain through acquisitions, merger sub-contracting or otherwise; (3) Synthes is in a highly competitive industry; (4) Synthes expends substantial time and money, on an ongoing basis, to train employees, to develop medical, bone implant and endoscopic technologies, products and services, including, but not limited to, compression plates and screws, intermedullary nails, external fixation devices, percutaneous devices, cranio-facial implants, mandible implants, spinal implants and screws, and minimally invasive and endoscopic products, to develop and maintain a proprietary data base of prospects, to maintain and expand its customer base, and to improve and develop its technologies, products and services; (5) during my employment with Synthes, I will have access to, receive, learn, develop and/or conceive technical customer, prospect, financial or other information that is proprietary and confidential to Synthes; (6) this information must be kept in strict confidence to protect Synthes' business and maintain its competitive position in the marketplace, and this information would be useful to Synthes' existing and potential competitors for indefinite periods of time; (7) also during my employment with Synthes, I will have access to and will be required to maintain, develop, and initiate customer relationships that are valuable to Synthes and which it has a legitimate interest in protecting; (8) Synthes would be irreparably harmed by my subsequent employment by a competitor of Synthes, due to the likelihood or possibility that there would be inadvertent or other disclosures of Synthes' proprietary and confidential information or that there would be improper or inappropriate interference with its valuable customer relationships; (9) I have received adequate consideration for signing this agreement and acknowledge that the terms and conditions of my employment have been materially enhanced as a

result of entering this agreement; and (10) the restrictions in this agreement are reasonable and necessary to protect Synthes' legitimate business interests.

<u>CONFIDENTIALITY</u>

I understand that Synthes' proprietary and confidential information includes: (1) the identity of customers and prospects, their specific requirements, and the names, addresses and telephone numbers of individual contacts; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6) forecasts, budgets and other non-public financial information; (7) product performance information, product technical information and product know-how; and (8) expansion plans, management policies and other business strategies and policies. At all times during and after my employment with Synthes, I will not disclose or communicate any of this information to any competitor or other third party, or use or refer to any of this information for any purpose, or remove materials containing any of this information from Synthes' premises, except as necessary for me to properly perform services for Synthes during my employment. Upon termination of my employment, I will immediately return to Synthes all correspondence files, business card files, customer and prospect lists, price lists, product lists, software, manuals, technical data, forecasts, budgets, notes and other materials that contain any of this information, and I will not retain any copies of those materials. I understand that these provisions apply even to information of this type that is developed or conceived by me, alone or with others, at Synthes' instruction or otherwise. I also understand that these provisions apply to all information I may receive that is confidential or proprietary to any customer or other company who does business with Synthes.

<u>NO SOLICITATION OF CUSTOMERS & PROSPECTS</u>:

I will not, for a period of one year after my employment with Synthes terminates for any reason, solicit or contact, directly or through others, for the purpose of competing or interfering with any part of Synthes' business, (1) any customer of Synthes that I solicited at any time during the last three years of my employment; (2) any prospective customer of Synthes that received or requested a proposal or offer from me on behalf of Synthes at any time during the last three years of my employment; or (3) any customer or prospective customer of Synthes for which I had any responsibility, directly or indirectly, at any time during the last three years of my employment.

<u>NO SOLICITATION OR HIRING OF EMPLOYEES</u>:

I will not, for a period of one year after my employment with Synthes terminates, directly or indirectly solicit any employee of Synthes to leave their employment with Synthes, offer any employee of Synthes employment elsewhere, or hire any employee of Synthes to work elsewhere.

<u>NO COMPETITION IN SAME TERRITORY</u>:

I am employed by Synthes in sales, account management or maintenance, or customer service or support, with an assigned territory, and I agree I will not, for a period of one year after my employment terminates for any reason, work for (as an employee, consultant, contractor, agent or representative) any competitor of Synthes in the territory or territories that I am now, or have been responsible for at any time during the last year of my employment with Synthes.  Competitors shall be deemed any persons or entities who now, or in the future, sell, or intend to sell, orthopedic, bone fixation, maxillofacial medical, endoscopic and/or spinal implant device or instrumentation technologies, products, or services.

<u>FORMER EMPLOYERS</u>:

I will not disclose to Synthes or use for its benefit any information that, to my knowledge, is proprietary or confidential to any of my former employers, without proper consent.  I have not signed any non-competition or other contract that prohibits me from being employed by Synthes or assigning my works and ideas to Synthes.

<u>THIRD PARTY BENEFICIARIES</u>:

I acknowledge that this Confidentiality, Non-Solicitation and Non-Competition Agreement is intended to benefit Synthes (U.S.A) Ltd. and any of its divisions, affiliates, subsidiaries, or related companies,

including but not limited to Synthes Spine Company, L.P. and Norian Corporation. I further acknowledge that these intended beneficiaries of this Confidentiality, Non-Solicitation and Non-Competition Agreement are entitled to enforce the provisions of this agreement by seeking injunctive relief or any other appropriate remedy.

REMEDIES:

I acknowledge that it would be extremely difficult to measure the damages that might result from any breach by me of this agreement, and that a breach may cause irreparable injury to Synthes that could not be compensated by money damages. Therefore, Synthes will be entitled to enforce this agreement by obtaining a court order prohibiting me from breaching this agreement. If a court decides that any provision of this agreement is not enforceable for any reason, then the rest of this agreement will not be affected.. If a court decides that any provision of this agreement is not enforceable due to my state of residence or employment, then the provision will have no effect only while I am a resident of or employed in that state. If a court decides that any provision of this agreement is too broad, then the court may limit that provision and enforce it as limited.

ATTORNEYS' FEES:

I agree to indemnify Synthes for its reasonable attorney's fees and costs incurred in enforcing the terms of this agreement should I violate any of its terms. I intend to be legally bound by this agreement, and I intend this to be a sealed instrument. This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania.

Date: 6/25/04

_____
EMPLOYEE SIGNATURE

Printed Name: John P. Marotta

Date: 6/25/04

_____
Synthes (U.S.A.)

7/12/04

# EXHIBIT "K"

**⊛ SYNTHES®**

SYNTHES U.S.A.

EMPLOYEE INNOVATION AND NON-DISCLOSURE AGREEMENT

TO SYNTHES U.S.A.:

In consideration of my continued employment by SYNTHES and of the salary or wages paid to me and intending to be legally bound hereby, I agree:

(a) to disclose and assign to SYNTHES as its exclusive property, all inventions and technical or business innovations, including computer software developed or conceived by me solely or jointly with others on company time or on my own time during the period of my employment, (1) that are along the lines of the businesses, work or investigations of SYNTHES or its affiliates to which my employment relates, or as to which I may receive information due to my employment, or (2) that result from or are suggested by any work which I may do for SYNTHES or (3) that are otherwise made through the use of SYNTHES time, facilities or materials;

(b) to execute all necessary papers and otherwise provide proper assistance (at SYNTHES' expense), during and subsequent to my employment, to enable SYNTHES to obtain for itself or its nominees, patents, copyrights, or other legal protection for such inventions or innovations in any and all countries;

(c) to make and maintain for SYNTHES adequate and current written records of all such inventions or innovations as set forth in SYNTHES operating guidelines (PD020 Patent Applications);

(d) upon any termination of my employment to deliver to SYNTHES promptly all items which belong to SYNTHES or which by their nature are for the use of SYNTHES employees only, including, without limitation, all written and other materials which are of a secret or confidential* nature relating to the business of the Company or its affiliates;

(e) not to use, publish or otherwise disclose (except as my SYNTHES duties may require) either during or subsequent to my employment, any secret or confidential information or data of SYNTHES or any information or data of others, such as, but not limited to, sales dollars or units, product technology or product development, project information, manufacturing methods or technology, reports or reporting systems, which SYNTHES is obligated to maintain in confidence; and

(f) not to disclose or utilize in my work with SYNTHES any secret or confidential information of others (including any prior employers), or any inventions or innovations of my own which are not included within the scope of this agreement.

This agreement may not be modified or terminated, in whole or part, except in writing signed by an authorized representative of SYNTHES. Discharge of my undertakings in this agreement shall be an obligation of my executors, administrators, or other legal representatives or assigns. SYNTHES, wherever used in this agreement, includes SYNTHES U.S.A., SYNTHES MAXILLOFACIAL, SYNTHES SPINE AND SYNTHES NORTH AMERICA.

I represent that, except as stated below, I have no agreements with or obligations to others in conflict with the foregoing.

| | | |
|---|---|---|
| _John P. Marrott_ | _John Marotta_ | _6/25/04_ |
| (Signature) | (Print Name) | (Date) |

*These terms are used in the ordinary sense, without limitation. Examples of materials, information and data which may be of a secret or confidential nature are: writings, drawings, manuals, notebooks, reports, audio/video work, prototypes, models, inventions, formulas, processes, machines, compositions, computer software, microfiche, accounting methods, business plans and information systems including such materials, information and data which are in machine readable form or otherwise and any information gained through discussions and/or meetings.

# EXHIBIT "L"

Dec 02 08 09:29p                                                                    p.1

S

Processed

APPLICATION FOR
TUITION REFUND

Payroll

**Application must be completed and approved before registration.**

| Name  John Marotta | Department  Sales |
|---|---|
| Title  Regional Manager | Date of Hire  6/15/08 |

☐  *Bachelors Degree*
☒  *Masters Degree – for first time application, justification proposal must be attached and submitted to supervisor with this form. (See Employee Policy Manual)*

| Name of College  : University of Denver | Course Dates | | Tuition Costs |
|---|---|---|---|
| List Subjects (Full title) | From | To | |
| Accounting & Financial Reporting | 1/10/09 | 3/27/08 | |
| Leadership Challenges | 1/10/09 | 3/27/08 | |
| Staatistical Decision Analysis | 1/10/09 | 3/27/08 | |
| Strategic Marketing | 1/10/09 | 3/27/08 | |
| | | Total: | $10,900.00 |

Total Due :                    $10,900.00

To be filled out by Bachelors Degree applicants only (separate write-up necessary for Graduate Degree applicants--see Employee Policy Manual.)

I understand the above subjects must be related to my work and believe this education will help my present work by:
Please see attached

FOR APPROVAL PRIOR TO COMPLETION OF *GRADUATE OR UNDERGRADUATE* COURSE
Comments:

| Approved: Dept. Manager | Date: |
|---|---|
| Approved: Manager, Human Resources | Date: 12/4/08 |
| Approved: Dept. VP/President (graduate courses only): | Date: 12/2/08 |

I understand it is my responsibility to provide Human Resources with a copy of my final grade(s), together with proof of payment prior to reimbursement for any classes taken.

I understand that if I voluntarily leave the company within one year of completion of the courses for which I have been reimbursed, I will be responsible for reimbursing the company those funds paid within the past year. These funds will be deducted from my last paycheck and the balance, if any, will be billed to me for payment.

Employee Signature

| To be completed after course is over. | |
|---|---|
| Approved:  Dept. Manager | Approved:  Director, Human Resources |
| Date: | Date: 4/13/09 |

APPLICATION FOR
TUITION REFUND

## Application must be completed and approved before registration.

Processed

JUL 3 1 2009

Payroll

| Name John Marotta | Department Sales |
|---|---|
| Title  Regional Manager | Date of Hire  6/15/08 |

☐ Bachelors Degree
☒ Masters Degree - for first time application, justification proposal must be attached and submitted to supervisor with this form. (See Employee Policy Manual)

Name of College : University of Denver

| List Subjects (Full title) | Course Dates | | Tuition Costs |
|---|---|---|---|
| | From | To | |
| Strategic Management of Costs | 3/27/09 | 5/30/09 | |
| Business Intelligence ITEC | 3/27/09 | 5/30/09 | |
| Financial Decision Making | 3/27/09 | 5/30/09 | |
| Innovation & New Product Development | 3/27/09 | 5/30/09 | |
| | | Total: | $10,900.00 |

Tech Fee                                                    40.00

To be filled out by Bachelors Degree applicants only (separate write-up necessary for Graduate Degree applicants—see Employee Policy Manual.)

I understand the above subjects must be related to my work and believe this education will help my present work by:
Please see attached

FOR APPROVAL PRIOR TO COMPLETION OF GRADUATE OR UNDERGRADUATE COURSE
Comments:

| | Date: |
|---|---|
| Approved: Dept. Manager | |
| Approved: Manager, Human Resources | Date: 3/23/09 |
| Approved: Dept. VP/President (graduate courses only) | Date: 3/20/09 |

I understand it is my responsibility to provide Human Resources with a copy of my final grade(s), together with proof of payment prior to reimbursement for any classes taken.

I understand that if I voluntarily leave the company within one year of completion of the courses for which I have been reimbursed, I will be responsible for reimbursing the company those funds paid within the past year.  These funds will be deducted from my last paycheck and the balance, if any, will be billed to me for payment.

Employee Signature

To be completed after course is over.
| Approved: Dept. Manager | Approved: Director, Human Resources |
|---|---|
| Date:  3/12/09 | Date:  7/6/09 |

S

APPLICATION FOR
TUITION REFUND

Application must be completed and approved before registration.

| Name: John Marotta | Department: Sales |
|---|---|
| Title: Regional Manager | Date of Hire: 6/13/04 |

☐ Bachelors Degree
☒ Masters Degree - for first time application, justification proposal must be attached and submitted to supervisor with this form. (See Employee Policy Manual)

| Name of College : University of Denver | Course Dates | | Tuition Costs |
|---|---|---|---|
| List Subjects (Full title) | From | To | |
| Strategic Finance | 6/13/09 | 8/14/09 | |
| Global Business Operations | 6/13/09 | 8/14/09 | |
| Leading in a Global Matrix | 6/13/09 | 8/14/09 | |
| Customer Relationship Management (CRM) | 6/13/09 | 8/14/09 | |
| | | Total: | $70,940.00 (?) |

To be filled out by Bachelors Degree applicants only (separate write-up necessary for Graduate Degree applicants - see Employee Policy Manual)

I understand the above subjects must be related to my work and believe this education will help my present work by
Please see attached.

FOR APPROVAL PRIOR TO COMPLETION OF GRADUATE OR UNDERGRADUATE COURSE.
Comments:

| Approved: Dept. Manager | | Date: |
|---|---|---|
| Approved: Manager, Human Resources | | Date: 7/10/09 |
| Approved: Dept. VP/President (graduate courses only) | | Date: 7/12/09 |

Chris Pfaff approval - see attached

I understand it is my responsibility to provide Human Resources with a copy of my final grade(s), together with proof of payment prior to reimbursement for any classes taken.

I understand that if I voluntarily leave the company within one year of completion of the courses for which I have been reimbursed, I will be responsible for reimbursing the company those funds paid within the past year. These funds will be deducted from my last paycheck and the balance, if any, will be billed to me for payment.

Employee Signature

To be completed after course is over.

| Approved: Dept. Manager | Approved: Director, Human Resources |
|---|---|
| Date: | Date: 10/14/09 |

PAYROLL
OCT 30 2009
PROCESSED

2501/AK4

**APPLICATION FOR TUITION REFUND**

Application must be completed and approved before registration.

| Name: John Marotta | Department: Sales |
|---|---|
| Title: Regional Manager | Date of Hire: 8/13/04 |

☐ Bachelors Degree
☒ Masters Degree: For first time application, justification proposal must be attached and submitted to supervisor with this form. (See Employee Policy Manual)

Name of College: University of Denver

| List Subjects (Full title) | Course Dates | | Tuition Costs |
|---|---|---|---|
| | From | To | |
| Power & Influence | 9/12/09 | 11/20/09 | |
| Strategic Managment | | | |
| Supply Chain & Operations Management | | | |
| Strategy Implementation | | Total: | $10,900.00 |

To be filled out by Bachelors Degree applicants only (separate write-up necessary for Graduate Degree applicants – see Employee Policy Manual)

I understand the above subjects must be related to my work and believe this education will help my present work by:
Please see attached

Processed

DEC 3 1 2009

FOR APPROVAL PRIOR TO COMPLETION OF GRADUATE OR UNDERGRADUATE COURSE(S) ONLY

Comments:

| Approved: Dept. Manager | | Date: |
|---|---|---|
| Approved: Manager, Human Resources | | Date: |
| Approved: Dept. VP/President (graduate courses only) | | Date: |

I understand it is my responsibility to provide Human Resources with a copy of my final grade(s), together with proof of payment prior to reimbursement for any classes taken.

I understand that if I voluntarily leave the company within one year of completion of the courses for which I have been reimbursed, I will be responsible for reimbursing the company those funds paid within the past year. These funds will be deducted from my last paycheck and the balance, if any, will be billed to me for payment.

Employee Signature

| To be completed after course is over. |  |
|---|---|
| Approved: Dept. Manager | Approved: Director Human Resources |
| Date: | Date: |

S

**APPLICATION FOR**
**TUITION REFUND**

Application must be completed and approved before registration.

| Name: John Marotta | Department: Sales |
|---|---|
| Title: Regional Manager | Date of Hire: 6/13/04 |

☐ **Bachelors Degree**
☒ **Masters Degree** – for first time application, justification proposal must be attached and submitted to supervisor with this form. (See Employee Policy Manual)

| Name of College: University of Denver | Course Dates | | Tuition Costs |
|---|---|---|---|
| List Subjects (Full title) | From | To | |
| Talent & Performance Management | 9/12/09 | 11/20/09 | |
| Strategic Management V's Planning /New York | 9/12/09 | 11/20/09 | |
| Supply Chain & Operations Management | 9/12/09 | 11/20/09 | |
| Strategy Implementation | 9/12/09 | 11/20/09 | |
| | | Total: | $10,000.00 |

(TF) 5250.00
(IIG) 5650.00

To be filled out by Bachelors Degree applicants only (separate write-up necessary for Graduate Degree applicants – see Employee Policy Manual)

I understand the above subjects must be related to my work and believe this education will help my present work by:
Please see attached

Processed
MAR 1 2010

FOR APPROVAL PRIOR TO COMPLETION OF *GRADUATE OR UNDERGRADUATE* COURSE
Comments:

| Approved: Dept. Manager | | Date: |
| Approved: Manager, Human Resources | | Date: |
| Approved: Dept. VP/President (graduate courses only) | | Date: |

I understand it is my responsibility to provide Human Resources with a copy of my final grade(s), together with proof of payment prior to reimbursement for any classes taken.

I understand that if I voluntarily leave the company within one year of completion of the courses for which I have been reimbursed, I will be responsible for reimbursing the company those funds paid within the past year. These funds will be deducted from my last paycheck and the balance, if any, will be billed to me for payment.

Employee Signature

| To be completed after course is over | | |
| Approved: Dept. Manager | Approved: Director, Human Resources |
| Date: | Date: |

250f/AR24



## Synthes Tuition Reimbursement

I understand it is my responsibility to provide Human Resources with a copy of my final grade(s), together with proof of payment prior to reimbursement for any classes taken. Reimbursement will be paid via Synthes payroll on the regularly semi-monthly payroll schedule.

I understand that non-job related educational assistance provided by the employer is excluded from income up to $5,250 per year as required by the IRS. However, some states and localities, including PA, may require tax on these amounts. All reimbursements above the annual $5,250 are subject to full taxation according to the IRS.

I understand that submission of the Application for Tuition Reimbursement form means that I have incurred the noted eligible tuition reimbursement expenses, and the information on this form is true and correct to the best of my knowledge.

I understand that if I voluntarily leave the company or am terminated for violation of company policy, within one year of completion of the courses for which I have been reimbursed, I will be responsible for reimbursing the company those funds paid within the past year. These funds will be deducted from my last paycheck and the balance, if any, will be billed to me for payment.

Employee Signature _____     Date _12/17/05_

# EXHIBIT "M"



Synthes (USA)
1302 Wrights Lane East
West Chester, Pennsylvania 19380
Telephone 610-719-5000

June 25, 2010

John P Marotta
283 Columbine Street
PMB 190
Denver, CO 80206

Dear John

During a recent audit of our payroll, it has come to our attention that tuition reimbursements were paid to you
within the last year. According to company policy, if an employee voluntarily leaves the company within one year of completion
of the courses for which the reimbursement was paid by the company, the tuition reimbursement which was paid out
within the past year will be withheld from the employee's final paycheck and/or billed to the employee.

Attached you will find the policy documents you signed agreeing to the terms of the pay back clause.

Since your last day of employment at Synthes USA was 04/15/2010, we are requesting that you kindly reimburse
us for the amount we were unable to deduct from your final check. This amount is $35058.32. The breakout is as follows:

### Education Paid

| | | |
|---|---|---|
| Amount Paid 01/15/2009 | | $10,940.00 |
| Amount Paid 04/30/2009 | | $10,940.00 |
| Amount Paid 7/31/2009 | | $10,940.00 |
| Amount Paid 10/30/2009 | | $10,940.00 |
| Amount Paid 12/31/2009 | | $10,900.00 |
| Amount Paid 03/31/2010 | | $10,900.00 |
| | Total Paid | $65,560.00 |
| Amount paid on 1/15/09 outside 1Yr. Of Term | | $10,940.00 |
| Amount taken from RM Bonus | | $14,496.00 |
| Amount taken from Vacpayout ck | | $5,250.00 |
| | Education Total Due | $34,874.00 |

### TCADV

| | | |
|---|---|---|
| Amount Paid 12/2007 | | $4,000.00 |
| | Total Paid | $4,000.00 |
| Amount taken from final check | | $3,815.68 |
| | TCADV Total Due | $184.32 |

Please make your check payable to Synthes and remit to Synthes, 1302 Wrights Lane East,
West Chester, PA 19380  Attention: Cynthia Moore, Payroll Department.

Please do not hesitate to contact me at (610) 719-5883 should you have any questions.

Thank you in advance for your cooperation.

Sincerely,

Cynthia Moore
Payroll Assistant

cc: Shelly Ray  Manager Payroll/HRIS
cc: Jacqueline Meister  HR Business Partner

*Instruments and implants approved by the AO Foundation*

# EXHIBIT "N"

(pg 1/2)

# 510(k) Summary

NOV 2 3 2010

**Emerge Medical – Cannulated Screw Fixation System**
**(K102343)**

Nov. 11, 2010

**Submitter/Regulatory Contact:**
Curtis Raymond - Orchid Design
80 Shelton Technology Center - Shelton, CT 06484
Tel: (203) 922-0105

**Sponsor/Manufacturer:**
Emerge Medical
1530 Blake Street - Suite 204
Denver, CO 80202

**FDA Establishment Registration Number:** Awaiting Assignment
**Owner Operator Number:** 10033339

**Trade Name, Common Name, Classification:**

**Device Trade Name:** Emerge Medical Cannulated Screw Fixation System

**Device Common or Usual Names:** Bone Fixation Screws

**Classification:** Class II

**Classification Name:** screw, fixation, bone

**Regulation:** 21 CFR 888.3040 (Smooth or threaded metallic bone fixation fastener)

**Product Code:** HWC

**Predicate Devices:** Synthes Cannulated Screw System:
 K962011 (7.0, 7.3mm)
 K962823 (3.0mm)
 K963172 (4.5mm)
 K963192 (3.5, 4.0mm)
 K012945 (2.4mm)
 K021932 (6.5mm)

**Description of the Device:**
   The Emerge Medical Cannulated Bone Screw set consists of various size bone screws. The screws are available in a variety of sizes differing in diameter, overall length

and threaded length. The screws are machined from 316 L stainless steel or titanium alloy.

Each screw is cannulated with a hole through the center for use with appropriately sized guide wires. The screw heads have various configurations which mate with commonly used drivers. No specialized instruments are required for placement of the screws.

The screws have mating washers which can be slipped over the shaft of the screw and fit under the screw head. The screws are used with generic instruments commonly available to orthopedic surgeons.

The devices are provided both in non-sterile or in sterile packages as preferred by the user.

## Intended Use:

The Emerge Medical Cannulated Screw Fixation System is intended to provide bone fixation in the management of fractures of both small and large bones and bone fragments, including those in the foot, patella, ankle, wrist, and elbow and arthrodesis of the foot, wrist, and elbow and small and long bone osteotomies.

## Technological Characteristics:

The subject device is substantially equivalent to the predicate devices. Both the subject device and predicate devices have a similar designs, materials and indications. The materials comprising the device (316L stainless steel or titanium alloy) are commonly used for orthopedic implants and have a long history of biocompatibility

## Performance:

The devices have been subjected to recognized consensus standards and perform in a manner equivalent to the predicate devices.   Testing included

    Screw Torsional Strength,
    Screw Axial Pullout,
    Screw Driving and Removal Torque

In all instances, Emerge screws were shown to be substantially equivalent to the predicate screws.

## Conclusion:

We believe that based on the predicate device comparison and the non-clinical testing performed the subject device is substantially equivalent to the predicate devices and conclude that the subject devices are as safe and effective as the predicate devices.



DEPARTMENT OF HEALTH & HUMAN SERVICES                    Public Health Service

Food and Drug Administration
10903 New Hampshire Avenue
Document Control Room W-O66-0609
Silver Spring, MD 20993-0002

Emerge Medical
% Orchid Design
Mr. Curtis Raymond                                      NOV 2 3 2010
80 Shelton Technology Center
Shelton, CT 06484

Re: K102343
    Trade/Device Name:  Emerge Medical Cannulated Screw Fixation System
    Regulation Number:  21 CFR 888.3040
    Regulation Name:  Smooth or threaded metallic bone fixation fastener
    Regulatory Class:  II
    Product Code:  HWC
    Dated:  November 12, 2010
    Received:  November 15, 2010

Dear Mr. Raymond:

We have reviewed your Section 510(k) premarket notification of intent to market the device
referenced above and have determined the device is substantially equivalent (for the indications
for use stated in the enclosure) to legally marketed predicate devices marketed in interstate
commerce prior to May 28, 1976, the enactment date of the Medical Device Amendments, or to
devices that have been reclassified in accordance with the provisions of the Federal Food, Drug,
and Cosmetic Act (Act) that do not require approval of a premarket approval application (PMA).
You may, therefore, market the device, subject to the general controls provisions of the Act.  The
general controls provisions of the Act include requirements for annual registration, listing of
devices, good manufacturing practice, labeling, and prohibitions against misbranding and
adulteration.  Please note:  CDRH does not evaluate information related to contract liability
warranties.  We remind you, however, that device labeling must be truthful and not misleading.

If your device is classified (see above) into either class II (Special Controls) or class III (PMA), it
may be subject to additional controls.  Existing major regulations affecting your device can be
found in the Code of Federal Regulations, Title 21, Parts 800 to 898.  In addition, FDA may
publish further announcements concerning your device in the Federal Register.

Please be advised that FDA's issuance of a substantial equivalence determination does not mean
that FDA has made a determination that your device complies with other requirements of the Act

Page 2 - Mr. Curtis Raymond

or any Federal statutes and regulations administered by other Federal agencies.  You must comply with all the Act's requirements, including, but not limited to: registration and listing (21 CFR Part 807); labeling (21 CFR Part 801); medical device reporting (reporting of medical device-related adverse events) (21 CFR 803); good manufacturing practice requirements as set forth in the quality systems (QS) regulation (21 CFR Part 820); and if applicable, the electronic product radiation control provisions (Sections 531-542 of the Act); 21 CFR 1000-1050.

If you desire specific advice for your device on our labeling regulation (21 CFR Part 801), please go to http://www.fda.gov/AboutFDA/CentersOffices/CDRH/CDRHOffices/ucm115809.htm for the Center for Devices and Radiological Health's (CDRH's) Office of Compliance.  Also, please note the regulation entitled, "Misbranding by reference to premarket notification" (21 CFR Part 807.97).  For questions regarding the reporting of adverse events under the MDR regulation (21 CFR Part 803), please go to http://www.fda.gov/MedicalDevices/Safety/ReportaProblem/default.htm for the CDRH's Office of Surveillance and Biometrics/Division of Postmarket Surveillance.

You may obtain other general information on your responsibilities under the Act from the Division of Small Manufacturers, International and Consumer Assistance at its toll-free number (800) 638-2041 or (301) 796-7100 or at its Internet address http://www.fda.gov/MedicalDevices/ResourcesforYou/Industry/default.htm.

Sincerely yours,

Mark N. Melkerson
Director
Division of Surgical, Orthopedic
  and Restorative Devices
Office of Device Evaluation
Center for Devices and
  Radiological Health

Enclosure

## Indications for Use

510(k) Number (if known): K102343(pg 1/1)

NOV 2 3 2010

Device Name:   Emerge Medical Cannulated Screw Fixation System

Indications For Use:

The Emerge Medical Cannulated Screw Fixation System is intended to provide bone fixation in the management of fractures of both small and large bones and bone fragments, including those in the foot, patella, ankle, wrist, and elbow and arthrodesis of the foot, wrist, and elbow and small and long bone osteotomies.

Prescription Use ___X___          AND/OR          Over-The-Counter Use _____
(Part 21 CFR 801 Subpart D)                              (21 CFR 807 Subpart C)

(PLEASE DO NOT WRITE BELOW THIS LINE-CONTINUE ON ANOTHER PAGE IF NEEDED)

---

Concurrence of CDRH, Office of Device Evaluation (ODE)

Page 1 of 1

(Division Sign-Off)
Division of Surgical, Orthopedic,
and Restorative Devices

510(k) Number _K102343_

8