## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES INC., SYNTHES USA HQ, INC., SYNTHES USA, LLC, SYNTHES USA SALES, LLC, SYNTHES USA PRODUCTS, LLC, | : : : : : : | |
| **Plaintiffs,** | : : | Civil Action No: 2:11-cv-01566-RB |
| v. | : : : | |
| EMERGE MEDICAL, INC., JOHN P. MAROTTA, ZACHERY W. STASSEN, ERIC W. BROWN, and CHARLES Q. POWELL | : : : : : | |
| **Defendants.** | : : : | |
| and | : : | |
| EMERGE MEDICAL, INC. | : : | |
| **Counterclaim Plaintiff,** | : : : | |
| v. | : : | |
| SYNTHES INC., SYNTHES USA HQ, INC., SYNTHES USA, LLC, SYNTHES USA SALES, LLC, SYNTHES USA PRODUCTS, LLC, | : : : : : : | |
| **Counterclaim Defendants.** | : | |

## EMERGE MEDICAL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR REIMBURSEMENT OF EXPENSES PURSUANT TO FED. R. CIV. P. 37

Emerge Medical, Inc. ("Emerge") by and through its undersigned counsel, Kaufman Dolowich Voluck & Gonzo LLP, submits the following brief in opposition to Plaintiffs' Motion to Compel Discovery and for Reimbursement of Expenses ("Synthes" Motion to Compel").

I.      **INTRODUCTION**

Synthes call for an Order compelling production of documents and for reimbursement of expenses, should be denied.  Although claiming that Emerge has refused to provide complete responses and have been dilatory in attempts to remedy the alleged deficiencies, Synthes admits that Emerge has made several attempts to supplement their document production and comply with the requests. (Synthes Br., p.11) ("To be fair, the supplemental production did include a handful of critically relevant documents, too.").   Indeed, Emerge has diligently preserved electronically stored documents,[1] and in the last eight months both produced responsive documents overlooked by Emerge's prior counsel *and* supplemented its responses to Synthes' document requests, even as recently as last week. Further, Emerge has responded to each and every one of the requests made in Synthes' letters requesting supplemental production.

In fact, subsequent to counsel's receipt of Synthes' counsel's July 12 letter preceding this motion, counsel for Emerge made several productions that responded with every relevant document that could be found and that specifically addressed Synthes' requests contained in their July 12 letter stating alleged deficiencies.  Despite Emerge's vigilance, and Synthes own failure to meet its own responsibilities in answering Emerge's discovery requests, Synthes has filed the within Motion to Compel, seeking costs and fees.[2]

---

[1] IT Acceleration was retained by F&P and prior counsel to John Marotta on or about March 23, 2011, to preserve data from devices and data repositories used by Emerge employees and run defined search terms against the collected data for counsel review. (See Ex. 3, Declaration of David J. Yarnell, at ¶¶5 and 8) (See Ex. 8, Declaration of John Marotta, at ¶8-12).
[2] On July 31, 2012, counsel for Emerge sent a letter to Synthes' counsel advising of the deficiencies in its document production to Emerge.  See Ex. "1." In the ensuing month, Synthes only response was the production, in mid-August, of 4000 to 5000 document pages, which like all of Synthes document productions are not organized as required by Fed. R. Civ. P. 34 (b)(2)(E).  Emerge will immediately seek relief from the Court if the production fails to address the deficiencies in Emerge's July 31, 2012 letter.

## II.     FACTUAL BACKGROUND

Emerge has been diligent in responding to Synthes' discovery requests since undersigned counsel assumed Emerge's defense, in late December 2011. Prior to that time, Emerge while Emerge was represented by Fisher and Phillips, LLP ("F&P"), a complete discovery production was apparently stayed while settlement discussions took place.  On March 31, 2011, Emerge, through its counsel, F&P, was served with Synthes' First Request for Production of Documents ("Synthes' First Request"). (See Ex. 2, Declaration of Michael P. Decktor, Esquire, at ¶8, and Ex. 2-A).  Synthes' First Request contained a request that Emerge produce Electronically Stored Information ("ESI"). In addition to requesting Emerge to search for responsive ESI on Emerge's own information storage devices, Synthes requested that Emerge gather the information storage devices being used by three individual employees of Emerge, Charles "Chaun" Powell, Zach Stassen, and John Marotta and run searches for ESI on those devices, using search terms identified by Synthes in the First Requests.  (See Ex. 2, at ¶9-10 and Ex. 2-A, at No. 15) (See Ex. 8 at ¶8-12).

In order to respond to Synthes' First Request, the requests, in or about April 2011, Emerge contracted with a full-service technology management company, IT Acceleration, Inc., ("IT Acceleration") that imaged the ESI storage devices, to run ESI searches for documents responsive to the search terms identified in Synthes' First Request. (Ex. 2, at ¶11.)  (See also Ex. 3, Declaration of David J. Yarnell, at ¶¶5 and 8).

IT Acceleration had been retained to preserve data from devices and data repositories used by Emerge employees received Emerge's devices and data in four (4) manners:

1.      IT Acceleration employee, Joe Baxter, traveled to Denver, Colorado traveled to Denver, Colorado and physically acquired forensic images of computer devices, and all forensic images acquired were authenticated by means of an MD5 hash to validate that the images were exact duplicates of the devices acquired;

2.      IT Acceleration received at its Wayne, Pennsylvania headquarters additional devices through UPS delivery, which were sent by Emerge employees;

3.      Emerge's e-data documents online repository, known as Jungle Disk, a RackSpace hosting service, was acquired through an Internet connection utilizing Junkgle Disck Work Group Software; and

4.      Emerge's online Microsoft Exchange acquisition and preservation was performed via the Internet using Outlook to create .pst files of Emerge employees' mailboxes.

(See Ex. 3 at ¶9).[3]

IT Acceleration, Inc. began generating data for MCS in April 2011 at which point F&P and prior counsel for John Marotta who were trained on "Relativity," an application commonly used for retrieving documents for litigation. (See Ex. 3, at ¶¶13 and 14).  The search results, obtained using industry forensic tools, utilities and best practices, were provided to The MCS Group ("MCS"), a litigation support firm based in Philadelphia, to provide hosted document review for counsel.[4]  Emerge's former counse, F&P, then conducted a privilege review on the documents responsive to Synthes' search terms, and produced 8,898 pages of documents to Synthes in four batches between May 13 and July 18, 2011, which were Bates stamped EM0000001 – EM008898. (See Ex. 2, at ¶12).[5]

In late December 2011, Emerge substituted its former counsel, with Kaufman Dolowich Voluck & Gonzo LLP ("KDVG"), as Emerge's counsel of record.  On January 13, 2012, Synthes issued correspondence containing supplemental discovery requests and outlining Emerge's

---

[3] The inventory of collected data is attached to Ex. 3, as Ex. 3-A.

[4] A catalogue of the search terms used by IT Acceleration is attached to the Declaration of David J. Yarnell, See Ex. 3, at its Ex. 3-B.

[5] Emerge's former counsel, whose time was consumed with deposition and settlement, did not create any index, list or summary identifying what documents had been produced. (See Ex. 4, Declaration of Irina Rabovetsky, Esquire, at ¶ 5).

purported discovery deficiencies ("Synthes Supplemental Discovery Letter"). (See Ex. 5, Declaration of Christopher Tellner, Esquire, at ¶8, and its Ex. 5-A).

In order to respond to Synthes' January 13th Supplemental Discovery Letter, KDVG conferred with Emerge's prior counsel, F&P, to assess the manner in which F&P examined Emerge's electronic devices for documents that were responsive to Synthes' written document requests and how those documents were produced. (See Ex. 5, at ¶9). KDVG also conferred with representatives of Emerge's third-party electronic discovery vendors, IT Acceleration and The MCS Group, Inc., to determine the manner in which Emerge's electronic devices were inspected to gather and produce responsive documents and the manner in which they were forensically imaged and maintained, and with a representative of Emerge assess how Emerge documents were reviewed and identified for responsiveness. (See Ex. 5, at ¶¶10 and 11). IT Acceleration, Inc. conducted a training session for KDVG attorneys and staff to aid in the transition of the document review. (See Ex. 3, at ¶ 16).

On February 13, 2012, counsel for Emerge responded to Synthes' Supplemental Discovery Letter, ("February 13 Discovery Responses"), serving written objections and responses to the Supplemental Discovery Letter and produced the following responsive documents:

- Emerge Medical, Inc.'s Financial Statements - December 31, 2011 (unaudited);[6]

- Emerge Medical, Inc.'s Sales by Customer Summary – April 1, 2011 to January 21, 2012 and Sales by Customer by Item – Quantity & Sales - January 1, 2011 to January 31, 2012;[7]

- Emerge Medical, Inc.'s Shareholder List;[8]

---

[6] This production is responsive to Synthes' Request No. 9 in their current Motion to Compel.
[7] This production is responsive to Synthes' Request No. 2 in their current Motion to Compel.
[8] This production is responsive to Synthes' Request No. 3 in their current Motion to Compel.

- Copies of the Signed Minutes from Emerge Medical Inc.'s Board of Directors Meetings dated June 14, 2011 June 22, 2011, August 4, 2011, August 24, 2011, September 8, 2011, October 5, 2011, October 10, 2011,, October 20, 2011, and November 15, 2011;[9] and

- Copies of Signed Minutes from Emerge Medical Inc.'s Compensation Committee Meetings dated October 10, 2011, October 20, 2011, October 23, 2011, October 29, 2011; and November 3, 2011.[10]

(See, Ex. 4, at ¶¶7-11, and its attached Ex. 4-B and 4-C, respectively. See also Ex. 5, at ¶ 10 and Ex. 5-B, February 13 Response and Ex. 8, at ¶15-17). In addition, KDVG had previously provided Emerge Medical, Inc.'s Sales by Customer Summary - September 1, 2010 to September 19, 2011 and Emerge Medical, Inc.'s Sales by Customer Summary - April 15, 2010 to September 7, 2010 under cover letter dated January 31, 2012.[11] (See Ex. 4, at ¶6; and Ex. 4-A, the January 31, 2012 email cover letter).

On March 6, 2012, Synthes' identified further discovery deficiencies, via email.  (See Ex. 5 at ¶11, and Ex. 5-C, the March 6, 2012 e-mails).  In order to respond to the March 6th e-mails, KDVG conferred with representatives of Emerge as well as Emerge's third-party electronic discovery vendors, IT Acceleration and The MCS Group, Inc., to identify responsive documents (See Ex. 5, at ¶12). In addition, KDVG performed a review of the documents that had been previously produced to Synthes, by Emerge's former counsel, which revealed that only a small portion of the documents deemed responsive and not privileged had been produced under the direction of F&P. (See Ex. 2, at ¶13).  In its efforts to supplement the document production executed by Emerge's former counsel, between March 23, 2012 and April 10, 2012, KDVG exchanged a series of e-mails with Synthes' counsel providing notice that Emerge would provide

---

[9] This production is responsive to Synthes' Request No. 8 in their current Motion to Compel.
[10] This production is responsive to Synthes' Request No. 8 in their current Motion to Compel.
[11] This production is responsive to Synthes' Request No. 2 in their current Motion to Compel.

a supplemental, rolling document production on behalf of Emerge.  (See Ex. 5, ¶13 and Ex. 5-D and 5-E).

As promised, Emerge issued two supplemental document productions providing a total of 57,743 pages of documents to Synthes.  (See Ex. 5-F and 5-E).  On April 10, 2012, Emerge served on Synthes Bates labeled documents EM009374 - EM040597. On May 24, 2012, Emerge provided Bates labeled documents EM040598-EM067118, which constituted the remainder of the responsive documents initially obtained through the IT Acceleration searches using the terms requested by Synthes.  (See Ex. 2, at ¶14 and Ex. 2-B and 2-C).  In a further attempt to address the deficiencies that Synthes addressed as to the documents produced to Synthes—by Emerge's former counsel—in four batches between May 13 and July 18, 2011, on July 9, 2012, KDVG mailed to Synthes' counsel a list of current customers and facilities which had ordered and received product from Emerge Medical (See Ex. 4, at ¶14 and Ex. 4-D, the July 9, 2012 cover letter).

On July 12, 2012, Mr. Broadhurst served a supplemental discovery deficiency letter ("July 12 Letter") primarily identifying documents that came into existence *after* Synthes served its First Request and were therefore due to Synthes under Emerge's duties to supplement under Fed. R. Civ. P. 26.  (See Ex. 4-E).  In response, on July 17, 2012, KDVG provided to Synthes' counsel by email copies of the signed minutes from Emerge Medical Inc.'s Board of Directors Meetings dated May 11, 2011, June 1, 2011, January 26, 2012 and February 22, 2012.[12] Additionally, Synthes' counsel was directed to the Bates ranges for the previously produced signed Board of Directors Meeting minutes for various dates. (See, Ex. 4, at ¶16 and Ex. 4-F, email enclosing supplemental production of Board Minutes).

---

[12] This production is responsive to Plaintiffs' Request No. 8 in their current Motion to Compel.

On July 26, 2012, Emerge continued to provide a supplemental document production, in response to Synthes July 12, 2012 letter, providing to Synthes documents responsive to the deficiencies Synthes now alleges in their Motion to Compel. These documents included:

- Emerge Shareholder lists [*Responsive to Plaintiffs' Request No. 9 in their current Motion to Compel*];

- Documents constituting, memorializing, or relating to the sharpness or dullness of Emerge's drill bits, including customer feedback and complaints, and customer feedback or complaints relating to the similarities or dissimilarities between Emerge product and predicate product, and all related correspondence [*Responsive to Plaintiffs' Request Nos. 4 and 6 in their current Motion to Compel*];

- Listings of Emerge's existing, prospective, or target customers [*Responsive to Plaintiffs' Request in their July 12 deficiency letter*];

- Emerge's Sales Orders by Customer Detail (with sales order numbers) from April 1, 2011 - July 31, 2012 [*Responsive to Plaintiffs' Request No. 2 in their current Motion to Compel*];

- Emerge's Sales by Customer Summary from April 1, 2011 - July 3, 2012 [*Responsive to Plaintiffs' Request No. 2 in their current Motion to Compel*];

- Correspondence between Emerge and Orchid related to Orchid's decision to decline additional purchase orders from Emerge [*Responsive to Plaintiffs' Request No. 5 in their current Motion to Compel*];

- Emerge Medical Balance Sheet – End of June 2012 [*Responsive to Plaintiffs' Request No. 9 in their current Motion to Compel*];

- Emerge Medical Confidential Private Placement Memorandum – June 23, 2010 [*Responsive to Plaintiffs' Request No. 3 in their current Motion to Compel*]; and

- Supplement to Confidential Private Placement Memorandum – August 31, 2011 [*Responsive to Plaintiffs' Request No. 3 in their current Motion to Compel*].

(See Ex. 4, at ¶18 and Ex. 4-H). (See Ex. 8, at ¶¶ 19-22).

On July 31, 2012, Emerge further answered the call to supplement documents, contained in Synthes July 12, 2012 letter, and produced files relating to Marcy Slone's termination in 2011 to supplement Synthes' request. (See Ex. 4 at ¶19, and Ex. 4-I).  On August 6, 2012 Emerge

notified Synthes that its Spring/Summer 2012 board minutes had not yet been signed at that point, and would be produced upon their receipt by KDVG. (See Ex. 4, at ¶17 and Ex. 4-G). Those emails were delivered to Synthes by email on August 23, 2012.[13] (See Ex. 4, at ¶21 and Ex. 4-K).

Emerge produced its Sales Orders by Customer Detail (with sales order numbers) from April 1, 2011 - July 31, 2012 and Emerge's Sales by Customer Summary from April 1, 2011 - July 3, 2012, which had been previously produced to Synthes, after Synthes requested a second production in native format, on August 15, 2012.  (See Ex. 4, at ¶20 and Ex. 4-J).[14]

On July 20, 2012, Synthes requested further supplementation of documents asking for documents evidencing the transaction that had *just* closed between Emerge Medical and Cardinal Health.   Synthes claimed, without reference to specific document requests by date or by document request number, that the document requested by email were responsive to requests served long ago and do not require additional formal requests.   In that July 20, 2012 email Synthes asserted that Emerge's supplementation should include, without limitation: the agreements; correspondence with investors regarding Cardinal Health, the agreement or the transaction; and documents related to the amendment to Emerge's Articles of Incorporation and any stock involved in the transaction, if any.   Emerge set about collecting the documents requested and immediately reached out to counsel for Cardinal Health to determine which of the documents could be produced without running afoul of Emerge's promises of confidentiality contained within those documents.  After Cardinal's claim to confidentiality is defined, Emerge will examine Synthes' document requests to determine which of those requests encompass the

---

[13] This production was in further response to Synthes' Request No. 8 in their current Motion to Compel.

[14] This production was in further response to Synthes' Request No. 2 in their current Motion to Compel.

Cardinal Health transaction documents and produce the responsive and unprivileged documents. Other than the Cardinal Health transaction documents, from a transaction that closed just over a month ago, and which were not identified in Synthes July 12, 2012 letter requesting supplemental production, Emerge has produced all documents known to be responsive to Synthes documents requests. Accordingly, Emerge respectfully requests that the Court, in its discretion, deny Synthes' Motion to Compel in its entirety, as Emerge and KDVG have made every effort to accurately respond to Synthes' requests, and supplement Synthes' requests. <u>See</u> Ex. 7, outlining the timing and character of Emerge's document production and supplemental document production to Synthes.

III.   <u>**LEGAL ARGUMENT**</u>

      A.    **The Court Should Deny Synthes' Motion to Compel because Emerge has Complied with Synthes' Requests, and Continues to Search for and Provide Documents as they become available – at Present there are no Additional Documents that can Produced**

           (1)    **Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the <u>court's discretion and judgment.</u>**

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . ." Fed. R. Civ. P. 37(a). The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.   See Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion.  See Marroquin-Martinez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

The district court has the authority and the discretion to impose limitations and restrictions on the timing, nature, scope, extent and type of discovery which it will permit the parties to propound. See Fed .R. Civ. P. Rule 26(c). A necessary corollary of these principles is the court may direct that parties only obtain discovery regarding issues properly presented and pending in a lawsuit. "Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978). Similarly, it would be inappropriate to allow parties to engage in discovery on proposed claims, issues and persons which are not currently part of a lawsuit, solely on the basis of a speculative assertion that these claims and parties may someday become part of the pending litigation.

The party moving to compel discovery bears the initial burden of proving the relevance of the requested information.  See Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196

(E.D. Pa. 2001). That party would also bear the burden of demonstrating its compliance with case management limitations set by the court. Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), . . . , (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure, [or seeks privileged information]." Bracey v. Price, No. 09-1662, 2012 U.S. Dist. LEXIS 33275 (W.D. Pa. Mar. 13, 2012) quoting In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Synthes seeks an order compelling Emerge to produce groups of documents, several categories which have already been supplied, and others that have remained unavailable despite the full effort of Emerge, KDVG and IT Acceleration. Synthes seeks to compel:

1.  All documents and information responsive to Synthes' discovery requests dating from after the filing of Plaintiffs' Verified Complaint on March 4, 2011;

2.  Data for the sales of Emerge product itemized by calendar date, by purchase order number, by quantity per order, and by customer and facility in native format from January 1, 2010 through the present;

3.  All documents and information relating to Emerge's rounds of financing, including, without limitation, correspondence with Emerge's investors or prospective investors;

4.  All documents and information constituting, memorializing, or relating to customer feedback or complaints regarding the similarities or dissimilarities between Emerge's product and predicate product.

5.  All documents relating to any decision of Orchid Orthopedic Solutions LLC and any of its subsidiaries to decline additional purchase orders from Emerge or to otherwise decline to do business with Emerge;

6.  All documents and information constituting, memorializing, or relating to the sharpness or dullness of Emerge's drill bits, including, without limitation,

customer feedback and complaints regarding dullness as well as correspondence between Emerge, its customers, and its vendors on these issues;

7.   All documents constituting or relating to communications between and among any of Marotta, Charles Q. Powell, Zachary W. Stassen, or Emerge and any one or more of certain present or former Synthes employees (specifically, Eric W. Brown, Preston Baus, Craig Lynn, Josh Gorman, Jason Fowler, Colin Brown, Chance Leonard, Michael Saunders, Andrew White, Sean North, and Brennen Warren) from January 1, 2009 through April 14, 2010 (using non-Synthes email accounts) and then from April 15, 2010 to the present (regardless of the email account used);

8.   Complete copies of Emerge's Board minutes, including, without limitation, all of the necessary signatures and complete copies of any exhibits or attachments; and

9.   Updated financial statements, whether audited or unaudited, and related Board documents.

(Synthes Br. at pp. 23-24).

As set forth above, since settlement discussions broke down Emerge has been continually working to provide full and supplemental responses to Synthes' discovery requests. As clearly set forth in the Declarations of Emerge's counsel, Emerge has met its responsibility to produce the categories of documents Synthes seeks by way of this Motion to Compel.

(2)   **All documents and information responsive to Synthes' discovery requests dating from after the filing of Plaintiffs' Verified Complaint on March 4, 2011.**

This request is a general request to supplement. As stated in the Declarations of KDVG counsel, the documents that satisfy this request have been produced as they have become available. In total, approximately 100,000 documents have been provided.

(3)   **Data for the sales of Emerge product itemized by calendar date, by purchase order number, by quantity per order, and by customer and facility in native format from January 1, 2010 through the present.**

Emerge has fully responded to this request with all documents that have become available and are known to exist. On January 31, 2012, KDVG provided Emerge Medical, Inc.'s

Sales by Customer Summary - September 1, 2010 to September 19, 2011 and Emerge Medical, Inc.'s Sales by Customer Summary - April 15, 2010 to September 7, 2010. (See Ex. 4, at ¶6; and Ex. 4-A, the January 31, 2012 email cover letter). (See also Ex. 7).

On February 13, 2012, KDVG supplemented the request by providing Emerge Medical, Inc.'s Sales by Customer Summary – April 1, 2011 to January 21, 2012 and Sales by Customer by Item – Quantity & Sales - January 1, 2011 to January 31, 2012. (See Ex. 4, at ¶¶7-11, and its attached Ex. 4-B and 4-C, respectively. See also Ex. 5, at ¶ 10 and its attached Ex. 5-B, February 13 Response; Ex. 7 and Ex. 8).

On July 26, 2012 Emerge again supplemented the request by providing Emerge's Sales Orders by Customer Detail (with sales order numbers) from April 1, 2011 - July 31, 2012 Emerge's Sales by Customer Summary from April 1, 2011 - July 3, 2012. (See Ex. 4, at ¶18 and its attached Ex. 4-H; Ex. 7 and Ex. 8).

KDVG made an additional production to Synthes on August 15, 2012, providing Synthes' counsel by email the native format files of documents which were previously produced – Emerge's Sales Orders by Customer Detail (with sales order numbers) from April 1, 2011 - July 31, 2012 and Emerge's Sales by Customer Summary from April 1, 2011 - July 3, 2012. There are no other documents known to further supplement this request.   (See Ex. 4, at ¶20 and its attached Ex. 4-J; Ex. 7 and Ex. 8).

        **(4)**        **All documents and information relating to Emerge's rounds of financing, including, without limitation, correspondence with Emerge's investors or prospective investors.**

Emerge has supplied all available documents that respond to this request. On February 13, 2012, Emerge produced Emerge Medical, Inc.'s Shareholder List. As a supplement to this production, on July 26, 2012, KDVG produced Emerge Medical Confidential Private Placement

Memorandum – June 23, 2010, and a Supplement to Confidential Private Placement Memorandum – August 31, 2011. There are no other known documents that are responsive to this request. (See Ex. 4, at ¶¶9 and 18; Ex. 7 and Ex. 8).

> **(5)    All documents and information constituting, memorializing, or relating to customer feedback or complaints regarding the similarities or dissimilarities between Emerge's product and predicate product.**

Emerge through KDVG has provided all known responsive documents to this request. On July 26, 2012, documents constituting, memorializing, or relating to the sharpness or dullness of Emerge's drill bits, including customer feedback and complaints, and customer feedback or complaints relating to the similarities or dissimilarities between Emerge product and predicate product were produced, as well as all related correspondence. (See Ex. 4, at ¶18; Ex. 7 and Ex. 8).

> **(6)    All documents relating to any decision of Orchid Orthopedic Solutions LLC and any of its subsidiaries to decline additional purchase orders from Emerge or to otherwise decline to do business with Emerge.**

Emerge through KDVG supplied all available documents that correspond to this request. On July 26, 2012, Emerge produced the correspondence between Emerge and Orchid related to Orchid's decision to decline additional purchase orders from Emerge. No other documents related to this request are known to exist. (See Ex. 4, at ¶18; Ex. 7 and Ex. 8).

> **(7)    All documents and information constituting, memorializing, or relating to the sharpness or dullness of Emerge's drill bits, including, without limitation, customer feedback and complaints regarding dullness as well as correspondence between Emerge, its customers, and its vendors on these issues.**

Emerge through KDVG has provided all known responsive documents related to this request. On July 26, 2012, documents constituting, memorializing, or relating to the sharpness or dullness of Emerge's drill bits, including customer feedback and complaints, and customer

feedback or complaints relating to the similarities or dissimilarities between Emerge product and predicate product were produced, as well as all related correspondence. (See Ex. 4 at ¶18; Ex.7 and Ex. 8).

      (8)    **All documents constituting or relating to communications between and among any of Marotta, Charles Q. Powell, Zachary W. Stassen, or Emerge and any one or more of certain present or former Synthes employees (specifically, Eric W. Brown, Preston Baus, Craig Lynn, Josh Gorman, Jason Fowler, Colin Brown, Chance Leonard, Michael Saunders, Andrew White, Sean North, and Brennen Warren) from January 1, 2009 through April 14, 2010 (using non-Synthes email accounts) and then from April 15, 2010 to the present (regardless of <u>the email account used).</u>**

Emerge and KDVG are not in possession and have been unable to locate any documents that address this request, despite many good faith attempts. Upon information and belief, a certification that these records do not exist is forthcoming. (See Ex. 6, Declaration of John P. Marotta).

      (9)    **Complete copies of Emerge's Board minutes, including, without limitation, all of the necessary signatures and complete copies of any <u>exhibits or attachments.</u>**

Emerge through KDVG has fully responded to this request. On February 13, 2012, copies of the signed minutes from Emerge Medical Inc.'s Board of Directors Meetings dated June 14, 2011 June 22, 2011, August 4, 2011, August 24, 2011, September 8, 2011, October 5, 2011, October 10, 2011, October 20, 2011, and November 15, 2011 were provided. On July 26, 2012, KDVG provided copies of signed minutes from Emerge Medical Inc.'s Compensation Committee Meetings dated October 10, 2011, October 20, 2011, October 23, 2011, October 29, 2011; and November 3, 2011. (See Ex. 4, at ¶¶10-11;18). KDVG also redirected Synthes' counsel to previously produce signed minutes from Board of Directors Meetings pursuant, in order to fully cooperate. On July 26, 2012, KDVG provided copies of signed minutes from

Emerge Medical Inc.'s Compensation Committee Meetings dated October 10, 2011, October 20, 2011, October 23, 2011, October 29, 2011; and November 3, 2011.  (See, Ex. 4 at ¶16, and Ex. 4-F).   KDVG most recently sent by email on August 23, 2012, copies of the previously unavailable signed minutes from Emerge Medical Inc.'s Board of Directors Meetings dated January 26, 2012, February 22, 2012, March 29, 2012, April 25, 2012 and June 6, 2012, as they had been recently made available and had previously not all been signed.  (See, Ex. 4, at ¶21).

> **(10)   Updated financial statements, whether audited or unaudited, and related Board documents.**

Finally, Emerge has provided all available and known documents relevant to this request. On February 13, 2012, Emerge through KDVG provided Emerge Medical, Inc.'s Financial Statements - December 31, 2011 (unaudited).  (See Ex. 4, at ¶7).  On July 26, 2012, Emerge supplemented this request by providing Emerge Shareholder lists and the Emerge Medical Balance Sheet – End of June 2012.  (See Ex. 4, at ¶18).  Neither Emerge nor KDVG are in possession of any other documents that respond to this request since the initial productions made through May 24, 2012.

In summary, Emerge and KDVG are doing all within their power to provide relevant responsive documents to Synthes that correlate with their very complicated document requests. At present, using the computer programs available, there are no other non-privileged documents that have not been produced. In the event Emerge and KDVG are able to locate additional relevant documents, they will be supplied to Synthes, as KDVG has been doing since the firm took over the case. As there are no outstanding documents to be produced at this time, Emerge respectfully requests that Synthes' Motion to Compel be denied.

**B.**     **The Court Should Deny Synthes' Request for Sanctions because Emerge has Produced All Relevant Documents in its Possession and Control, as well as all Documents Emerge has been able to Obtain with Good Faith Effort.**

**(1)     Legal Standard**

The court has discretion to issue sanctions for failure to comply with discovery orders. <u>Ali v. Sims</u>, 788 F.2d 954, 957 (3d. Cir. 1986). F.R.C.P. Rule 37(a) provides, in relevant part that:

> A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery... (4) Expenses and Sanctions. (A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's non-disclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

Whether to impose such sanctions is committed to the Court's discretion. <u>See</u> <u>Flaherty v. M.A. Bruder & Sons, Inc.,</u> 202 F.R.D. 137, 141 (E.D.Pa. 2001). The court should weigh several factors when considering the propriety of Rule 37 sanctions. <u>Ali</u>, 788 F.2d at 957. Some of the factors to be considered include: (1) the extent of a party's personal responsibility; (2) a history of dilatoriness; (3) whether the attorney's conduct was willful and in bad faith; (4) the meritoriousness of the claim; (5) prejudice to the other party; and (6) appropriateness of alternative sanctions. <u>Scarborough v. Eubanks</u>, 747 F.2d 871 (3d. Cir. 1984); <u>Poulis v. State Farm Fire and Casualty Co.</u>, 747 F.2d 863 (3d. Cir. 1984). Further, the sanction must be specifically related to the particular claim or claims at issue in the order to provide discovery violated by the offending party. <u>Ins. Corp. of Ireland, Ltd., v. Compagnie Des Bauxites</u>, 456 U.S. 694, 707 (1982). Within the context of these principles, the Court is to assess the culpability of

the offending party and the prejudice to the party seeking sanctions. <u>See</u> <u>Estate of Spear v.</u> <u>Comm'r of Internal Revenue</u>, 41 F.3d 103, 111 (3d Cir.1994).

Good faith is at the bottom of every discovery dispute, and the existence of good faith efforts and representations that all responsive documents have been produced will be given faith and credit unless proven otherwise:

> At bottom, the discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents. See Fed. R. Civ. P. 26(g) (effect of signature) and Advisory Commentary to 1983 Amendment ("spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues"). The Commentary to the 1983 Amendment to Subdivision (g) explains: "If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse." Winner's counsel avers that an "extraordinary effort" was undertaken and that all responsive documents have been produced. The Court recognizes and appreciates ECI's suspicions that additional documents should exist. However, the Court has no independent way to determine whether or not Plaintiff's response was comprehensive and Plaintiff cannot be required to "prove a negative" by demonstrating that non-existent documents do not exist. The Court accepts Plaintiff's counsel's representation that a comprehensive search was conducted and that all responsive documents have been produced. To the extent that Defendant is able to develop evidence that this representation is incorrect, the Court will entertain an appropriate motion at that time.

<u>Winner v. Etkin & Co.</u>, 2008 U.S. Dist. LEXIS 46866, 6-7 (W.D. Pa. June 17, 2008).

Where counsel makes a good faith effort to comply with discovery, imposition of sanctions in the form of costs is not warranted. <u>See</u> <u>Technitrol, Inc. v. Digital Equipment Corp.</u>, 62 F.R.D. 91, 93 (N.D. Ill. 1973) (where ongoing good faith attempt to supplement discovery responses is undertaken by owing party, court finds imposition of sanctions in the form of costs inappropriate) <u>see</u> <u>also</u> <u>Brenford Envtl. Sys., L.P. v. Pipeliners of P.R., Inc.</u>, 269 F.R.D. 143, 147 (D.P.R. 2010) ([defendant] has shown a good faith effort in resolving the discovery disputes evidenced by its consistent communication with plaintiff and has agreed to produce additional documents).

As set forth above, Emerge and present counsel for Emerge have sought and produced, in good faith, all relevant documents. Emerge has engaged two document companies to obtain documents and produce the documents in a usable manner, as evidenced by the Declarations of Counsel and of IT Accelerated, Inc. Since KDVG has taken over as counsel for Emerge, Emerge has responded to Synthes' letters requesting additional documents, addressing each of the alleged deficiencies and supplying all additional documents when able to do so. KDVG has categorized the documents so that Synthes' counsel can use the documents in an efficient manner, and updated the production as new documents-- such as the newly signed board minutes of Emerge – become available. Emerge simply has no other documents to produce, and has exhausted all avenues to pursue additional documents. Emerge should not be ordered to produce  purported documents that either do not exist or are unknown and unavailable to Emerge at this time, and should not be sanctioned where there has been no willfulness or bad faith by Emerge or present counsel, no dilatory conduct by present counsel, and where the remaining documents are unavailable or do not exist. As set forth in the Certifications of KDVG counsel, every effort has been made to provide Synthes with the documents they have requested, and KDVG will continue to supplement the production should other documents come to light. Emerge therefore respectfully requests that Synthes' motion for sanctions, attorneys' fees and costs be denied.

IV.     **CONCLUSION**

For the reasons set forth above, Emerge Medical, Inc. respectfully requests that this Court deny Plaintiff's Motion to Compel.

Respectfully submitted, this 27th day of August, 2012.

KAUFMAN DOLOWICH VOLUCK & GONZO LLP

BY:  /s/ Anne R. Myers
        Anne R. Myers, Esquire
        1777 Sentry Park West
        Gwynedd Hall, Suite 301
        Blue Bell, PA 19422
        Tel: (215) 461-1100
        Fax: (215) 461-1300
        *Attorneys for Defendant,*
        *Emerge Medical, Inc.*