# EXHIBIT 2

**KAUFMAN DOLOWICH VOLUCK & GONZO LLP**
Michael P. Decktor, Esquire
mdecktor@kdvglaw.com
1777 Sentry Park West
Gwynedd Hall, Suite 301
Blue Bell, PA 19422
Telephone: (215) 461-1100
Facsimile: (215) 461-1300

*Counsel for Defendant,*
*Emerge Medical, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SYNTHES INC., SYNTHES USA HQ, INC., SYNTHES USA, LLC, SYNTHES USA SALES, LLC, SYNTHES USA PRODUCTS, LLC, | : : : : : | |
| **Plaintiffs,** | : : | Civil Action No : 2:11-cv-01566- RB |
| v. | : : | |
| EMERGE MEDICAL, INC., JOHN P. MAROTTA, ZACHERY W. STASSEN, ERIC W. BROWN, and CHARLES Q. POWELL | : : : : | |
| **Defendants.** | : : | |
| and | : : | **DECLARATION OF MICHAEL P. DECKTOR IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |
| EMERGE MEDICAL, INC. | : : | |
| **Counterclaim Plaintiff,** | : : | |
| v. | : : | |
| SYNTHES INC., SYNTHES USA HQ, INC., SYNTHES USA, LLC, SYNTHES USA SALES, LLC, SYNTHES USA PRODUCTS, LLC, | : : : : : : | |
| **Counterclaim Defendants,** | : | |

I, Michael P. Decktor, being an attorney admitted to practice in the United States District Court for the Eastern District of Pennsylvania, hereby declare as follows:

1.      I state that I am familiar with the facts set forth in the following Declaration, and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. Declaration is made subject to the penalties of 28 U.S.C. § 1746 for unsworn falsification to authorities.

2.      I am associated with the law firm of Kaufman Dolowich Voluck & Gonzo LLP, attorneys for Defendant Emerge Medical, Inc. ("Emerge") in the above referenced matter and I have personal knowledge of the facts hereinafter stated.

3.      I was assigned to this case by Anne Myers, Esq. in mid-March of 2012.

4.      At that time, Emerge had already issued several document productions in response to Synthes initial Request for Production of Documents to Emerge.

5.      My assignment was to review the documents that had been produced to Synthes, determine the means by which responsive documents had been identified by Emerge prior to that point, and to ensure that all responsive documents had been produced.

6.      There are several events that took place prior to my involvement that constitute necessary background information for any review of the discovery production activities by Emerge.

7.      From the commencement of this matter on March 4, 2011 through December of 2011, Emerge was represented by Fisher and Phillips, LLP ("F&P").

8.      On March 31, 2011, Emerge, through its counsel, F&P, was served with Synthes' First Request for Production of Documents ("First Request").  A true and correct copy of Synthes' First Request is attached hereto as Exhibit "A."

2

9.     Synthes First Request contained a request that Emerge produce Electronically Stored Information ("ESI").   See Request for Production No. 15 as reflected on p. 13 of Exhibit "A."

10.    In addition to requesting Emerge to search for responsive ESI on Emerge's own information storage devices, Synthes requested that Emerge gather the information storage devices being used by three individual employees of Emerge, Charles "Chaun" Powell, Zach Stassen, and John Marotta, and to run searches for ESI on those devices, using search terms identified by Synthes in the First Requests.

11.    In or around April of 2011, Fisher & Phillips ("F&P") contracted with a company known as IT Acceleration, to image the ESI storage devices in or around April of 2011, and to run ESI searches for documents responsive to the search terms identified by Synthes in its First Request.

12.    Fisher and Philips then conducted a privilege review on the documents responsive to the search terms, and produced 8,898 pages of documents to Plaintiff on May 13, 2011, which were Bates stamped EM0000001 – EM008898.

13.    Upon my review of the production completed by F&P, I determined that only a small portion of the documents deemed responsive and not privileged had been produced to Synthes.

14.    In an effort to remedy this omission, I reviewed, compiled and produced EM009374 - EM040597 on April 10, 2012, and EM040598 - EM067118 on May 29, 2012, constituting the remainder of the responsive documents initially obtained through the searches of IT Acceleration in April 2011.  True and correct copies of the e-mails enclosing these documents are attached hereto as Exhibit "B" and "C," respectively.

15.    From that point onward, responsibility for obtaining additional documents from Emerge to address Synthes' ongoing claims of deficient production of documents was transferred to Irina

Rabovetsky, Esquire for purposes of obtaining additional documents from Emerge in order to address

Plaintiffs' ongoing claims of deficient production of documents.

Date: August 27, 2012          By: _____

                                    Michael P. Decktor, Esquire

4

# EXHIBIT 2-A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SYNTHES, INC., SYNTHES USA HQ, INC., SYNTHES USA, LLC, SYNTHES USA SALES, LLC, and SYNTHES USA PRODUCTS, LLC, | CASE NO.: 11-1566 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| JOHN P. MAROTTA and EMERGE MEDICAL, INC., f/k/a Emerge Surgical, Inc., | |
| Defendants. | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT EMERGE MEDICAL, INC.

Plaintiffs Synthes, Inc.; Synthes USA HQ, Inc.; Synthes USA, LLC; Synthes USA Sales, LLC; and Synthes USA Products, LLC, by and through their undersigned counsel, serve Plaintiffs First Set of Requests for Production of Documents to Defendant Emerge Medical, Inc. ("Document Requests").  Plaintiffs request that Defendant Emerge Medical, Inc. produce the documents requested below on a rolling basis, and in the manner and within the time period set forth in the parties' Stipulation, at the offices of Plaintiffs' counsel, Blank Rome LLP, One Logan Square, 130 North 18th Street, Philadelphia, PA 19103, or at such other time and place as the parties may agree.

### DEFINITIONS

Unless expressly defined in the following Definitions, the terms used in these Definitions, Instructions, and Document Requests shall have the meaning attributed to them in the medical, surgical, and orthopedic device industry as well as the plain, ordinary meaning attributed to them

in common dictionaries such as Webster's Third New International Dictionary and The Oxford English Dictionary.  As used herein:

1.     The term "online services" shall include, but are not limited to, profile pages, posts, friend lists, connections, comments, notes, journals, pokes, chat logs, blog or forum entries, status updates, events, group memberships, call logs, and documents on online networking sites or on communication, collaboration, cloud, or virtualization software, programs, or services such as Facebook, MySpace, Twitter, LinkedIn, Evite, AOL Instant Messenger, Gmail Chat, Google Docs, Skype, or iSkoot.

2.     The term "communication" shall refer to each and every incident in which information is transmitted, whether by correspondence, note, memorandum, telephone, SMS text, MMS text, e-mail, telex, telegram, facsimile, or online services; and whether orally, in person, through recording, in writing, or by any other means whatsoever.

3.     The term "document" shall mean any written, typewritten, printed, e-mailed, recorded, or graphic matter, however maintained, produced, or reproduced; any electronically, mechanically, or magnetically recorded matter of any kind or character, however maintained, produced, or reproduced, including, without limitation, all computer data storage devices of any kind, whether for home or business use; online services; and any other matter constituting the recording of data or information by any means, including, but not limited to, SMS text messages, MMS picture messages, correspondence, letters, telegraphs, facsimiles, contracts, agreements, notes, memoranda, analyses, studies, spreadsheets, drawings, plans, specifications, schedules, blueprints, bid proposals, bid

estimates, change orders, projections, photographs, videotapes, cassettes, discs, reports, work papers, notes, diaries, calendars, journals, minutes of meetings, board resolutions, purchase orders, invoices, confirmation slips, time records, tape recordings, flash drives, computer tapes or disks, or any other writing, including drafts or copies of the foregoing.

4.    The term "knowledge" shall mean not only actual knowledge, but also constructive knowledge, information, or belief and knowledge of your counsel, unless privileged.

5.    The term "electronic device" includes personal computers, laptops, servers, personal digital assistants, smart phones, cell phones, tablets (e.g., iPad), handheld devices, memory cards, flash drives, thumb drives, external hard drives, floppy disks, CDs, DVDs, optical media, or other electronic or magnetic storage devices of any kind.

6.    The term "Synthes" shall mean Synthes, Inc.; Synthes USA HQ, Inc.; Synthes USA, LLC; Synthes USA Sales, LLC; and Synthes USA Products, LLC, their parents, subsidiaries, members, partners, and affiliates, and each of their representatives, agents, directors, officers, employees, and all other persons acting or purporting to act on each of their behalf.

7.    The term "you," "your," or "Emerge" shall refer to Defendant Emerge Medical, Inc., f/k/a Emerge Surgical, Inc., its parents, subsidiaries, partners, and affiliates and each of their representatives, agents, directors, officers, employees, counsel, and all other persons acting or purporting to act on each of their behalf.

8.    The term "Marotta" shall refer to Defendant John P. Marotta and any person acting or purporting to act on his behalf, including his attorneys, and any person acting on their behalf.

9.    The term "person" or "individual" shall include natural persons and any other entity, including individuals, representative persons, corporations, partnerships, associations, joint ventures, proprietorships, agencies, organizations, and any other entities, whether private, public, or quasi-public.

10.    The term "relating to" or "relates to" means about, pertaining to, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, concerning, memorializing, constituting, or referring to, whether directly or indirectly.

11.    The term "vendor" shall mean any person or entity that designs, prototypes, manufactures, markets, sells, distributes, supplies, or obtains regulatory approval for medical, surgical, or orthopedic devices, apparatuses, or instruments, or components of medical, surgical, or orthopedic devices, apparatuses, or instruments, and any person or entity that provides services or consultation relating to the design, prototyping, manufacture, marketing, sale, distribution, supply, or regulatory approval of medical, surgical, or orthopedic devices, apparatuses, or instruments, or components of medical, surgical, or orthopedic devices, apparatuses, or instruments.

12.    The term "customer" shall include, but is not limited to, hospitals, surgery centers, and any other healthcare providers or healthcare facilities, and their directors, employees, or staff who influence or may influence the use, selection, or purchase of medical, surgical, or orthopedic devices or instruments, including, but not

4

limited to, materials management, operating room, sterile processing, and related personnel, and physicians, nurses, or other healthcare providers who use or may use the medical devices or instruments, and their partners, employees, and staff.

13. The term "identify":

    A.    when used in reference to a natural person, means and requests the following information: that person's full name, his or her present or last known home address, his or her present or last known employer, his or her title or job designation, each of his or her other employers' names during the applicable period, his or her email address(es), and any screen name, handle, tag or identifier used in online services.

    B.    when used in reference to any form of entity, means and requests the following information with respect to such entity: the full legal name and form of organization, the name of the jurisdiction under whose laws it is organized, its address, its principal place of business, and its relationship or association with you during the applicable time period, if any.

    C.    when used in reference to a document, means and requests the following information: its date, its author, the type of document (e.g., letter, memorandum, telegram, charge, invoice, statement, photograph, sound reproduction, etc.), the nature and substance of the document, its present location, the location and nature of the original of the document if it is a copy, and the name of each of its present custodians. If a document was at one time, but is no longer, in your possession, custody, or control, identify the disposition of that document.

D.    when used in reference to a facility or location, means and requests the name, address, and ownership of the facility.

E.    when used in reference to a fact, event, thing, or legal or factual status or condition, means and requests all of your knowledge with regard to the subject of the request, as well as all pertinent documents.

## INSTRUCTIONS

1.    These Instructions shall be considered a part of the Document Requests as if they were fully set forth in each Document Request.

2.    Unless specifically instructed otherwise, produce all responsive documents dating from January 1, 2007 to the present.

3.    In responding to these Document Requests, you shall furnish all information available at the time of answering, including information in the possession of any and all representatives.  Because these Document Requests are continuing in nature, if any further information is obtained between the time your responses are served and the time of the preliminary injunction hearing or trial, you must supplement your responses in accordance with the Federal Rules of Civil Procedure.  Such additional answers shall be served on a rolling basis during discovery and not later than two (2) days after such additional information is received or created, if received or created between the time discovery closes and the time of the preliminary injunction hearing or trial.

4.    If any document sought by these Document Requests was, but is no longer, in your possession, custody, or control, or in existence, state whether it is missing or lost, has been destroyed, has been transferred voluntarily or involuntarily to others, or has been otherwise disposed of.  In each instance, explain the

6

circumstances surrounding the disposition of the document and state the date or approximate date on which it passed from your possession, custody, or control, or on which it ceased to be in existence.

5.  To the extent you object to any Document Request, set forth all reasons therefor. If you claim that any document that would be responsive to any Document Request is privileged, produce a privilege log describing the document and containing the following information:

  A.  the date the privileged document was prepared;

  B.  the author of the privileged document;

  C.  all recipients of the privileged document, including blind carbon-copy recipients;

  D.  a brief description of the privileged document; and

  E.  an identification of the specific privilege(s) being asserted.

6.  The conjunctions "and" and "or" shall be interpreted conjunctively and shall not be interpreted disjunctively or in a manner that would exclude any information otherwise within the scope of any Document Request.

7.  Whenever relevant, words in the singular shall include the plural thereof and vice-versa.  For example, "state the date" shall mean "state the dates," when there is more than one date which is relevant to an answer to a Document Request.

8.  All documents produced in response to these Document Requests shall be Bates numbered or given a unique production identifier ("UPI") for identification purposes and produced with a load file with OCR and paginated on a document level (e.g., multi-page .TIFFs or PDFs).

9.  Identify by Bates number or UPI the request or requests in response to which each

7

document was produced.

10. Any electronically-stored information produced shall be in its native format and shall contain the metadata.

11. All electronic documents shall be produced with load files, including all metadata in the load files and the following additional fields and information:

   A. **Identifier:** The Bates number or UPI of the item.

   B. **File Name:** The original name of the item or file when collected from the source custodian or system.

   C. **Custodian:** The name of the custodian or source system from which the item was collected.

   D. **Source Device:** The device from which the item was collected.

   E. **Source Path:** The file path *from* the location from which the item was collected.

   F. **Production Path:** The file path *to* the item produced from the production media.

   G. **Modified Date:** The last modified date of the item when collected from the source custodian or system.

   H. **Modified Time:** The last modified time of the item when collected from the source custodian or system.

   I. **Time Offset Value:** The universal time offset of the item's modified date and time based on the source system's time zone and daylight savings time settings.

12.    Any request for "e-mails" means both the e-mail and the documents attached to that e-mail. All e-mails or email messages shall be produced with load files, including all metadata in the load files and the following additional fields and information:

    A.    **To**: Addressee(s) of the message.

    B.    **From**: The e-mail address of the person sending the message.

    C.    **CC**: Person(s) copied on the message.

    D.    **BCC**: Person(s) blind copied on the message.

    E.    **Date Sent**: Date the message was sent.

    F.    **Time Sent**: Time the message was sent.

    G.    **Subject**: Subject line of the message.

    H.    **Date Received**: Date the message was received.

    I.    **Time Received**: Time the message was received.

    J.    **Attachments**: The Bates number ranges of e-mail attachments. The parties may alternatively choose to use: Bates_Begin, Bates_End, Attach_Begin and Attach_End.

13.    Any images of paper or hardcopy documents shall be produced with load files, including the following additional fields and information:

    A.    **Bates_Begin**: The beginning Bates number or UPI for the first page of the document.

    B.    **Bates_End**: The ending Bates number or UPI for the last page of the document.

    C.    **Attach_Begin**: The Bates number or UPI of the first page of the first attachment to the parent document; and

D.    **Attach_End**: The Bates number or UPI of the last page of the last attachment to the parent document.

14.    All proposed search terms shall be searched in the singular, plural, and possessive, as well as in upper and lower case.

15.    All proposed search terms with an exclamation point truncating the word requests that you search all variations of that word. For example, "resign!" means to search for resign, resignation, resigning, etc.

## DOCUMENT REQUESTS

1.    All documents relating to your communications with, solicitation of, or employment of any individual who is a former or current employee of Synthes.

2.    All documents relating to Synthes' business plans and sales and marketing activities, including, without limitation, lists of Synthes' former, current, or prospective customers and communications, meetings, contacts, or agreements with and proposals to such customers; information concerning Synthes' customers' preferences, purchasing histories, and ordering histories; marketing and sales strategies; expansion plans; targets; pricing, cost, and revenue information, discounts, and competitive terms, evaluations, and analyses; and information concerning Synthes' sales administration, compensation, and personnel.

3.    All documents relating to Synthes' products, product pipeline, product development, or intellectual property, including, but not limited to, lists of Synthes' former, current, or prospective vendors and communications, meetings, contacts, or agreements with such vendors; product literature and information; designs and computerized engineering drawings (e.g., CAD, SolidWorks, etc.); pricing and cost information; Synthes' product

or model numbering, labeling, naming, or identification; manufacturing; regulatory, patent, or trademark filings, approvals, or reporting (*e.g.*, to the FDA, USPTO, etc.); case studies; design history files; testing; competitive analyses; business plans; and any patent or trademark analyses or clearance opinions.

4.   Organizational charts accurately reflecting the former, current, or planned corporate, operational, and ownership structures of Emerge, including, without limitation, the management reporting structure; any subsidiaries, departments, groups, or divisions within Emerge and their relationship to each other; the function of each of the subsidiaries, departments, groups, or divisions, if any, within Emerge; and the ownership of Emerge.

5.   All documents relating to Emerge's board of directors and any advisory boards or committees, including, without limitation, the composition of Emerge's board of directors, meeting minutes, agendas, resolutions, appointments, and charters.

6.   All documents relating to Emerge's business plan(s).

7.   All documents relating to Emerge's financial statements or to Emerge's profit and loss statements or reports.

8.   All communications with and documents relating to your former, current, and prospective vendors; your identification, selection, and retention or engagement of such vendors; and your meetings, contacts, or agreements with such vendors.

9.   All documents relating to Emerge's sales and marketing activities, including, without limitation, lists of Emerge's former, current, and prospective customers and communications, meetings, contacts, and agreements with such customers; marketing and

sales strategies; proposals; expansion plans; targets; pricing, cost, and revenue information, discounts, and competitive terms, evaluations, and analyses (including, *e.g.*, the "cost savings analyses" referred to on Emerge's web site); sales projections and forecasts; information concerning Emerge's sales administration, compensation, and personnel; Emerge's relationship with GHX; and Synthes' Inventory Management Systems (or "SIMS").

10. All documents relating to Emerge's products, product pipeline, and product development, including, but not limited to, intellectual property; product literature and information; designs and computerized engineering drawings (*e.g.*, CAD, SolidWorks, etc.); cost information; Emerge's product or model numbering, labeling, naming, or identification; prototyping; manufacturing; regulatory, patent, or trademark filings, approvals, or reporting (*e.g.*, to the FDA, USPTO, etc.); case studies; design history files; testing; predicate device determinations; competitive analyses; product launch or introduction plans; and any patent or trademark analyses or clearance opinions.

11. All documents relating to the conception, planning, creation, naming, or formation of Emerge, including, but not limited to, communications between or among any of Emerge's founders, employees, officers, directors, and investors, including any former, current, or prospective employees, officers, directors, and investors, engagement letters with consultants, counsel, and accountants and bills for any such services.

12. All documents relating to the capitalization or financing of Emerge, including, but not limited to, placement or offering memoranda and prospectuses or other materials provided to potential investors and communications between or among any of Emerge's founders, employees, officers, directors, investors, lenders, sourcing of funding, including

12

any former, current, or prospective employees, officers, directors, investors, lenders, and sources of funding.

13.   All documents relating to Emerge's solicitation, recruitment, hiring, appointment or election of former, current, or prospective employees, officers, or directors, including, but not limited to, any employment, severance, equity-option, indemnification, non-competition, non-solicitation, non-disclosure, or confidentiality agreements they have with Synthes or Emerge.

14.   All telephone, cellular phone, or wireless data plan records, calls, logs, or bills for telephone and cellular phone numbers or accounts or data plans you maintain or have maintained, including documents available from your telephone, cellular phone, or data plan providers.

15.   Conduct a search of your computers, electronic devices, and any other electronic media for all documents and communications that include any of the following words, terms, or phrases:

 a.  "Synthes" or "SUSA"

 b.  "510k" or "510(k)" or "510 (k)" or "510 k"

 c.  "Food & Drug Administration" or "Food and Drug Administration" or "FDA"

 d.  "Invest!" or "Capital!" or "Financ!" or "Bank!" or "Loan" or "Fund!"

 e.  "John" or "Marotta" or "marotta.john@gmail.com" or "johnmarotta2@yahoo.com" or "jpmarotta@yahoo.com" or "jp.marotta@yahoo.com" or "info@vetorthx.com" or "info@premierassetspropeties.com"

13

f.   "Zach!" or "Zack!" or "Stassen" or "zstassen@gmail.com"

g.   "Charles" or "Chaun" or "Powell" or "chaunpowell@hotmail.com"

h.   "Non-compet!" or "Noncompet!" or "Non Compet!" or "NCA" or "Restrictive Covenant" or "Non-disclos!" or "Nondisclos!" or "Non Disclos!" or "NDA" or "Non-Solicit!" or "Nonsolicit!" or "Non Solicit!"

i.   "Injunct!" or "Enjoin!"

j.   "Indemni!"

k.   "Patent!" or "Trademark!"

l.   "Skeleton Intelligence" or "Intellipedics"

m.   "Steve" or "Steven" or "Stephen" or "Morgan" or "stevenjmorgan98@gmail.com" or "Gilmore"

n.   "Neil" or "Niel" or "Neal" or "Motzkin"

o.   "Brian" or "Bryan" or "Hahn"

p.   "Dave" or "David" or "Lembo"

q.   "Aaron" or "Porter"

r.   "Chance" or "Leonard"

s.   ("Brown") AND ("Eric" or "Colin")

t.   "brown.eric2009@gmail.com"

u.   "Wes" or "Wesley" or "Kaupinen" or "wkaupinen@gmail.com"

v.   "Quaker" or "Bioventures" or "Volante!"

14

w.  "Dsg!" or "Guccione"

x.  "VetOrthx!" or "VetOrthyx!"

y.  "Ram precision" or "Orchid"

Respectfully submitted,
BLANK ROME LLP

s/ *Michael P. Broadhurst*
ANTHONY B. HALLER, ESQ.
Identification No. 37017
JAMES T. SMITH, ESQ.
Identification No. 39933
MICHAEL P. BROADHURST, ESQ.
Identification No. 80906
KEVIN M. PASSERINI, ESQ.
Identification No. 203169
One Logan Square
Philadelphia, PA  19103
(t) (215) 569-5690/5643/5438/5466
(f) (215) 832-5690/5643/5438/5466
haller@blankrome.com
smith-jt@blankrome.com
broadhurst@blankrome.com
passerini@blankrome.com

*Attorneys for Plaintiffs Synthes, Inc.,
Synthes USA HQ, Inc., Synthes USA, LLC,
Synthes USA Sales, LLC, and Synthes USA
Products, LLC*

Dated: March 31, 2011

15

## CERTIFICATE OF SERVICE

I, Kevin M. Passerini, Esquire, hereby certify that I have caused a true and correct copy of the foregoing to be served via email and first-class U.S. mail upon the following persons, listed below on this date:

Risa B. Boerner
Fisher & Phillips LLP
Radnor Financial Center, Suite 650
201 King of Prussia Road
Radnor, PA 19087

Paul. J. Greco
Conrad O'Brien PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102

/s/ Kevin M. Passerini
KEVIN M. PASSERINI

Dated:  March 31, 2011

# EXHIBIT 2-B

**Michael P. Decktor**

| | |
|---|---|
| **From:** | Michael P. Decktor |
| **Sent:** | Tuesday, May 29, 2012 4:45 PM |
| **To:** | Broadhurst, Michael P.; Haller, Anthony; Passerini, Kevin; McKenna, Rosemary |
| **Cc:** | Anne Myers; Helwig, David P. |
| **Subject:** | Second Installment of Emerge's Supplemental Production |

Mr. Broadhurst:

Below please find a link to the second installment of Emerge's rolling supplemental production.   By clicking on the link provided, you will be able to login to MCS' FTP site (without a password) and download the production file:

https://www.yousendit.com/download/QlVqRFFWSWh3NUpjR05Vaq

Let me know if you run into any technical issues and I will follow-up with MCS.

- Mike D.

# EXHIBIT 2-C

**Michael P. Decktor**

| | |
|---|---|
| **From:** | Michael P. Decktor |
| **Sent:** | Tuesday, April 10, 2012 1:09 PM |
| **To:** | Broadhurst, Michael P.; Haller, Anthony; Passerini, Kevin; McKenna, Rosemary |
| **Cc:** | Anne Myers; Helwig, David P. |
| **Subject:** | RE: FW: Synthes v Emerge et al. - Draft Stipulation |

Mike:

Below please find the login credentials to MCS' "FTP" site. With these credentials you can login and download the first installment of our rolling supplemental production.

ftp.themcsgroup.com
user: Emerge
PW: !egreme!

Let me know if you run into any technical issues and I will follow-up with MCS.

- Mike D.


Michael Decktor
Attorney at Law

KAUFMAN DOLOWICH VOLUCK & GONZO LLP
1777 Sentry Park West
Gwynedd Hall - Suite 301
Blue Bell PA 19422
Direct: 215-461-1100 x5229
Main: 215-461-1100
Fax: 215-461-1300
Cell: 215-740-6555
mdecktor@kdvglaw.com
www.kdvglaw.com

 New York | Pennsylvania | New Jersey | San Francisco | Los Angeles | Florida

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.
🖨 Please consider the environment before printing.


**From:** Broadhurst, Michael P. [mailto:BROADHURST@BlankRome.com]
**Sent:** Monday, April 09, 2012 10:57 AM
**To:** Michael P. Decktor
**Cc:** Anne Myers; Helwig, David P.; Christopher Tellner; Haller, Anthony; Passerini, Kevin; McKenna, Rosemary
**Subject:** RE: FW: Synthes v Emerge et al. - Draft Stipulation