**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SYNTHES, INC., SYNTHES USA HQ, INC., ) <br> SYNTHES USA, LLC, SYNTHES USA     ) <br> SALES, LLC, and SYNTHES USA       ) <br> PRODUCTS, LLC,                            ) <br>     Plaintiffs / Counterclaim-Defendants,   ) <br>                                        ) <br>             v.                           ) <br>                                        ) <br> EMERGE MEDICAL, INC., JOHN P.      ) <br> MAROTTA, ZACHARY W. STASSEN,     ) <br> ERIC BROWN, CHARLES Q. POWELL,    ) <br> ET AL.                                       ) <br>                                        ) <br>     Defendants / Counterclaim-Plaintiffs.    ) <br> _____ ) | Civil Action No. 11-1566 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS**
**EMERGE MEDICAL, INC., JOHN P. MAROTTA, AND CHARLES Q. POWELL'S**
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

***(PUBLICLY FILED VERSION; UNREDACTED VERSION FILED UNDER SEAL)***

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT .......................................................................................................7

I.    DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT
BECAUSE MAROTTA DID NOT BREACH HIS EMPLOYEE INNOVATION
AGREEMENT (COUNTS II, VII, AND VIII). ................................................8

      A.    Emerge's Business Plan Cannot Legally Be "Assigned" to Synthes as Its
"Exclusive Property." ...........................................................................10

      B.    The Names, Logos and Slogans for Emerge Are Not "Inventions" or
"Technical or Business Innovations." ...................................................17

      C.    Emerge's Product Offerings Are Not "Inventions" or "Technical or
Business Innovations." ..........................................................................18

      D.    Emerge Itself Is a Colorado-registered Corporation, Not an "Invention" or
"Technical or Business Innovation." .....................................................19

II.    DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT
BECAUSE MAROTTA'S PREPARATIONS TO COMPETE DID NOT
BREACH HIS FIDUCIARY DUTY TO SYNTHES OR VIOLATE THE NON-
COMPETITION PROVISION OF HIS NON-COMPETE AGREEMENTS
(COUNTS I AND II). .....................................................................................19

      A.    Marotta's Preparation To Compete Did Not Breach His Fiduciary Duty or
Duty of Loyalty to Synthes. .................................................................21

      B.    Marotta's Preparation To Compete Did Not Breach the Non-Compete
Provision of his Non-Competition Agreement. ....................................24

III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE
THE LOCATION OF EMERGE'S HEADQUARTERS IN COLORADO DOES
NOT CONSTITUTE A BREACH OF MAROTTA'S AND POWELL'S NON-
COMPETITION AGREEMENTS (COUNT II). .............................................27

IV.    MAROTTA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
BECAUSE HE COULD NOT HAVE BREACHED HIS ARIZONA SALES
CONSULTANT NON-COMPETITION AGREEMENT AS IT WAS NO
LONGER ENFORCEABLE BY THE TIME HE RESIGNED FROM SYNTHES
(COUNT II). .................................................................................................29

V.    DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON
SYNTHES' CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACT
(COUNT III). ...............................................................................................31

      A.    There Is No Evidence that Emerge Tortiously Interfered with Marotta's
Agreements with Synthes. .....................................................................32

B.     There Is No Evidence that Emerge Tortiously Interfered with Powell's Non-Compete Agreement with Synthes. ...............................................36

C.     There Is No Evidence that Emerge Tortiously Interfered with Brown's Agreements with Synthes. ......................................................................38

D.     There Is No Evidence that Any Defendant Tortiously Interfered with Synthes' Contractual Relationships with Any of Its Customers or Vendors. ........40

E.     Marotta Is Entitled to Partial Summary Judgment on Synthes' Claim that He Tortiously Interfered with Synthes' Contractual Relations With Other Synthes Employees. ..............................................................................41

VI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON SYNTHES' CLAIMS THAT EMERGE AIDED AND ABETTED MAROTTA OR BROWN IN THE ALLEGED BREACHES OF THEIR FIDUCIARY DUTIES (COUNT IV)...............................................................................43

A.     There Is No Evidence of Emerge Substantially Assisting or Encouraging Marotta in Any Breach.............................................................................44

B.     There Is No Evidence that Emerge Substantially Assisted or Encouraged Brown in Effecting Any Breach of His Fiduciary Duty. ......................45

VII.   DEFENDANTS ARE ENTITLED TO SUMMARY JDUGMENT ON SYNTHES' CLAIM THAT DEFENDANTS VIOLATED THE COMPUTER FRAUD AND ABUSE ACT (COUNT VI)....................................................45

A.     Synthes' Failure to Prove Cognizable Harm Requires that this Claim Be Dismissed.................................................................................................46

B.     Defendants Marotta and Powell Did Not Violate the Substantive Provisions of the CFAA......................................................................47

VIII.  THERE IS NO EVIDENCE OF ANY TRESPASS TO CHATTELS (COUNT IX).......................................................................................................................52

IX.    PLAINTIFFS' CLAIMS OF FRAUD ARE BARRED BY THE GIST OF THE ACTION DOCTRINE AND THERE IS NO EVIDENCE OF FRAUD IN CONNECTION WITH THIS LITIGATION (COUNT XI)..............................54

A.     Synthes' Fraud Claim Against Marotta Is Barred by the Gist of the Action Doctrine....................................................................................................56

B.     There Is No Evidence of Fraud in Connection with the Litigation of this Case.........................................................................................................57

X.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON SYNTHES' CLAIM FOR CIVIL CONSPIRACY (COUNT XII)...................58

A.     There Is No Evidence that the Purpose of the Alleged Conspiracy Was To Injure Synthes. .......................................................................................58

B.     Under the Intracorporate Conspiracy Doctrine, Emerge Cannot Conspire with Its Own Employees.........................................................................59

C.      There Is No Evidence Emerge Conspired with Former Defendant Brown. ..........60

CONCLUSION...............................................................................................................61

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551 (S.D.N.Y. 1984)..............................................22

*AFC Cable Sys. v. Clisham*, 62 F. Supp. 2d 167 (D. Mass. 1999) ...............................................30

*Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329 (E.D. Pa. 2003) ............................................................................................................................41

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................7, 8

*Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F. Supp. 1185 (E.D. Pa. 1989) ............................44

*Aubrey v. Sanders*, 346 F. App'x 847 (3d Cir. 2009) ...................................................................55

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006) .................................................8

*Bilski v. Kappos*, 556 U.S. ___, 130 S. Ct. 3218 (2010).........................................................15, 17

*Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378 (E.D. Pa. 2009).....................................59

*Brown v. Beard*, No. 07-637, 2011 WL 1085890 (W.D. Pa. Mar. 21, 2011)...............................60

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................................7, 8

*Chi. Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 513 F. Supp. 2d 304 (E.D. Pa. 2007)...............................................................................................43

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206 (2d Cir. 2012)............................................................................................................17

*City of Newark v. Beasley*, 883 F. Supp. 3 (D.N.J. 1995)............................................................13

*Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. 09-2751, 2011 WL 6088611 (E.D. Pa. Dec.7, 2011) ............................................................................47

*Cohen v. Lewis*, No. 03 C 5454, 2004 WL 2481015 (N.D. Ill. Nov. 3, 2004) .......................34, 37

*Darius Int'l, Inc. v. Young*, No. 05-6184, 2008 WL 1820945 (E.D. Pa. Apr. 23, 2008) .....................................................................................................................16, 17

*Dresser-Rand Co. v. Jones*, No. 10-2031, -- F. Supp. 2d --, 2013 WL 3810859 (E.D. Pa. July 23, 2013)
..........................................................................................48, 49, 51, 52

*Eagle v. Morgan*, No. 11-4303, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011)............................46

*Fid. Nat'l Title Ins. Co. v. Craven*, No. 12-4306, 2012 WL 5881856 (E.D. Pa. Nov. 21, 2012) ........................................................................................41, 42, 55

*Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547 (E.D. Pa. 2008), aff'd, 340 F. App'x 110 (3d Cir. 2009)........................................................35, 36, 37

*Fitness Experience, Inc. v. TFC Fitness Equip., Inc.*, 355 F. Supp. 2d 877 (N.D. Ohio 2004) .........................................................................................................22

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. 3:09-CV-0042, 2011 WL 2847712 (D. Nev. July 15, 2011) ...................................51

*Freedom Wireless, Inc. v. Boston Commc'ns Grp., Inc.*, 220 F. Supp. 2d 16 (D. Mass. 2002).......................................................................................................14

*Fres-Co Sys. USA, Inc. v. Bodell*, No. 05-3349, 2005 WL 3071755 (E.D. Pa. Nov. 15, 2005) .........................................................................................................27

*G. Neil Corp. v. Cameron*, No. 03-4419, 2003 WL 22533698 (E.D. Pa. Oct. 21, 2003) .............................................................................................................16

*Gagliardi Bros. Inc. v. Caputo*, 538 F. Supp. 525 (E.D. Pa. 1982) ...............................................30

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297 (3d Cir. 2003) ..................59, 60

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D. Pa. 2007)...........................................................................................53

*Hill v. Best Med. Int'l, Inc.*, Nos. 07-1709, 08-1404, 09-1194, 2011 WL 5082208 (W.D. Pa. Oct. 25, 2011)
.........................................................................................................34, 35, 37, 38

*Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176 (E.D. Pa. Nov. 30, 2010)............................................................................56

*Jackson Nat'l Life Ins. Co. v. Heyser*, No. 12-5051, 2013 WL 5278240 (E.D. Pa. Sept. 19, 2013) (Buckwalter, J.) ..............................................................................8

*Jardin v. Datallegro, Inc.*, No. 10-CV-2552-IEG WVG, 2011 WL 1375311 (S.D. Cal. Apr. 12, 2011) ...............................................................................................10

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979)...................................................................12

*Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, -4775, 2012 WL 2466616 (E.D. Pa. June 27, 2012) ....................................................................................................7

*Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490 (3d Cir. 1998)...................12

*Lee v. Se. Pa. Transp. Auth.*, 418 F. Supp. 2d 675 (E.D. Pa. 2005) .............................................60

*Lewis-Burke Assocs. LLC v. Widder*, 2010 725 F. Supp. 2d 187 (D.D.C. 2010) .........................48

*Mainardi v. Prudential Ins. Co.*, No. 08-3605, 2009 WL 229757 (E.D. Pa. Jan. 30, 2009) ....................................................................................................................................15, 16

*Malibu Textiles, Inc. v. Carol Anderson, Inc.*, No. 07 Civ. 4780 (SAS), 2008 WL 2676356 (S.D.N.Y. July 8, 2008) ...................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......................................7

*Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001 (3d Cir. 1980) ...............................11

*Miller v. Dutil (In re Total Containment, Inc.)*, 335 B.R. 589 (Bankr. E.D. Pa. 2005) ....................................................................................................................................44

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999)...........................61

*myService Force, Inc. v. Am. Home Shield*, No. 10-6793, 2013 WL 180287 (E.D. Pa. Jan. 17, 2013)........................................................................................................11

*New L & N Sales & Mktg., Inc. v. Menaged*, No. 97-4966, 1998 WL 575270 (E.D. Pa., Sept. 9, 1998) ...........................................................................................................22

*Ossur Holdings Inc. v. Bellacure, Inc.*, No. C05-1552JJR, 2006 WL 2401269, at *3 (W.D. Wash. Aug. 18, 2006) ...............................................................................26

*Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417 (3d Cir. 2012) ....................................................................................................................................14

*Parker v. Learn Skills Corp.*, 219 F. App'x. 187 (3d Cir. 2007) ................................................60

*Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541 (3d Cir. 2010).........................57

*PharMethod, Inc. v. Caserta*, 382 F. App'x. 214 (3d Cir. 2010)................................17, 28, 29, 31

*Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850 (3d Cir. 1986) ....................................................................................................................................12

*ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955 (M.D. Tenn. 2011).....................22, 23

*Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-236, 2009 WL 4572911 (W.D. Pa. Dec. 4, 2009).......................................................................................42, 43

*Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 .......................................21, 24

*Robinson v. New Jersey*, No. 11-6139, 2013 WL 3894129 (D.N.J. July 26, 2013) ....................49

*Russo v. Ballard Med. Prods.*, 550 F.3d 1004 (10th Cir. 2008) ...................................11

*Sealord Holdings, Inc. v. Radler*, No. 11-6125, 2012 WL 707075 (E.D. Pa. Mar.
6, 2012) ................................................................................................................46

*SI Handling Sys., Inc., v. Heisley*, 753 F.2d 1244 (3d Cir. 1985)................................18

*Stewart v. Abend*, 495 U.S. 207 (1990).....................................................................12

*Stromback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004).................................16

*Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, No. 06-3957, 2006 WL 3097771
(E.D. Pa. Oct. 30, 2006)......................................................................................57

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644 (W.D.
Pa. 1999) .............................................................................................................42

*Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476 (E.D. Pa.
Sept. 19, 2012) ............................................................................................. *passim*

*Thompson v. Glenmede Trust Co.*, No. 92-5233, 1993 WL 197031 (E.D. Pa. June
8, 1993) ..........................................................................................................44, 45

*United Aircraft Corp. v. Boreen*, 284 F. Supp. 428 (E. D. Pa.1968), aff'd, 413
F.3d 694 (3d Cir. 1969).................................................................................22, 24

*United Aircraft Corp. v. Boreen*, 413 F.2d 694 (3d Cir. 1960) .................................21

*United States v. Lothian*, 976 F.2d 1257 (9th Cir. 1992)...........................................61

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc)......................49, 51, 52

*Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212 (E.D. Pa. 1991)..........................13

*Viad Corp. v. Cordial*, 299 F. Supp. 2d 466 (W.D. Pa. 2003)...................................25

*WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012),
cert. denied, 133 S. Ct. 831 (2013) .....................................................................52

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) .....................................41

*Williams v. Hilton Grp. PLC*, 93 F. App'x 384 (3d Cir. 2004) (per curiam) ..............57

## STATE CASES

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503 (Tex. App. 2003)............................22

*Aetna-Standard Eng'g Co. v. Rowland*, 493 A.2d 1375 (Pa. Super. Ct. 1985) ............14

*All-Pak v. Johnston*, 694 A.2d 347 (Pa. Sup. Ct. 1997)................................................................27

*Allied Supply Co. v. Brown*, 585 So. 2d 33 (Ala. 1991) .................................................................24

*Amoco Prod. Co. v. Lindley*, 609 P.2d 733 (Okla. 1980) .................................................11, 14, 17

*Bank of Landisburg v. Burruss*, 524 A.2d 896 (Pa. Super. Ct. 1987)...........................................10

*Berardi's Fresh Roast, Inc. v. PMD Enterprises, Inc.*, No. 90822, 2008 WL
    4681825 (Ohio Ct. App. Oct. 23, 2008) ..............................................................................25, 26

*Brooks Automation, Inc. v. Blueshift Techs.*, Inc., No. 05-3973-BLS2, 2006 WL
    307948, at *7 (Mass. App. Ct. June 14, 2007).....................................................................26, 31

*Collen v. Source EDP Tex., Inc.*, 576 S.W.2d 435 (Tex. Civ. App. 1978)....................................28

*eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002)...........................42, 57

*F.A. Bartlett Tree Experts v. Barrington*, 33 N.E.2d 756 (Mass. 1968).......................................30

*Grace Hunt IT Solutions, LLC v. SIS Software, Inc.*, No. SUCV201200080BLS1,
    2012 WL 1088825 (Mass. Super. Feb. 14, 2012).....................................................................30

*Harllee v. Prof'l Serv. Indus., Inc.*, 619 So. 2d 298 (Fla. Dist. Ct. App. 1992) (per
    curiam) ......................................................................................................................................22

*Hart v. Arnold*, 884 A.2d 316 (Pa. Super. Ct. 2005) ..............................................................42, 57

*Hess v. Gebhard & Co., Inc.*, 808 A.2d 912 (Pa. 2002) ...........................................................26, 29

*Hudgens v. Olmstead Mfg. Co.*, 300 S.W.2d 26 (Ark. 1957) .......................................................28

*Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462 (Pa. 2006)................................12

*Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172 (Ohio 1990) .........................................................13

*Koken v. Steinberg*, 825 A.2d 723 (Pa. Commw. Ct. 2003) ........................................................43

*Maryland Metals v. Metzner*, 382 A.2d 564, 571 (Md. 1978).....................................................22

*Nelson Jewellery Arts Co. v. Fein Designs Co.,* No. 23655, 2007 WL 4554448
    (Ohio Ct. App. Dec. 28, 2007)..................................................................................34, 35, 38

*Paul v. North*, 380 P.2d 421 (Kan. 1963) ...................................................................................13

*Phico Ins. Co. v. Presbyterian Med. Serv. Corp.*, 663 A.2d 753 (Pa. Super. Ct.
    1995) .........................................................................................................................................41

*PTSI, Inc. v. Haley*, No. GD 11-009299, 2012 WL 8255269 (Pa. Ct. Com. Pl.,
  Allegheny Cnty. Apr. 2, 2012).................................................................................21

*Reading Aviation Serv., Inc. v. Bertolet*, 311 A.2d 628, 630 (Pa. 1973) .......................31

*Redevelopment Auth. of Phila. v. Lieberman*, 336 A.2d 249 (Pa. 1975) ................12, 13

*Sidco Paper Co. v. Aaron*, 351 A.2d 250 (Pa. 1976) ....................................................28

*Spring Steels, Inc. v. Malloy*, 162 A.2d 370 (Pa. 1960)................................................21

*Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721 (1964) ............10

*Taser Int'l, Inc. v. Ward*, 231 P.3d 921 (Ariz. Ct. App. 2010) .....................................23

*Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979)...................................59

*TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 260 (Pa. 2012) ....................11

*Wexler v. Greenberg*, 160 A.2d 430 (Pa. 1960)...........................................................13

*White Heat Prods. Co. v. Thomas*, 109 A. 685 (Pa. 1920) ..........................................14

## STATUTES AND RULES

15 U.S.C. § 1125(a)(1)(B) .............................................................................................19

15 U.S.C. § 1127............................................................................................................13

17 U.S.C. § 102(a) .........................................................................................................12

35 U.S.C. § 101..............................................................................................................15

18 U.S.C. § 1030 (2012)..............................................................................45, 46, 48, 51

Fed. R. Civ. P. 56(a) ........................................................................................................7

12 Pa. Cons. Stat. Ann. § 5302 (West 2013) ................................................................15

## OTHER AUTHORITIES

Louis Altman & Malla Pollack, Callman on Unfair Compensation, Trademarks,
  and Monopolies § 14:36 (4th ed. 2013)....................................................................13

Restatement (Second) of Torts............................................................................. *passim*

Restatement (Third) of Agency .....................................................................................24

## INTRODUCTION

This case is, at its core, a non-compete case. The central issue for the jury is whether Defendants John Marotta ("Marotta") and Charles ("Chaun") Powell ("Powell") breached their contractual obligations not to compete against their former employer, Plaintiff Synthes, Inc. ("Synthes"), in the marketplace of their former Synthes sales territories during a limited time period. As to those questions, disputed facts abound, and Defendants do not seek summary judgment on those claims.

Yet, Synthes has gone to great lengths to turn this case into something more in order to try and quash legitimate competition from Defendant Emerge Medical, Inc. ("Emerge"). In its efforts, Synthes has lodged thirteen separate claims against five Defendants and boldly asserts that it owns Emerge—*the entire company and all of its profits*. The purported basis for this effort to annihilate a fledgling market competitor is that Marotta, Emerge's founder, and Powell used to work for Synthes and, during their employment, signed boilerplate Confidentiality, Non-Solicitation and Non-Competition Agreements ("Non-Competition Agreement") and Employee Innovation and Non-Disclosure Agreements ("Employee Innovation Agreement").Synthes' attempts to expand Marotta's and Powell's non-compete obligations far beyond what the contracts provide is not supported by the law, and Defendants are entitled to summary judgment on these meritless claims. For example, Synthes claims that because Marotta developed the concept for Emerge while he was employed by Synthes, his Employee Innovation Agreement requires him to hand over the entire company to Synthes. But this interpretation of the Employee Innovation Agreement—which in many circumstances would effectively bar an employee from *ever* competing with his former employer—contradicts the plain language of that agreement and ignores the public policy considerations that underlie decades of non-compete

agreement law.  Because Synthes' interpretation of the Employee Innovation Agreement is incorrect as a matter of law, Marotta is entitled to summary judgment on Synthes' allegations that the formation of Emerge breached this agreement.  In addition, it is widely recognized under Pennsylvania law (and the law of other jurisdictions) that employees may prepare to compete with their current employer, as long as they do not engage in actual market competition during their employment or during the period of any applicable non-compete agreement.  Nevertheless, a large portion of Synthes' claims for breach of contract and breach of fiduciary duty depends upon a litany of conduct that has been recognized by courts to constitute mere preparation to compete, behavior that is both permissible and even desirable to foster a competitive market. Marotta is also entitled to summary judgment on Synthes' claims that such preparatory activities breached his agreements with Synthes or any fiduciary duty he owed to Synthes.

Synthes has layered its Amended Complaint with numerous additional claims against Emerge, Marotta and Powell that merit summary judgment.  As further described below, after years of extensive discovery, Synthes either has no factual evidence or no legal basis to support the elements of certain of its claims for tortious interference, aiding and abetting breach of fiduciary duty, conversion, trespass, fraud, civil conspiracy, and violation of the Computer Fraud and Abuse Act.  Now that discovery has closed, the case is ripe to be narrowed.  We respectfully request that the Court dismiss Synthes' invective and over-reaching allegations so that the parties and the Court can prepare for a trial focused on the truly disputed issues of fact.[1]

---

[1] As to the claims not addressed by this Motion, Defendants do not concede that there are undisputed facts sufficient to support Synthes' claims or that the claims have any legal merit.

## **FACTUAL BACKGROUND**

Marotta and Powell are former employees of Synthes, which is a medical device company that markets and sells devices used in orthopedic surgery.  SUMF ¶¶ 1, 2, 4.[2]  Marotta and Powell worked in sales in Synthes' Trauma division.  *Id.* ¶¶ 2, 4.  At the time they terminated their employment with Synthes, Marotta was a Regional Manager in Colorado, and Powell was a Sales Consultant in the Denver area who reported to Marotta.  *Id.* ¶¶ 2, 4.

███████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████ Synthes drafted the agreements and required the employees to sign them.  *Id.* ¶ 8. █████████████████████████

██████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████

██████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

[2] Defendants have filed contemporaneously herewith a separate Statement of Undisputed Material Facts ("SUMF") that contains a more complete recitation of the facts material to Defendants' motion.

████████████████████████████████████████████████████

███████████████████████████████

        █████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ filed for trademark protection; ████████████████

████████████████████████████████████████████████

████████████████████████████ and contacted an engineering firm about designing and

manufacturing products for the company.  *Id.* ¶ 24.

        ████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

        █████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████



████████████ Brown ultimately was not involved in the formation of the

company.  *Id.* ¶¶ 29-30.  His involvement in the discussions ceased in December 2009 and after

that, Brown had no involvement with Marotta and Stassen regarding Emerge or the business

model on which Emerge is based.  *Id.* ¶ 30. ████████████████████████

████████████ Brown resigned from Synthes effective August 2, 2010, but he

has never worked for Emerge.  *Id.* ¶ 3.

Marotta's and Stassen's business plan was that Emerge would ████████████

████████████ by offering generic versions of certain common, ████████

orthopedic trauma supplies ████████████████████████

Emerge would then sell the products at a significant discount ████████ these savings

would be achieved in large part by not hiring a significant sales force ████████

████████████ instead marketing directly to the

hospital executives responsible for purchasing decisions ████████ Emerge was

incorporated in Colorado on January 13, 2010, under the name Emerge Surgical, Inc., ████

████████████ Its corporate purpose, pursuant to its Amended and

Restated Articles of Incorporation, was to "engage in any lawful business."  *Id.*  The name was

changed to Emerge Medical, Inc. on June 23, 2010.  *Id.*  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

On March 15, 2010, Marotta terminated his employment with Synthes, effective April 15,

2010.  *Id.* ¶ 2.  ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Powell resigned from Synthes on March 15, 2010, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

On March 4, 2011, Synthes brought this suit against Emerge, Marotta, Brown, Stassen, and Powell.  Brown and Stassen were dismissed from the suit in January 2013.  *Id.* ¶¶ 3-4.

**ARGUMENT**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A factual dispute is "material" when it could affect the outcome of the case under the governing law.  *Id.*

Although the moving party must establish the absence of a genuine dispute of material fact, it need not "'support its motion with affidavits or other similar materials negating the opponent's claim.'"  *Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, -4775, 2012 WL 2466616, at *2 (E.D. Pa. June 27, 2012) (Buckwalter, J.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  It can meet its burden instead by "'pointing out . . . that there is an absence of evidence to support the nonmoving party's claims.'"  *Knit With*, 2012 WL 2466616, at *2 (ellipsis in original) (quoting *Celotex*, 477 U.S. at 325).  Once the movant has carried its initial burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to material facts.'"  *Id.* at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral

7

argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  The mere

existence of some evidence in support of the non-movant will not be adequate to support a denial

of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to

find for the non-movant on that issue.  *Jackson Nat'l Life Ins. Co. v. Heyser*, No. 12-5051, 2013

WL 5278240, at *3 (E.D. Pa. Sept. 19, 2013) (Buckwalter, J.) (citing *Anderson,* 477 U.S. at 249–

50).  If the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial," summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.

Because the Amended Complaint lodges so many different allegations, based on different

theories, against different defendants (and combinations of defendants), and because this Court

(and Synthes) have already dismissed several of the claims against multiple defendants, we

provide the attached that summarizes the relief we seek, for the Court's convenience.  Ex. 38.

## I.    DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE MAROTTA DID NOT BREACH HIS EMPLOYEE INNOVATION AGREEMENT (COUNTS II, VII, AND VIII).

Defendants are entitled to partial summary judgment as to Counts II, VII, and VIII to the

extent those counts depend on the contention that Marotta was obligated pursuant to his

Employee Innovation Agreement to assign the Emerge business plan, as well as everything else

related to Emerge, to Synthes as its exclusive property.

While he was employed at Synthes, Marotta began to develop a business plan for a

company that would compete with Synthes by offering generic equivalents of certain non-patent

protected Synthes products at a much lower price.  According to Synthes, Marotta was

contractually obligated to "assign" that idea to Synthes as its "exclusive property."  Ex.10

(Synthes 38).  Synthes claims that because he did not do so, Marotta breached his Employee

Innovation Agreement (Count II), converted Synthes' property (i.e., the idea for Emerge and,

therefore, Emerge itself) by developing and operating Emerge (Count VII), and violated the

Lanham Act by "falsely" advertising that Emerge owned the products it was selling (Count

VIII).  As explained below, Synthes' claim that it is entitled to "own" the concept and business

model of a generic competitor is refuted by the plain language of the Employee Innovation

Agreement, which only applies to ***assignable intellectual property***.  Nothing about the idea or

business model for Emerge even remotely qualifies as assignable intellectual property.  And even

if Synthes had drafted language that would permanently preclude Marotta from ever starting any

competing business, Pennsylvania case law concerning non-competition agreements would

strongly weigh against enforcement of such a provision.  After all, Synthes is not actually

seeking a genuine assignment of intellectual property; Synthes is asking the Court to hand it the

authority to prevent Emerge and Marotta from ***ever*** competing with it.

> Synthes contends that pursuant to the Employee Innovation Agreement, Marotta agreed

> to disclose and assign to Synthes ***as its exclusive property, all
> inventions and technical or business innovations***, including
> computer software developed or conceived by me solely or jointly
> with others on company time or on my own time during the period
> of my employment, (1) that are along the lines of the business,
> work or investigations of SYNTHES or its affiliates to which my
> employment relates, or as to which I may receive information due
> to my employment, or (2) that result from or are suggested by any
> work which I may do for SYNTHES or (3) that are otherwise made
> through the use of SYNTHES time, facilities or materials.

Am. Compl. ¶ 56 (emphasis in original); Employee Innovation Agreement ("EIA") ¶ (a).[3]

Relying upon that provision, Synthes argues that it "owns," and Marotta is required "to assign,"

all of Emerge's "offerings, business models, plans, strategies, names, logos, and slogans and all

---

[3] Separate provisions of the agreement address "non-disclosure" obligations.  Ex. 10 (Synthes 38).
Synthes alleges that Marotta and Powell breached these provisions as well.  Am. Compl. ¶¶ 200-202.
Synthes' contentions that Marotta and Powell improperly disclosed and/or failed to return upon
termination Synthes confidential material will be shown at trial to be without merit, but do not fall within
the relief requested by this motion.

implants, instrumentation, and intellectual property associated with them and with any other products developed or marketed by Emerge."  Am. Compl. ¶¶ 204, 206.  Synthes is wrong.  Most of what Synthes seeks to have declared its property ***is not property at all***, and the remainder does not fall within the scope of the Employee Innovation Agreement for other reasons.[4]

### A. Emerge's Business Plan Cannot Legally Be "Assigned" to Synthes as Its "Exclusive Property."

To prevail on its claim that Marotta was obligated to assign to Synthes the business models, plans, and strategies of Emerge (collectively, the "Emerge Business Plan"), Synthes must prove that the Emerge Business Plan constituted an "invention" or "technical or business innovation" that the Employee Innovation Agreement required be "assigned" to Synthes as its "exclusive property."  Synthes cannot do so because the Emerge Business Plan falls within no recognized category of intellectual property; it is merely an idea that cannot be "assigned" as "exclusive property," and thus plainly falls outside the scope of the Employee Innovation Agreement.[5]

### 1. The plain language of the Employee Innovation Agreement assignment provision limits its scope to assignable intellectual property.

"[I]nformation is not property unless some law makes it so."  *Jardin v. Datallegro, Inc.*, No. 10-CV-2552-IEG WVG, 2011 WL 1375311, at *3 (S.D. Cal. Apr. 12, 2011) (internal

---

[4] With Defendant Brown dismissed from the case, the Amended Complaint appears to lodge these allegations against only Marotta, but these arguments would apply equally to Powell, who neither founded nor created Emerge.  SUMF ¶ 31.

[5] In Count VII, Synthes also alleges that because Emerge was developed during Marotta's tenure at Synthes, it is therefore Synthes' "property" that has been converted by Emerge.  Am. Compl. ¶¶ 265-267. For all the reasons stated in this section, Emerge is not the property of Synthes and Defendants are entitled to partial summary judgment on Synthes' conversion claim.  *See, e.g.*, *Bank of Landisburg v. Burruss*, 524 A.2d 896, 898 (Pa. Super. Ct. 1987) ("Conversion is defined as 'the deprivation of another's right of property in, or use or possession of, a chattel . . . without the owner's consent and without lawful justification.'" (quoting *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964)).

quotation marks omitted).  Here, the plain language of the Employee Innovation Agreement makes clear that that agreement applies only to *assignable* intellectual property.  "When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning." *myService Force, Inc. v. Am. Home Shield*, No. 10-6793, 2013 WL 180287, at *16 (E.D. Pa. Jan. 17, 2013) (brackets omitted) (quoting *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 260 (Pa. 2012)).  Parties are "bound by the appropriate objective definition of the words they use to express their intent," including legal terminology.  *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980) ("[C]ertain words attain binding definition as legal terms of art.").

The language Synthes selected to describe the **scope** of subject matter covered by the Employee Innovation Agreement—"inventions" and "innovations"—is uniformly understood to apply to patents and trade secrets.  Assignment agreements purporting to convey ownership of "inventions" to an employer have generally been held to reach only inventions "which would be considered such under applicable patent law, whether the invention is patented or not."  *Amoco Prod. Co. v. Lindley*, 609 P.2d 733, 740, 742 (Okla. 1980) ("A search of the cases which hold that by express contract an employer is the owner of his employee's invention shows that these cases inevitably deal with patent law and patent applications.").  This is particularly applicable where, as here, the "contract is liberally laced with language concerning patents."  *Id.* at 742.[6] The term "innovations" is more expansive, covering not only patentable ideas but also those protectable as trade secrets.  *See, e.g.*, *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1011 (10th

---

[6] For example, the Employee Innovation Agreement requires that employees "make and maintain for Synthes adequate and current written records of all such inventions or innovations as set forth in Synthes operating guidelines (PD020 *Patent Applications*)."  SUMF ¶ 10.

Cir. 2008) ("[T]rade secret law applies to innovations that may not ever be amenable to patent, given patent law's strict requirements of novelty, utility, and non-obviousness.").

This conclusion is reinforced by the language Synthes selected to describe what an employee is ***required to do*** with such an "invention" or "innovation." Synthes requires its employees to "assign" the "invention" or "innovation" to Synthes as the "exclusive property" of Synthes. Read in conjunction, these legal terms make sense only in the context of legally recognized property rights. "An assignment is a transfer of property or a right from one person to another . . . ." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 466 n.1 (Pa. 2006). "'Property' has been used over the years to describe both the physical object which is the subject of ownership, and to describe the aggregate of rights which an owner possesses in or with respect to the physical object." *Redevelopment Auth. of Phila. v. Lieberman*, 336 A.2d 249, 252 (Pa. 1975). In requiring employees to assign "exclusive property," Synthes highlighted what the Supreme Court has described as "one of the most essential sticks in the bundle of rights that are commonly characterized as property"—"the right to exclude others." *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979).

In light of this language, the only reasonable construction of the Employee Innovation Agreement is that it requires employees to assign to Synthes those inventions and innovations that constitute ***assignable intellectual property***, namely those protected (or protectable) as patents and trade secrets.[7] It is clearly established that both patents and trade secrets qualify as

---

[7] The other two primary forms of recognized intellectual property—copyright and trademark—are also assignable property. *See Stewart v. Abend*, 495 U.S. 207, 220 (1990) ("An author holds a bundle of exclusive rights in the copyrighted work . . . By assigning the renewal copyright in the work without limitation . . . the author assigns all of these rights.") (footnote omitted); *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 498 (3d Cir. 1998) ("Trademarks are property . . . ."); *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986) (discussing assignability of trademarks). These, however, are not typically referenced as "inventions" or "innovations." Rather, copyright creates a property interest in "original works of authorship," *see* 17 U.S.C. § 102(a), often

assignable intellectual property.  *See, e.g.*, *Univ. Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1219 (E.D. Pa. 1991) ("Patents have the attributes of personal property and both patents and applications for patents are assignable."); Louis Altman & Malla Pollack, *Callman on Unfair Compensation, Trademarks, and Monopolies* § 14:36 (4th ed. 2013) ("A trade secret is intangible property . . . . [that] may be transferred for valuable consideration or as a gift.") (footnotes omitted); *cf. Wexler v. Greenberg*, 160 A.2d 430, 437 (Pa. 1960) ("Ownership of a trade secret . . . give[s] the owner . . . a proprietary right which equity protects against usurpation by unfair means.").

By contrast, "[i]t is . . . generally agreed that ideas are ***not*** the property of anyone unless expressed in a legally protected manner."  *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990) (emphasis added); *see also Paul v. North*, 380 P.2d 421, 431 (Kan. 1963) (holding with respect to plan to sell business and publicly available financial data that "[t]his information was not confidential, and information of this type is not 'property' which is capable of being owned by anyone").  Unless the law recognizes an idea as property and defines the "aggregate of rights which an owner possesses in or with respect to [it]," *Redevelopment Auth.*, 336 A.2d at 252, then an "assignment" of that idea to another person as "exclusive property" can have no legal significance.  By asking the Court to extend the application of the Employee Innovation Agreement beyond assignable intellectual property—i.e., patents and trade secrets—Synthes renders the Agreement unintelligible because "assigning" that which the law does not recognize as property to be the "exclusive property" of Synthes would be meaningless.  And it is a

---

referenced generally as "works," *see, e.g.*, *Malibu Textiles, Inc. v. Carol Anderson, Inc.*, No. 07 Civ. 4780 (SAS), 2008 WL 2676356, at *5-7 & n.101 (S.D.N.Y. July 8, 2008) (analyzing whether copyright in "works" has been assigned and quoting language of assignment agreement).  Trademark creates a property interest in "trademarks" and "service marks," often referenced generally as "marks," 15 U.S.C. § 1127 ("The term 'mark' includes any trademark, service mark, collective mark, or certification mark."); *City of Newark v. Beasley*, 883 F. Supp. 3, 9 (D.N.J. 1995) ("Trademark and servicemark rights are established by public use of a mark.").

fundamental rule of contract interpretation that agreements should not be construed in a way that fails to give meaning to all of their terms or renders them absurd.  *See Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 430 (3d Cir. 2012) ("To interpret the contract that way would violate a cardinal rule of contractual interpretation that counsels against rendering words or provisions meaningless.").  Accordingly, the plain language of the Employee Innovation Agreement requiring that employees "assign" their "inventions" and "innovations" to Synthes as its "exclusive property" can only extend to the boundaries of that which the law recognizes as assignable intellectual property and, therefore, does not extend to the Emerge Business Plan.

But even if there were ambiguity on this score, it would have to be resolved against Synthes.  Synthes drafted the Employee Innovation Agreement and required Marotta (as well as all of its other employees) to sign it.   Am. Compl. ¶ 31.  It is a fundamental canon of contract interpretation that contract language is construed against the drafter.  *See Amoco Prod. Co.*, 609 P.2d at 745 (construing pre-assignment invention agreement against employer who drafted it).  This general doctrine has even greater force here when combined with the principle that, "[f]or over one hundred years, courts have looked skeptically upon employment contracts that require an employee to assign his inventions to his employer."  *Freedom Wireless, Inc. v. Boston Commc'ns Grp., Inc.*, 220 F. Supp. 2d 16, 18 (D. Mass. 2002).  It is "'black-letter law'" in Pennsylvania that "'where the product of an inventive mind is sought to be appropriated under an agreement to assign to another, the language of the agreement must be clear and show an unmistakable intention that the particular matter covered by the invention or patent is within the invention of the parties.'"  *Aetna-Standard Eng'g Co. v. Rowland*, 493 A.2d 1375, 1380 (Pa. Super. Ct. 1985) (quoting *White Heat Prods. Co. v. Thomas*, 109 A. 685, 686 (Pa. 1920)).

14

2.     **The Emerge Business Plan does not constitute assignable intellectual property.**

No element of the Emerge Business Plan, nor the plan taken as a whole, constitutes intellectual property that could be protected under patent law or trade secret law and therefore "assigned" to Synthes as its "exclusive property."  The Emerge Business Plan can be summarized as follows.  Emerge would ███████████████████████████████████████ by offering generic versions of certain common, non-patented orthopedic trauma supplies ████ ████████████████████████████████████████ Rather than paying a large force of sales representatives to market these products, Emerge would work directly with hospital administrators and department heads, enabling savings that would be passed on to the hospital through discounted pricing, ██████████████████████████████████████

No aspect of the Emerge Business Plan is cognizable as property under patent law because none of it falls within the scope of eligible subject matter, which is limited to "processes, machines, manufactures, and compositions of matter."  *Bilski v. Kappos*, 556 U.S. ___, 130 S. Ct. 3218, 3225 (2010) (citing 35 U.S.C. § 101).[8]  Nor does any aspect of the Emerge Business Plan qualify as a trade secret.  Under Pennsylvania law, a "[t]rade secret" is "[i]nformation . . . that: (1) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use [and] (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  12 Pa. Cons. Stat. Ann. § 5302 (West 2013). "'[T]he essence of a trade secret is that it derives its value from secrecy.'"  *Mainardi v.*

---

[8] The Supreme Court has recognized that, in some cases, business methods may satisfy the statutory definition of process, but concluded that the concept of hedging risk and applying that concept to energy markets amounted to "abstract ideas" that were not patentable.  *Bilski*, 130 S. Ct. at 3228-30.  Similarly, the Emerge Business Plan constitutes no more than application of certain well-known business and economic principles to a particular product market.

*Prudential Ins. Co.*, No. 08-3605, 2009 WL 229757, at *9 (E.D. Pa. Jan. 30, 2009) (quoting

*Stromback v. New Line Cinema*, 384 F.3d 283, 305 (6th Cir. 2004)).  Accordingly, "a product

cannot constitute a trade secret when it provides its creator with economic value only when

disseminated . . . to third parties."  *Id.*  Information disclosed to the public cannot be protected as

a trade secret.  *G. Neil Corp. v. Cameron*, No. 03-4419, 2003 WL 22533698, at *1 (E.D. Pa. Oct.

21, 2003).

    In the case of Emerge, there was no aspect of the Emerge Business Plan that could have

"derived[d] independent economic value" from being maintained as a secret.  To the contrary,

Emerge would not be able to generate economic value while keeping "secret" that it was selling

generic products ██████████████████ products at a lower price and without having sales

representatives attend surgeries.  Indeed, in order for Emerge to attract customers, ███████

███████████████████████████████████████████████ and derived value

from doing so.  SUMF ¶ 21.  It is therefore clear that the Emerge Business Plan does not fall

within the plain meaning of the Employee Innovation Agreement.

> ### 3.   Synthes cannot contract to prohibit permanently employees from ever competing with it merely because the idea for a competing business arises during employment.

    Synthes' strained interpretation of the Employee Innovation Agreement would effectively

prevent employees from ***ever*** competing with Synthes if the idea for how to compete germinated

during the term of employment.  Synthes' interpretation contravenes the law of non-competition

agreements and runs afoul of important public policy considerations: it would enable employers

to protect themselves permanently from all resulting competition and, in so doing, permanently

deprive society of the same.  But non-competition agreements are generally ***not*** permitted to be

indefinite.  *See, e.g., Darius Int'l, Inc. v. Young*, No. 05-6184, 2008 WL 1820945, at *40 (E.D.

Pa. Apr. 23, 2008) (declining to "enforce the unlimited duration of the parties' non-competition

agreements"). And courts only enforce restrictive covenants that "protect the employer's legitimate interests;" courts do not enforce provisions principally directed at lessening competition. *PharMethod, Inc. v. Caserta*, 382 F. App'x. 214, 219 (3d Cir. 2010) ("[e]liminating competition or gaining an economic advantage, however, are not legitimate business interests"). Courts have adopted these limitations not only for the benefit of the employees themselves, but also for the benefit of the public at large, which gains from greater competition. *Darius Int'l*, 2008 WL 1820945, at *40 ("The public has a general interest in a free, competitive marketplace."). Synthes itself has proffered an expert who opines that with respect to "an idea for a product or business model, . . . [t]he most common birthplace of an idea is within an existing company." Deposition of Terry Corbin Dep. (Sept. 25, 2011) ("Corbin Dep.") at 108:19-109:20.

       **B.**    **The Names, Logos and Slogans for Emerge Are Not "Inventions" or "Technical or Business Innovations."**

      In contrast to Emerge' Business Plan, Emerge's name and logo potentially constitute assignable property under trademark law. *See supra* note 7. Even assuming that the name and logo of Emerge could constitute assignable property, they still would not fall within the scope of the Employee Innovation Agreement because they constitute neither an "invention" nor a "technical or business innovation." As discussed previously, the term "invention" is generally interpreted in pre-invention assignment agreements as referencing patent law. *See Amoco*, 609 P.2d at 740. Words and logos, of course, are not patentable. *See Bilski*, 130 S. Ct. at 3225 (patents may be granted only for "processes, machines, manufactures, and compositions of matter"). Nor could the Emerge name and logo plausibly be deemed "technical or business innovations." Indeed, the law of trademark is unconcerned with innovation. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012)

("[T]rademark law is not intended to 'protect[ ] innovation by giving the innovator a monopoly' over a useful product feature.  Such a monopoly is the realm of patent law or copyright law, which seek to encourage innovation, and not of trademark law, which seeks to preserve a 'vigorously competitive market' for the benefit of consumers.") (citations omitted). Furthermore, while Synthes might have a legitimate interest in names and marks associated with its own brand—for example, if Marotta had developed a new stylized version of the Synthes logo—it has no plausible legitimate interest in the distinct name or logo of an entirely separate company that competes with Synthes.

### C.   Emerge's Product Offerings Are Not "Inventions" or "Technical or Business Innovations."

None of Emerge's products—*i.e.*, cannulated screws, drill bits, and guide wires—constitute "inventions" or "technical or business innovations" in any sense.



Indeed, Emerge outsourced that task to Orchid, a firm that offers services that include reverse engineering.  Deposition of Ron Litke (Sept. 16, 2011) ("Litke Dep.") at 27:22-28:16.  And neither the idea nor the result of reverse engineering a screw or other orthopedic device is eligible for protection as a patent, a trade secret, or any other form of intellectual property.  *Cf. SI Handling Sys., Inc., v. Heisley*, 753 F.2d 1244, 1255 (3d Cir.

1985) (holding that product design susceptible to reverse engineering cannot be protected as a

trade secret).[9]

### D.   Emerge Itself Is a Colorado-registered Corporation, Not an "Invention" or "Technical or Business Innovation."

Synthes has alleged that "Emerge" itself "belong[]" to Synthes.  Am. Compl. ¶ 290.

Emerge itself is neither an "invention" nor a "technical or business innovation."  It is merely a

Colorado-registered corporation, Am. Compl. Ex. A (Certificate of Good Standing), formed to

"engage in any lawful business," Am. Compl. Ex. C (Am. & Restated Articles of Incorporation

of Emerge Surgical, Inc.).  A corporation in and of itself is not assignable property.

## II.   DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE MAROTTA'S PREPARATIONS TO COMPETE DID NOT BREACH HIS FIDUCIARY DUTY TO SYNTHES OR VIOLATE THE NON-COMPETITION PROVISION OF HIS NON-COMPETE AGREEMENTS (COUNTS I AND II).

In Counts I and II, Synthes alleges that a litany of actions taken by Defendants violated

both their fiduciary duties and their non-competition agreements.  These activities can be fairly

divided between those described as preparing to compete and those described as actual

competition.  Defendants are entitled to partial summary judgment as to Counts I and II as to the

conduct that was preparatory to any actual competition.

The law draws a clear distinction between competing and preparing to compete.  In this

case, that distinction makes a difference because Synthes alleges that each preparatory step

Marotta took towards forming and operating Emerge violated both his fiduciary obligations to

---

[9] In Count VIII, Synthes alleges that Emerge violated the Lanham Act by "falsely" advertising that it owned the products it was selling when those products actually belonged to Synthes.  Am. Compl. ¶ 276. For all the reasons stated in this section, Emerge products are not the property of Synthes, and Defendants are entitled to partial summary judgment on Synthes' Lanham Act claim because Emerge's representations were not false.  15 U.S.C. § 1125(a)(1)(B).

Synthes and his non-competition agreements.  Synthes is wrong as a matter of law.  Marotta's preparatory activities did not breach either his fiduciary duties or his non-compete agreements.

Synthes alleges that Marotta, while employed by Synthes, "fully financed Emerge, filed its articles of incorporation, and contracted with a design, development, regulatory, and manufacturing contractor for Emerge's planned product line, all without Synthes' knowledge." Am. Compl. ¶ 4.  The Amended Complaint charges the following activies as breaches of fiduciary duty and of the non-competition agreements: (i) the "clandestine planning of Emerge while Marotta . . .  [was] employed by Synthes," *id.* ¶ 124; (ii) Marotta's "development of a new business model" that he chose not to disclose to Synthes, *id.* ¶ 125; (iii) incorporation of the new company, *id.* ¶¶ 127, 136; (iv) contacting an orthopedic and medical device consulting firm and an accounting firm, *id.* ¶ 128; (v) the development of a business plan and private placement memo for Emerge, *id.* ¶ 130; (vi) the subsequent use of that plan and memorandum to solicit investors, *id.* ¶ 131; (vii) seeking "legal advice regarding the formation of Emerge," *id.* ¶ 132; and (viii) making "trademark filings" with the United States Patent and Trademark Office "relating to the name and logo for Emerge," *id.* ¶ 134.  Synthes alleges as a further breach that "[i]n furtherance of Marotta['s] plan . . . Marotta . . . actively concealed all of [his] Emerge-related activities, while [he was] employed by Synthes." *Id.* ¶¶ 4, 146.  These activities, taken in preparation to compete with Synthes, but not in actual competition with Synthes, did not violate Marotta's fiduciary duties or his non-competition agreements.[10]

---

[10] Synthes' claim for breach of fiduciary duty (Count I) is not brought against Defendant Powell. Because Powell was not involved in the formation of Emerge, we do not understand Synthes to have asserted any breach of contract claims (Count II) against him with respect to conduct preparing to compete with Synthes.  To the extent Synthes did intend to raise such claims, the arguments herein apply equally to Powell.

### A.  Marotta's Preparation To Compete Did Not Breach His Fiduciary Duty or Duty of Loyalty to Synthes.

In the absence of an agreement that is explicitly to the contrary, preparatory steps to compete of the kind alleged in the Amended Complaint do not constitute breaches of loyalty or fiduciary duty.  In *PTSI, Inc. v. Haley*, No. GD 11-009299, 2012 WL 8255269 (Pa. Ct. Com. Pl., Allegheny Cnty. Apr. 2, 2012), the defendants were certified trainers who started their own training business in direct competition with their employer, plaintiff PTSI.  While still employed by PTSI, the defendants incorporated their new business; entered into a lease agreement for a business facility; bought equipment for the new business; and contacted current clients to let them know of the formation of the competing business.  The court granted summary judgment in defendants' favor on claims they had breached their fiduciary duties or their duty of loyalty, finding that all of these activities were not competition but rather mere preparation to compete, which is "permissible under applicable law and did not constitute a breach of any duties owed" by the defendants."  *Id.* at *4.

In *Spring Steels, Inc. v. Malloy*, 162 A.2d 370 (Pa. 1960), the Supreme Court of Pennsylvania affirmed dismissal of an employer's complaint alleging that preparations to compete breached the employee's fiduciary duty.  The court stated that "[e]ven before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot use confidential information peculiar to his employer's business.  Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete . . ."  162 A.2d at 374-75.  *See also United Aircraft Corp. v. Boreen*, 413 F.2d 694, 700 (3d Cir. 1960) (following *Spring Steels* and holding no breach of fiduciary duty where at-will employees secretly formed competing corporation and encouraged other employees to join new corporation); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp.

21

2d 598, 652  ("Even the existence of a fiduciary relationship between employee and employer does not preclude the fiduciary from making preparations for a future competing business venture . . . .") (internal quotation marks omitted).

The scope of permissible "preparatory" activities is broad and includes the preparatory conduct alleged here.  Courts have held that an employee does not breach his or her duty of loyalty by any of the following actions:

- meeting with others to discuss formation of a new company, purchasing shares of the new company, and making limited use of previous employer's working time to plan the formation of the new company, *United Aircraft Corp. v. Boreen*, 284 F. Supp. 428, 433-36 (E. D. Pa.1968), *aff'd*, 413 F.3d 694 (3d Cir. 1969);

- scheduling an appointment with current employer's largest customer to discuss the new business, *New L & N Sales & Mktg., Inc. v. Menaged*, No. 97-4966, 1998 WL 575270, at *7 (E.D. Pa., Sept. 9, 1998);

- filing a corporate charter for a new competing company, *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 964 (M.D. Tenn. 2011);

- registering a trademark for the competing venture, *Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551, 557 (S.D.N.Y. 1984), *aff'd*, 761 F.2d 93 (2d Cir. 1985);

- purchasing equipment for the competing venture, *Maryland Metals v. Metzner*, 382 A.2d 564, 571 (Md. 1978);

- opening a bank account and obtaining office space and telephone listings for the new company, *Harllee v. Prof'l Serv. Indus., Inc.*, 619 So. 2d 298, 300 (Fla. Dist. Ct. App. 1992) (per curiam);

- consulting with a lawyer regarding the new company, *Fitness Experience, Inc. v. TFC Fitness Equip., Inc.*, 355 F. Supp. 2d 877, 893 (N.D. Ohio 2004);

- obtaining permits and insurance for the competing venture, *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 511 (Tex. App. 2003) ("To form his own company, Arizpe had to incorporate or otherwise establish a business entity, obtain permits, and obtain

insurance.  These were permissible preparations to compete, not breaches of a fiduciary duty.");

- advising current clients that he intended to resign and discussing his future plans with those clients, *ProductiveMD*, 821 F. Supp. 2d at 964; and

- developing a business plan, consulting with counsel and conducting preliminary research and product development, *Taser Int'l, Inc. v. Ward*, 231 P.3d 921, 927 (Ariz. Ct. App. 2010) ("A business plan, by its very nature is only a plan and . . . cannot independently constitute disloyal competition.  Similarly . . . interactions with attorneys for [the purpose] of obtaining legal advice and to research existing patents do not constitute direct competition . . . .").



Those actions— are nearly identical to the actions taken in the cases described above.[11]  Notably, not one of those activities constitutes ***actual competition*** with Synthes; instead, all of those activities constitute ***preparation to compete***.  Accordingly, they do not constitute breaches of Marotta's fiduciary duties.

Because it is permissible for an employee to prepare to compete, it is no surprise that the law also imposes no duty on the employee to disclose such preparations to their current employer.  "In general, an employee or other agent who plans to compete with the principal does not have a duty to disclose this fact to the principal. . . .  In this respect, the social benefits of

---

[11] To be clear, not every fact concerning these alleged activities is undisputed.  But even assuming for purposes of summary judgment that all these facts are undisputed, they do not support Synthes' claims for breach of fiduciary duty and breach of contract.

furthering competition outweigh the principal's interest in full disclosure by its agents." Restatement (Third) of Agency, § 8.04 (2006), cmt. c. *See also Rimkus Consulting Grp, Inc.*, 688 F. Supp. 2d at 652 ("The employee has no general duty to disclose his plans and may secretly join with other employees in the endeavor without violating any duty to the employer") (internal quotation marks omitted); *Allied Supply Co. v. Brown*, 585 So. 2d 33, 35 (Ala. 1991) (failing to disclose plans to compete not a breach of fiduciary duty); *Md. Metals, Inc.*, 382 A.2d at 573 (same); *see also United Aircraft Corp.*, 284 F. Supp. at 442 ("Does the fact that the defendants acted in concert and secretly make actionable that which otherwise would not be? We think not.").

    **B.**    **Marotta's Preparation To Compete Did Not Breach the Non-Compete Provision of his Non-Competition Agreement.**

The Non-Competition Clause of the Agreement does not bar preparatory activities.[12]  In Count II of the Amended Complaint, Synthes alleges that Marotta's formation of Emerge also breached his Non-Competition Agreement.  But the non-competition clause of the Non-Competition Agreement, which must be strictly construed against Synthes, by its plain language did not preclude Marotta from taking preparatory measures to compete while still employed at Synthes.  SUMF ¶ 14.  Instead, the agreement bars ***actual competition*** with Synthes.  The Non-Competition Agreement states that Marotta will not "***compete*** in [his] former Region with Synthes' Business."  SUMF ¶ 14 (emphasis added).  Therefore, the Non-Competition Agreement barred Marotta from actually engaging in the marketplace in his former Synthes sales region; it did not expressly bar preparatory activities.

---

[12] For the reasons stated in Section IV, *infra*, we focus here on Marotta's Regional Manager Non-Competition Agreement.  The same analysis would apply, however, to his Arizona Sales Consultant Non-Competition Agreement.

This is consistent with the weight of the case law.  Because preparation is not competition, courts have routinely held that non-competition agreements are not breached by preparatory activities.  In *Viad Corp. v. Cordial*, 299 F. Supp. 2d 466 (W.D. Pa. 2003), for example, a restrictive covenant provided that the employee "shall not, within the E/G Business Territory, engage directly or indirectly, either for himself or for another, or as an employee, partner, consultant, affiliate, or controlling shareholder of any person or entity so engaged, in any business that owns or operates any activity which competes with the Business or Employer's Business, nor compete, or aid another to compete, nor solicit or induce any other employee of Employer . . . or compete in any way with the Business or Employer's Business."  299 F. Supp. 2d at 478.  Prior to the expiration of their non-competition agreements, the former employees formed a corporation for the purpose of aiding their former employer's competitors.  *Id.* at 479. The employees also issued press releases, conducted market research, issued a white paper, and conducted a webcast for potential customers, all during the period their non-compete was in force.  The employer filed suit and sought a preliminary injunction.  Notwithstanding the breadth of the governing non-compete clause, the court denied the motion for injunctive relief, characterizing the former employees' activities as "preparing to aid" competitors.  "The Court holds that mere preparations by Defendants to potentially aid competitors . . . do not rise to the level of breach of their respective covenants."  *Id.* at 480.

In *Berardi's Fresh Roast, Inc. v. PMD Enterprises, Inc*., No. 90822, 2008 WL 4681825 (Ohio Ct. App. Oct. 23, 2008), the defendant sold his ownership interest in the plaintiff corporation, and was thereafter precluded from operating a business in the coffee industry for three years.  The plaintiff argued that the defendant violated his agreement by ordering equipment and supplies for his own coffee business, hiring employees, leasing a building,

25

approaching lenders about financing, and gathering information about pricing products and supplies, all during the period the agreement was in force.  The court of appeals rejected this argument, holding that defendant's actions were preparations to compete, taken so that "he could commence business the day after the non-competition agreement expired," and as such did not violate the agreement.  *Id*. at *5; *see also Ossur Holdings Inc. v. Bellacure, Inc.*, No. C05-1552JJR, 2006 WL 2401269, at *3 (W.D. Wash. Aug. 18, 2006) (no breach of non-compete where employee "hired a design company, applied for a patent, procured supplies, filed . . . articles of incorporation, hired a vice president of sales . . . and completed a majority of product development . . . before the non-competition agreement expired.").

Finally, in *Brooks Automation, Inc. v. Blueshift Techs., Inc.*, No. 05-3973-BLS2, 2006 WL 307948, at *7 (Mass. App. Ct. June 14, 2007),  the former employer alleged that the defendant breached his non-compete by, among other things, forming a corporation and filing a provisional patent application.  The trial court held that these preparations to compete did not breach the agreement, observing that "[i]f a former employee with a routine one-year non-compete agreement cannot even prepare to compete with his former employer during the one year, the effective length of the non-competition period . . . would be significantly longer than one year.  An employee . . . cannot be tricked into a longer effective period of non-competition by signing a routine non-compete provision."  *Id.* at *7.  Synthes cannot demonstrate a legitimate interest in preventing preparation to compete.

This case law is consistent with the Pennsylvania Supreme Court's caution that "restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living."  *Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 917 (Pa. 2002).  Because such covenants restrain an employee's trade, they

are "strictly construed against the employer." *Fres-Co Sys. USA, Inc. v. Bodell*, No. 05-3349, 2005 WL 3071755, at *3 (E.D. Pa. Nov. 15, 2005) (quoting *All-Pak v. Johnston*, 694 A.2d 347, 351 (Pa. Sup. Ct. 1997)).  Courts have repeatedly rejected former employers' efforts to read restrictions on preparatory activities into agreements where no restrictions exist.

For the foregoing reasons, Defendants ask the Court to grant summary judgment as to the allegations in Counts I and II related to Defendants' preparatory activities. *See supra* at 20.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE LOCATION OF EMERGE'S HEADQUARTERS IN COLORADO DOES NOT CONSTITUTE A BREACH OF MAROTTA'S AND POWELL'S NON-COMPETITION AGREEMENTS (COUNT II).

Defendants are entitled to partial summary judgment as to Count II to the extent it depends on the contention that Marotta's and Powell's Non-Competition Agreements prohibited them from working for any company headquartered in Colorado.

Synthes argues that Marotta and Powell violated their Non-Competition Agreements solely by virtue of the fact that Emerge's administrative corporate headquarters is located in Denver—their hometown and current residence—irrespective of whether any competing sales were actually made in a prohibited region during the period of time covered by the non-compete. Am. Compl. ¶ 195.  Gennett Dep. Ex. 41.  In effect, Synthes is asking the Court to presume that a company does all its business from its headquarters, even where, as here, that company purposefully refrained from engaging in sales in Colorado in order to honor the terms of the employee non-competition agreements.  There is no basis in the language of the agreements, or in reason, for Synthes' claim that it is entitled to recover ***all*** of Emerge's nationwide sales simply because the Emerge corporate headquarters are in Colorado, and the Court should deny Synthes' claim.

Synthes has no legitimate interest in where Emerge's headquarters is located.  It is well-established that "[a] restrictive covenant is reasonably necessary for the protection of the employer when it is narrowly tailored to protect an employer's *legitimate* interests." *PharMethod*, 382 F. App'x at 220 (emphasis in original).  Synthes' only legitimate interest, set out in the Non-Competition Agreements, is to ensure that for a period of twelve months after employment with Synthes terminates, the employee "will not, directly or indirectly, compete in [his] former Region with Synthes Business."  SUMF ¶¶ 14, 16.  To ensure that restrictive covenants protect legitimate business interests rather than stifle legitimate market competition, courts construe competition to mean actual competition in the market place, not the location of a company's headquarters.  *See, e.g.*, *Hudgens v. Olmstead Mfg. Co.*, 300 S.W.2d 26, 28 (Ark. 1957) (holding that where defendant actually carried on business in the restricted area, it was immaterial that his headquarters was located elsewhere); *Collen v. Source EDP Tex., Inc.*, 576 S.W.2d 435, 436-37 (Tex. Civ. App. 1978) (rejecting argument that employee did not violate non-compete because his physical place of business was outside the proscribed area, when employee sold to people living within that area).

As the Third Circuit has advised, "gratuitous over-breadth militates against any enforcement [of the agreements] whatsoever" because it "suggests 'an intent to oppress the employee and/or to foster a monopoly, either of which is an illegitimate purpose.'"  *PharMethod*, 382 F. App'x at 220 (quoting *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254 (Pa. 1976)).  For the foregoing reasons, the Court should grant summary judgment on Count II to the extent it depends on the contention that Marotta's and Powell's Non-Competition Agreements prohibited them from working for any company headquartered in Colorado.

**IV.    MAROTTA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE
HE COULD NOT HAVE BREACHED HIS ARIZONA SALES CONSULTANT
NON-COMPETITION AGREEMENT AS IT WAS NO LONGER
ENFORCEABLE BY THE TIME HE RESIGNED FROM SYNTHES (COUNT II).**

Marotta is entitled to partial summary judgment as to Count II to the extent it depends on

the contention that his Arizona Sales Consultant Non-Competition Agreement prohibiting

competition with Synthes in Arizona remained enforceable for more than one year after he

ceased working in the Arizona region.

In Count II, Synthes alleges that Marotta breached various clauses of both his Arizona

Sales Consultant Non-Competition Agreement and his Regional Manager Non-Competition

Agreement.  Am. Compl. ¶¶ 194-202.  ███████████████████████████████████████

███████████████████████████████████  He was promoted to Regional Manager and

moved to Synthes' Colorado region effective January 1, 2008, after which he no longer had

responsibility for his former Arizona sales region.   SUMF ¶ 2.  ██████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████  Notwithstanding the execution of a completely new non-compete

agreement, restating the same clauses as the prior non-compete, Synthes asserts that Marotta's

Arizona Sales Consultant Agreement also remained in effect and continued to govern Marotta's

conduct upon his resignation from his Regional Manager position—thus barring him from

competing in the market of either region.

Synthes' interpretation is inconsistent not only with Marotta's understanding at the time,

but also with the well-established case law and policy that non-compete agreements are to be

construed narrowly and given effect only to the degree that they "protect the employer's

legitimate interests," *PharMethod, Inc.*, 382 F. App'x. at 220, and do not serve principally as a

"trade restraint that prevents a former employee from earning a living," *Hess v. Gebhard & Co.*, 808 A.2d 912, 917 (Pa. 2002). ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ By the time Marotta resigned from Synthes as a Regional Manager in April of 2010, he had not been working in the Arizona market for more than two years.  By attempting to continue to enforce Marotta's Arizona Sales Consultant Agreement long after Marotta was no longer in that position, therefore, Synthes is effectively seeking to extend the life of that prohibition from one year to more than three years.[13]

In *Gagliardi Bros. Inc. v. Caputo*, 538 F. Supp. 525 (E.D. Pa. 1982), the court found that a one-year restriction on employment, "though perhaps reasonable in the sense of not being excessively long, nevertheless bears no reasonable relationship to the protection of [the employer]."  *Id.* at 529.  While in that case the court held that there was no evidence of harm from permitting the employee to work for a competitor before a year had passed, the principle of reasonableness fully applies here, and has been implemented by other courts in circumstances where one non-competition agreement succeeded another upon a change of employee duties. *See Grace Hunt IT Solutions, LLC v. SIS Software, Inc.*, No. SUCV201200080BLS1, 2012 WL 1088825, at *4 (Mass. Super. Feb. 14, 2012) ("[F]ar reaching changes [in an employment relationship] strongly suggest that the parties had abandoned their old arrangement and entered into a new relationship.") (quoting *F.A. Bartlett Tree Experts v. Barrington*, 33 N.E.2d 756, 758 (Mass. 1968)); *AFC Cable Sys. v. Clisham*, 62 F. Supp. 2d 167, 172-73 (D. Mass. 1999)

---

[13] If Marotta's Arizona Sales Consultant Agreement began to run when he left his sales region, he would have been free to compete in Arizona as of January 1, 2009.  Synthes instead claims that Marotta was barred from competing in Arizona until at least April 15, 2011.

(material change in the employment relationship coupled with employer's "repeated efforts to have [the employee] sign a new non-compete agreement" voided the prior agreement).

Synthes—the draft of the Arizona Sales Consultant Agreement—clearly believed its legitimate competitive interests were adequately protected by a one-year period of freedom from competition from any former Synthes employee.  It is unreasonable to allow Synthes to extend indefinitely the competitive restrictions—in this case at least tripling the length of the restriction—by simply asserting that its non-competes remain in effect even after the employee has moved to a different job in a different region *and signed a different non-compete*.  *See, e.g.*, *Brooks Automation*, 2006 WL 307948 at *7 ("An employee . . . cannot be tricked into a longer effective period of non-competition by signing a routine non-compete provision.").  This is particularly so where it is Synthes who controls the terms of the subsequent non-compete— including whether it contains a clause providing that the former agreement is superseded—and requires the employee sign the new agreement as a condition of employment.  *See PharMethod, Inc.*, 382 F. App'x at 219 ("Pennsylvania courts recognize 'the inherently unequal bargaining positions' of employer and employee.") (quoting *Reading Aviation Serv., Inc. v. Bertolet*, 311 A.2d 628, 630) (Pa. 1973)).  Synthes has no legitimate protectable business interest in preventing Marotta from competing in his former sales region for more than three years after he ceased to work in that region on Synthes' behalf, and as a result this Court should enter summary judgment in Marotta's favor on all claims that he breached his Arizona Sales Consultant Agreement.

## V.   DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON SYNTHES' CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT III).

Emerge is entitled to partial summary judgment on Synthes' claims that it tortiously interfered with Synthes' contracts with Marotta, Brown, and Powell, and all Defendants are entitled to partial summary judgment on Synthes' claims that they tortiously interfered with

31

Synthes' contracts with its customers and vendors.  Marotta is also entitled to partial summary judgment on claims that he tortiously interfered with Synthes' contractual relationships with other Synthes' employees to the extent that Synthes' claim is barred by the "gist of the action" doctrine.

As is relevant here, in Count III of its Amended Complaint, Synthes alleges that (i) Emerge "tortiously interfered with Synthes' contractual relationships with Marotta, Brown, and Powell by causing Marotta, Brown, and Powell to breach their contractual obligations to Synthes," Am. Compl. ¶ 220; (ii) all Defendants tortiously interfered with Synthes' "contractual relationships with certain vendors" and "with [Synthes'] customers," *id.* ¶¶ 222-223; and (iii) Marotta "tortiously interfered with Synthes' contractual relationships with other current and former Synthes employees," *id.* ¶ 221.  To prevail on these claims, Synthes must prove four elements:  "(1) the existence of a contractual relation; (2) the defendant's purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the defendant's part; and (4) damages resulting from the defendant's conduct." *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476, at *7 (E.D. Pa. Sept. 19, 2012).  Synthes is unable to establish these elements regarding its contracts with Marotta, Brown, and Powell, its contracts with its customers and vendors, and with regard to Marotta's alleged interference with Synthes' contractual relationships with other Synthes' employees.

### A.      There Is No Evidence that Emerge Tortiously Interfered with Marotta's Agreements with Synthes.

There is no evidence that Emerge tortiously interfered with Marotta's agreements with Synthes.  First, in order to tortiously interfere with a contract, the defendant must have had knowledge of the contract.  *See Synthes*, 2012 WL 4205476, at *7 (Pennsylvania courts follow the Restatement (Second) of Torts in defining the tort of tortious interference with contract);

Restatement (Second) Torts § 766 cmt. i (1979) ("To be subject to liability under the rule stated

in this Section, the actor must have knowledge of the contract with which he is interfering and of

the fact that he is interfering with the performance of the contract.  Although the actor's conduct

is in fact the cause of another's failure to perform a contract, the actor does not induce or

otherwise intentionally cause that failure if he has no knowledge of the contract.").

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████ and there is no other evidence

in the record establishing that anyone else at Emerge had knowledge of Marotta's Employment

Innovation Agreement.  ███████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

███████████████████

        Thus, Synthes has failed to adduce evidence that Emerge had knowledge of Marotta's

Employment Innovation Agreement or Sales Consultant Non-Competition Agreement and has

consequently failed to prove that Emerge intentionally induced or caused Marotta to breach those

agreements.  Emerge is therefore entitled to summary judgment on Synthes' claim that Emerge

tortiously interfered with Marotta's Employment Innovation Agreement and Sales Consultant

Non-Competition Agreement.  *See Hill v. Best Med. Int'l, Inc.*, Nos. 07-1709, 08-1404, 09-1194,

2011 WL 5082208, at *19 (W.D. Pa. Oct. 25, 2011) (granting summary judgment based on lack

of evidence to support tortious interference claim because there was no evidence that someone at

the hiring company knew the individual defendants were party to an employment agreement with

their former employer); *Nelson Jewellery Arts Co. v. Fein Designs Co.*, No. 23655, 2007 WL

4554448, at *7 (Ohio Ct. App. Dec. 28, 2007) (finding no evidence of tortious interference with

non-competition agreement because there was no evidence that anyone at defendant company

had any knowledge that employee was subject to a non-competition agreement at former

employer).

Second, even if Emerge had knowledge of the Employment Innovation Agreement and/or

the Sales Consultant Non-Competition Agreement, there is no evidence that Emerge did

anything to induce Marotta to breach his Employment Innovation Agreement or non-competition

agreements with Synthes.  "'[I]nducement' means 'some active persuasion, encouragement, or

inciting that goes beyond merely providing information in a passive way.'"  *Cohen v. Lewis*, No.

03 C 5454, 2004 WL 2481015, at *6-7 (N.D. Ill. Nov. 3, 2004).  Thus, in order to meet its

burden of proof, Synthes would have to show that Emerge "engaged in some form of active

persuasion or encouragement of [Marotta's] breach," which must "amount to more than

[Emerge's] mere knowledge that its conduct was 'substantially certain to result in [Marotta's]

breaking [his] contract with [Synthes]" and "more than a showing that [Emerge] merely created a

condition that opened the way for [Marotta] to breach [his] contracts."  *Id.* at *7 (internal

quotation marks omitted).  Synthes cannot make such a showing.  Emerge did not even exist as a

34

legal entity when Marotta decided to leave Synthes and began taking steps to form what would become Emerge, and there is no evidence that Emerge engaged in any active persuasion or encouragement of Marotta, or that it "deliberately sought out [Marotta] in an attempt to entice him away from [Synthes] in order to get a market advantage." *Hill*, 2011 WL 5082208, at *20; *see also Nelson*, No. 2007 WL 4554448, at *6 (no evidence of inducement to breach confidentiality agreement where employee and new employer were aware of confidentiality agreement but there was no evidence that new employer induced employee to breach it); Restatement (Second) Torts § 766 cmt. n ("*Making agreement with knowledge of the breach.* One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.").[14]

In a recent case with similar facts, this court held that a company in Emerge's position could not be liable for tortious interference with the restrictive covenants of its founder and his former employer. *See Fishkin v. Susquehanna Partners, G.P.*, 563 F. Supp. 2d 547, 587 (E.D. Pa. 2008), *aff'd*, 340 F. App'x 110 (3d Cir. 2009). Just as in this case, *Fishkin* involved a "company formed, owned, and managed by" former employees of the plaintiff company, SIG. *Id.* SIG sued the new company, TABFG, LLC, for tortious interference with the employees' contracts with SIG, claiming that TABFG induced the former employees of SIG to breach their post-employment restrictive covenants with SIG. The court found for TABFG on the tortious interference claim "[b]ecause a company like TABFG can only act through its employees or managers." *Id.* Consequently, "the claim that TABFG induced [the employees] to breach their

---

[14] Synthes' claim that "Emerge and its Board of Directors have permitted Marotta . . . to engage in this tortious conduct, and by refusing to terminate [him], have permitted the continuation of this tortious conduct," Am. Compl. ¶ 225, therefore does not suffice to sustain liability under the doctrine of tortious interference with contract.

contracts is essentially that [the employees], acting through TABFG, induced themselves into breach." *Id.* Thus, "[t]he reasonable inference from these facts is that TABFG did not induce [the employee] to breach his contracts with SIG, but instead that TABFG was formed in order to implement [the employee's] preexisting intention to form a competing trading venture." *Id.* The same is true here:  Synthes' tortious interference claim against Emerge, which was formed by Marotta, is essentially a claim that Marotta, acting through Emerge, induced himself to breach his agreements with Synthes.  Under such circumstances, whether or not there is a finding that Marotta breached his agreements, as this court held in *Fishkin*, Emerge is not liable to Synthes for tortious interference with its contracts with Marotta.  *See id.* ("Imposing liability under such a theory is problematic because it is not clear that the defendant corporation can be said to have induced a breach by a third party under these circumstances.").

**B.     There Is No Evidence that Emerge Tortiously Interfered with Powell's Non-Compete Agreement with Synthes.**

Emerge is entitled to summary judgment on Synthes' claim that Emerge tortiously interfered with Powell's non-compete agreement with Synthes.  As with Marotta, whether or not Powell's actions constituted a breach of his non-compete agreement with Synthes—they did not—there is no evidence that Emerge induced or caused Powell to take those actions. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████     Thus, there is no evidence that Emerge induced Powell to leave

Synthes' employment.  *See Hill*, 2011 WL 5082208, at *20 (granting summary judgment on

claim of tortious interference where there was no evidence that defendant "deliberately sought

out [employee] in an attempt to entice him away from [plaintiff] in order to get a market

advantage").

     Nor is there any evidence that Emerge engaged in any active persuasion, encouragement,

or inciting of Powell to breach his non-compete agreement with Synthes after he began working

for Emerge.  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████     Consequently, there is no evidence that Emerge caused

Powell to breach his non-compete agreement with Synthes; rather the undisputed evidence

reflects that Emerge specifically required Powell to comply with that agreement.  Accordingly,

Emerge is entitled to summary judgment on this claim.  *See Cohen*, 2004 WL 2481015, at *6-7;

37

*Hill*, 2011 WL 5082208, at *20; *Nelson*, No. 2007 WL 4554448, at *6; Restatement (Second) Torts § 766 cmt. n.

### C.  There Is No Evidence that Emerge Tortiously Interfered with Brown's Agreements with Synthes.

There is no evidence that Emerge and Brown have ever had any contact with one another at all, much less any evidence that Emerge induced or caused Brown to breach any agreements that he had with Synthes.  Any contact between Brown and Marotta or Stassen regarding preliminary ideas to form a new company took place prior to the incorporation of Emerge. SUMF ¶ 29



It is undisputed, however, that as of December 2009—the month before Emerge was incorporated and came into legal existence— Marotta, Stassen, and investor Dave Stassen met with Brown to inform him that he could not be part of any company that would be competitive with Synthes for the very reason that he had a non-compete agreement with Synthes that was national in scope.  SUMF ¶ 30 ("Q:  And I understand your testimony that at some point in December of 2009, circumstances led you to not any longer be involved in whatever was being discussed, right?  A:  That's correct.") (Brown testimony).

Brown testified unequivocally that he was not involved in the formation of Emerge in any way:  "I wasn't involved with the formation of Emerge."  SUMF ¶ 29.  He did not work with Marotta or Stassen to create Emerge; he did not work to find shareholders or investors for

Emerge; he did not file articles of incorporation for Emerge; he did not help find a manufacturing partner for Emerge; he did not advertise on behalf of Emerge; and he did not try to find customers for Emerge.  *Id.* ¶¶ 29-30.  He has never worked for Emerge and has not participated in Emerge's operations:

> Q:    Did anyone from Emerge ask you to resign (sic) Synthes in order that you might join Emerge?
>
> A:    No. I guess I don't really understand the point of the question.
>
> Q:    Did you leave Synthes' employment so that you could someday be employed by Emerge?
>
> A:    No, I didn't know what was going to happen in the future. I couldn't predict that.
>
> Q:    ***Have you in any way contributed to Emerge's operations?***
>
> A:    ***No***.

*Id.* ¶¶ 29-30 (emphasis added).  In fact, Brown testified that he did not even know what Emerge was.  *Id.* ¶¶ 29-30 .

It is therefore undisputed that Brown and Emerge did not have any involvement with one another at all, *id.* ¶ 30 ("I haven't had any affiliation.  Q:  With Emerge?  A:  Right.") (Brown testimony), and there is consequently no evidence that Emerge induced or caused Brown to breach any agreement he may have had with Synthes. █████████████████

████████████████████████████████████

████████████████████████████████████

Emerge is therefore entitled to summary judgment on Synthes' claim that Emerge tortiously interfered with any agreements between Synthes and Brown.

### D.    There Is No Evidence that Any Defendant Tortiously Interfered with Synthes' Contractual Relationships with Any of Its Customers or Vendors.

Synthes also makes vague claims that Defendants tortiously interfered "with certain vendors" and "with its customers."  Am. Compl. ¶¶ 222-223.  Even after the extended period of discovery during the preliminary injunction phase of the case, however, Synthes' Amended Complaint does not identify any particular customer and vendor contracts with which Defendants are alleged to have tortiously interfered.  And in the extensive discovery following the Amended Complaint, Synthes has never identified any contracts between Synthes and its vendors or customers that were breached by those parties, much less any contracts that were allegedly breached due to conduct of Defendants.

Because Synthes has failed to identify any customer and/or vendor contracts with which it alleges that Defendants tortiously interfered, it cannot meet its burden of proof to establish the existence of any of the four elements of its tortious interference claim:  (1) the existence of a contractual relation; (2) that Defendants acted with the purpose or intent to interfere with those contracts; (3) that Defendants lacked a privilege or justification for any alleged actions; and (4) any damages.  *See Synthes*, 2012 WL 4205476, at *7.  Defendants are therefore entitled to summary judgment on Synthes' claims that Defendants tortiously interfered with any of Synthes' contracts with its vendors or customers.

In addition, Marotta and Powell are entitled to summary judgment on Synthes' claim that they tortiously interfered with Synthes' contracts with its customers "to the extent Plaintiff alleges that (a) Powell [and Marotta] interfered with Synthes's contractual relationships with customers/prospective customers that Powell [and Marotta] either solicited, serviced, or otherwise had contact with during [their] last three years of employment [with Synthes;] or (b) Powell [and Marotta] improperly used Synthes confidential and proprietary information to

interfere with Synthes's customers' contracts" because those claims would "be subsumed by the

Non-Competition Agreement[s]." *Synthes*, 2012 WL 4205476, at *11.  In ruling on Powell's

motion to dismiss, the Court declined to dismiss this aspect of Synthes' claim against Powell

under the "gist of the action" doctrine because "the factual nature of the allegations [was]

unclear," but specifically noted that resolution of this claim was appropriate "on a post-discovery

motion for summary judgment."  *Id.*  Discovery has now closed, and so Synthes must now

clarify the nature of its factual allegations.  To the extent this portion of its claim rests upon the

allegations that Marotta and Powell solicited Synthes' customers in their alleged restricted

territories and with whom they had prior working relationships, Marotta and Powell are entitled

to summary judgment for the reasons already identified by the Court.  *Id.*

> **E.**  **Marotta Is Entitled to Partial Summary Judgment on Synthes' Claim that He Tortiously Interfered with Synthes' Contractual Relations With Other Synthes Employees.**

Synthes alleges that Marotta tortiously interfered with Synthes' contracts with other

Synthes employees, including Powell and Brown, by, among other things, soliciting those

employees regarding "[e]mployment opportunities with Emerge, Sonoma Orthopedics, or other

companies affiliated with Split Rock Partners, LLC."  Am. Compl. ¶¶ 217, 219-221.  In ruling on

Powell's motion to dismiss Count III against him, this Court ruled that such claims are barred by

the "gist of the action" doctrine; Marotta is similarly entitled to summary judgment on this aspect

of Synthes' tortious interference claim.  *See Synthes*, 2012 WL 4205476, at *9.

The "gist of the action" precludes a tort claim that merely restates a breach of contract

claim, unless there is a separate or independent event giving rise to the tort.  *See Werwinski v.

Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (citing *Phico Ins. Co. v. Presbyterian

Med. Serv. Corp.,* 663 A.2d 753, 757 (Pa. Super. Ct. 1995)); *see also Air Prods. & Chems., Inc.

v. Eaton Metal Prods. Co.,* 256 F. Supp. 2d 329, 349 (E.D. Pa. 2003) *Fid. Nat'l Title Ins. Co. v.

41

*Craven*, No. 12-4306, 2012 WL 5881856 (E.D. Pa. Nov. 21, 2012).  Accordingly, "[w]hen a

plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual

agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen

of it sounds in contract or in tort." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.

Supp. 2d 644, 651 (W.D. Pa. 1999).  "To determine whether the gist of the claim sounds in

contract or in tort, the court must determine the source of the duties allegedly breached." *Fid.

Nat'l Title Inc., Co.*, 2012 WL 5881856, at *6.  "Tort actions lie for breaches of duties imposed

by law as a matter of social policy, while contract actions lie only for breaches of duties imposed

by mutual consensus agreements between particular individuals." *Id.* (quoting *eToll, Inc. v.

Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).  The doctrine bars tort claims:

"(1) arising solely from a contract between the parties; (2) where the duties allegedly breached

were created and grounded in the contract itself; (3) where the liability stems from a contract; or

(4) where the tort claim essentially duplicates a breach of contract claim or the success of which

is wholly dependent on the terms of the contract." *Partners Coffee Co., LLC v. Oceana Servs. &

Prods. Co.*, No. 09-236, 2009 WL 4572911, at *3 (W.D. Pa. Dec. 4, 2009) (quoting *Hart v.

Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)).

     "[T]he non-solicitation of employees provision in the Non-Competition Agreement

[signed by Powell and Marotta] . . . explicitly provides that Powell could not, within one year

after [his] employment with Synthes, 'directly or indirectly solicit any employee of Synthes *to

leave their employment with Synthes, offer any employee of Synthes employment elsewhere or

hire any employee of Synthes to work elsewhere*." *Id.*  Thus, the Court held that "[a]s such, to the

extent the tortious interference with employees claim alleges Powell's improper solicitation of

Synthes employees to leave Synthes and accept employment elsewhere, the alleged conduct falls

squarely within the scope of this provision and must be dismissed under the gist of the action

doctrine." *Id.* Marotta's non-compete agreements contain a similar clause, *see* SUMF ¶ 15, and

for the reasons already given by the Court, Marotta is entitled to summary judgment on Synthes'

claim against Marotta for tortious interference with other Synthes' employees' contracts,

including those of Powell and Brown.

**VI.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON SYNTHES'
         CLAIMS THAT EMERGE AIDED AND ABETTED MAROTTA OR BROWN IN
         THE ALLEGED BREACHES OF THEIR FIDUCIARY DUTIES (COUNT IV).**

Emerge is entitled to summary judgment as to Count IV, which alleges that Emerge aided

and abetted breaches of fiduciary duty. Synthes alleges that "Marotta and Brown breached their

fiduciary duties to Synthes . . . in violation of Pennsylvania common law," Am. Compl. ¶ 229,

and that Emerge aided and abetted those alleged breaches of fiduciary duty, *see* Am. Compl. ¶¶

230-236, but Synthes has no evidence to support its allegations. To prevail on this claim,

Synthes must establish three elements: (i) a breach of a fiduciary duty owed to another, (ii)

knowledge of the breach by the aider or abettor, and (iii) substantial assistance or encouragement

by the aider or abettor in effecting that breach. *See Chi. Title Ins. Co. v. Lexington & Concord

Search & Abstract, LLC*, 513 F. Supp. 2d 304, 318 (E.D. Pa. 2007) (citing *Koken v. Steinberg*,

825 A.2d 723, 732 (Pa. Commw. Ct. 2003)). Synthes has not elicited evidence to establish these

elements, and so the Court should grant summary judgment to Emerge on Count IV. With

respect to Defendants' conduct preparing to compete with Synthes, there was no breach of any

fiduciary duty for all the reasons set out in Part II.A *supra*, and thus there can be no liability for

aiding and abetting a breach as to such conduct.

A.      **There Is No Evidence of Emerge Substantially Assisting or Encouraging Marotta in Any Breach.**

Even if the Court were to find that there is non-preparatory conduct by Marotta that could constitute a breach of his fiduciary duty (there is not), Synthes' claim against Emerge for aiding and abetting Marotta nevertheless fails because Synthes cannot establish the element of substantial assistance or encouragement.  *See, e.g.*, *Thompson v. Glenmede Trust Co.*, No. 92-5233, 1993 WL 197031, at *9 (E.D. Pa. June 8, 1993) (dismissing claim of aiding and abetting against defendants for whom plaintiffs did not allege element of substantial assistance or encouragement).

There is no evidence that Emerge provided any substantial assistance or encouragement to Marotta in effecting any alleged breach of fiduciary duty.  With regard to corporate liability for aiding and abetting, it is not sufficient to allege that those who control the corporation breached their fiduciary duties; the corporation itself must have taken actions "in substantial support thereof."  *Miller v. Dutil (In re Total Containment, Inc.)*, 335 B.R. 589, 611 n.13 (Bankr. E.D. Pa. 2005) ("In essence, [plaintiff] contends that . . . defendants are liable for a breach of fiduciary duty solely because individuals that allegedly control those corporations . . . breached their duties to [plaintiff], not because these corporations took any actions in substantial support thereof.  I find that contention unpersuasive."); *accord Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F. Supp. 1185, 1189 (E.D. Pa. 1989) (holding, with regard to liability for aiding and abetting securities violations, that "mere inaction or silence does not amount to substantial assistance").  Because Synthes cannot proffer any evidence that Emerge took any specific actions in support of Marotta's alleged breach of fiduciary duty—let alone substantially assisted or encouraged him— this Court should grant summary judgment to Emerge on Count IV.

**B.      There Is No Evidence that Emerge Substantially Assisted or Encouraged Brown in Effecting Any Breach of His Fiduciary Duty.**

Synthes' claim that Emerge aided and abetted now-dismissed Defendant Brown's alleged breach of fiduciary duty similarly fails because Synthes cannot establish the requisite element of substantial assistance or encouragement.  *See, e.g.*, *Thompson*, 1993 WL 197031, at *9.  There is no evidence that Emerge ever had any contact with Brown, let alone assisted or encouraged Brown to breach any fiduciary he owed to Synthes.  *See* SUMF ¶¶ 29-30.  ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███  At the time that Emerge came into existence—and, therefore, became capable of aiding and abetting Brown in effecting any alleged breach of fiduciary duty—Brown was no longer involved with Emerge in any respect.  And after Emerge was formed, Brown and Emerge had no involvement with one another.  SUMF ¶¶ 29-30.  If Emerge had no contact with Brown, Emerge could not provide Brown with the substantial assistance or encouragement that is a required element of Synthes' claim.  The Court should therefore grant summary judgment to Emerge on Count IV.

**VII.    DEFENDANTS ARE ENTITLED TO SUMMARY JDUGMENT ON SYNTHES' CLAIM THAT DEFENDANTS VIOLATED THE COMPUTER FRAUD AND ABUSE ACT (COUNT VI).**

Defendants are entitled to summary judgment as to Count VI, in which Synthes alleges that Defendants violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (2012).  *See* Am. Compl. ¶¶ 250-259.  To establish a civil action against an employee under CFAA, an employer must prove that the employee knowingly accessed a protected computer "without authorization," or that he or she exceeded that authorization, and as a result caused

damage or loss of at least $5,000.  18 U.S.C. § 1030.  Synthes cannot establish the elements of its

claim, and the Court should grant summary judgment to Defendants on Count VI.

A.       **Synthes' Failure to Prove Cognizable Harm Requires that this Claim
Be Dismissed.**

The CFAA is a narrowly-drawn statute.  Originally enacted to prevent computer hacking,

the statute penalizes only the unauthorized access of computers.  The category of damages

permitted by the statute is equally restricted.  As a jurisdictional matter, a plaintiff must show a

loss of $5,000 or more during a one-year period.  18 U.S.C. § 1030(a)(5)(B).  "[L]oss" is defined

by the statute as "any reasonable cost to any victim, including the cost of responding to an

offense, conducting a damage assessment, and restoring the data, program, system, or

information to its condition prior to the offense, and any revenue lost, cost incurred, or other

consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

"[D]amage" is defined as "any impairment to the integrity or availability of data, a program, a

system, or information."  18 U.S.C. § 1030(e)(8).  "[T]he alleged 'loss' must be related to the

impairment or damage to a computer or computer system."  *Sealord Holdings, Inc. v. Radler*,

No. 11-6125, 2012 WL 707075, at *4 (E.D. Pa. Mar. 6, 2012) (internal quotation marks

omitted); *Eagle v. Morgan*, No. 11-4303, 2011 WL 6739448, at *8 (E.D. Pa. Dec. 22, 2011)

(same).[15]  "Claims of lost business opportunities, damaged reputation, loss of assets, and other

missed revenue, however, do not constitute 'loss.'"  2012 WL 707075, at *4.  Accordingly, "'[a]

compensable 'loss' under the CFAA . . . is the cost of remedial measures taken to investigate or

repair the damage to the computer, or the loss is the amount of lost revenue resulting from a

plaintiff's inability to utilize the computer while it was inoperable because of a defendant's

---

[15] A loss of less than $5,000 in any one-year period also is not cognizable.  18 U.S.C. § 1030(a)(4).

malfeasance.'" *Id.* at *5 (quoting *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio,* No. 09-2751, 2011 WL 6088611, at *4-5 (E.D. Pa. Dec.7, 2011)).

At the motion to dismiss stage, this Court noted the damage allegations of the Amended Complaint were "somewhat vague and fail[ed] to precisely identify what damage Synthes suffered to its computer system." *Synthes*, 2012 WL 4205476, at *20.  But the Court concluded that the allegations "just skirt over the pleading lines defined by *Twombly.*"  *Id.*  Now, at the summary judgment stage, Synthes must produce actual evidence of statutorily-cognizable loss. Synthes has failed to do so.  It has failed to produce evidence of harm, let alone the type of harm cognizable under the statute.  It has failed to produce any documents suggesting its computer system was damaged in some cognizable way under the CFAA.  And it has further failed to offer any expert opinions addressing any such harm, and no Synthes fact witness has testified to such harm.  The jurisdictional predicate for the Court's review of issues arising under the CFAA is, therefore, missing.  For this reason alone, the Court should grant summary judgment on Count VI in favor of Defendants.

> ### B.   Defendants Marotta and Powell Did Not Violate the Substantive Provisions of the CFAA.

The Amended Complaint alleges that beginning in "the summer of 2010, Powell and Marotta improperly acquired, used, and disclosed Synthes' confidential and trade secret information "including, upon information and belief, information they acquired by directing, including, and encouraging others to access Synthes' computer systems."  Am. Compl. ¶ 152. None of these allegations are sufficient to sustain liability for Marotta or Brown under the CFAA.

1.      **Marotta did not violate the CFAA while employed at Synthes.**

Synthes alleges that on some occasions, while he was still employed at Synthes, 

But "the CFAA prohibits unauthorized *access* to information rather than unauthorized *use* of such information." *Synthes*, 2012 WL 4205476, at *16 (emphasis in original) (citing 18 U.S.C. § 1030(a)(4)).

An employee who lawfully accesses a computer during his employment but misuses the information gained to aid a competitor is therefore not liable under the CFAA.  *See* 2012 WL 4205476, at *18; *Lewis-Burke Assocs. LLC v. Widder*, 2010 725 F. Supp. 2d 187 (D.D.C. 2010) (employee did not access computer without authorization when he took proprietary and confidential information and solicited clients for a competing business, because he was at the time authorized to obtain data from his employer's computer).  There is no evidence in the record that Marotta did not have lawful access to his work computer while employed by Synthes, and Synthes does not contend otherwise.  Rather, Synthes alleges that Marotta exceeded his authorized access, first by violating "Synthes' written employment, ethics and computer usage and IT security policies and Synthes' employment agreements," Am. Compl. ¶ 253, and then by "misappropriating" the computer information*, id*. ¶ 254.  But those arguments are both irrelevant and unavailing with respect to Marotta.

First, the CFAA does not incorporate any "use" restrictions.  *See Dresser-Rand Co. v. Jones*, No. 10-2031, -- F. Supp. 2d --, 2013 WL 3810859, at *9 (E.D. Pa. July 23, 2013)

(rejecting argument that employees exceeded their authorized access when they violated the firm's computer use policies and Code of Conduct, concluding that those policies governed "*use* not *access*.") (emphases in original); *see also United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc) (CFAA does not incorporate corporate use restrictions).

Second, "[w]hatever happens to the data subsequent to being taken from the computers . . . is not encompassed in the purview of the CFAA." *Dresser-Rand*, 2013 WL 3810859, at *4. *See Synthes*, 2012 WL 4205476, at *16 (rejecting argument that employee exceeded authorized access because he used the information in an improper manner); *Robinson v. New Jersey*, No. 11-6139, 2013 WL 3894129 (D.N.J. July 26, 2013) (noting that "an employee who may access a computer by the terms of his employment is authorized to use that computer for purposes of [the CFAA] even if his purpose in doing so is to misuse or misappropriate the employer's information.") (internal quotation marks omitted).

There is no dispute that Marotta had lawful access to his computer while an employee at Synthes. Accordingly, Synthes cannot establish that he violated the CFAA. For this reason, the Court should grant Marotta summary judgment on Count VI as to any claims that Marotta, while employed at Synthes, improperly accessed information from his computer.

### 2. Neither Marotta Nor Powell Violated the CFAA While Employed at Emerge.

Synthes alleges that Marotta and Powell, after leaving Synthes, acquired information "by directing inducing, and encouraging others to access Synthes' computer systems." Am. Compl. ¶ 152.[16] The Court addressed this issue (with respect to Powell only) at the motion to dismiss

---

[16] Synthes represented to the Court in its May 29, 2012 Memorandum of Law in Opposition to Defendant Charles Q. Powell's Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 68), that "Synthes' CFAA claim focuses on Powell's and Marotta's unlawful accessing of Synthes' data after their employment, including inducing then current Synthes employees to funnel to them Synthes' confidential information to

stage. *Synthes*, 2012 WL 4205476, at *17-18. In that ruling, the Court stated that it did not, "in any way, opine on the ultimate merit of this claim," *id.* at *20, but simply "determin[ed] that the CFAA claim should not be dismissed at this early stage of litigation." *Id.* In light of the facts now adduced in discovery and certain new case law construing the CFAA, we respectfully invite the Court to revisit the issue on summary judgment. Synthes' claim fails both as a matter of law and on the facts.

As to the facts, discovery has revealed no evidence that Powell ever solicited any other individual for information from the Synthes computer system.[17] Accordingly, Powell is entitled to summary judgment on this claim.

Any claim based on inducing others to access a computer that they are fully entitled to access is not cognizable under the CFAA for several reasons. We recognize that the Court found this argument unpersuasive at the time of Powell's motion to dismiss, but we respectfully invite the Court to reconsider its previous analysis. First, neither the CFAA's language nor its legislative history offers guidance on the meaning of the statutory terms "access" and "unauthorized access" in the context of indirect access to a computer by a former employee. The Third Circuit, as well, has not opined on the question. To the extent there is ambiguity in the statute, the rule of lenity requires that the statute be viewed favorably to Defendants and that the

---

which they would not otherwise have had access." Dkt. 68 at 17. Thus "Synthes' CFAA claim is not based on conduct during Powell's employment" with Synthes. *Id.*

[17]  *See Synthes*, 2012 WL 4205476, at *18.

terms "without authorization" or "exceeding authorization" be read narrowly.[18]   Second, the civil

provisions of the CFAA do not provide for aiding and abetting liability.  *See Flynn v. Liner*

*Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. 3:09-CV-0042, 2011 WL

2847712 (D. Nev. July 15, 2011) (dismissing CFAA claim with prejudice because "aiding and

abetting civil liability does not exist under § 1030").  Finally, Synthes has not demonstrated that

any of the Synthes employees who allegedly accessed information that was subsequently sent to

Marotta lacked lawful access to their Synthes computers.  This is not a case, therefore, where a

defendant has induced a Synthes employee to access a computer that he or she was otherwise not

authorized to use.   When the employee's computer access is lawful under the statute, the

individual who induced him to send allegedly confidential material cannot be deemed to have

violated the statute.

A case not considered in this Court's ruling on Powell's motion to dismiss, but one which

is on point and persuasive, is the Ninth Circuit's decision in *United States v. Nosal*, 676 F.3d 854

(9th Cir. 2012) (en banc).  In that case, defendant Nosal left his employer, Korn/Ferry, an

executive search firm, and then asked former colleagues still employed at the firm to download

documents from a confidential firm data base and send this information to him.  The employees

were authorized to access information but violated a corporate policy by disclosing the

information to Nosal.  *Id.* at 856.  Nosal was indicted, *inter alia*, on charges of conspiring with

his former co-workers to obtain secret source lists, names, and contact information from the

firm's confidential data base, information that he subsequently used to operate a competing

business.  The government specifically accused Nosal of criminally aiding and abetting his co-

---

[18] Although this is a civil case, the rule applies because the same conduct that triggers penalties under the
civil provisions of the CFAA would also trigger the criminal provisions.  *See Dresser-Rand v. Jones*,
2013 WL 3810859, at *6 (recognizing application of the rule); *United States v. Nosal*, 676 F.3d at 863
(same).

workers in "exceed[ing their] authorized access to the Korn/Ferry database." *Id*. The Ninth

Circuit affirmed the dismissal of the CFAA charges against Nosal because the Korn/Ferry

employees had not exceeded their authorized access, but had lawfully accessed the documents.

The court did not suggest that, under these circumstances, Nosal could be liable for soliciting and

encouraging these activities. *See also WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d

199, 207 (4th Cir. 2012) ("because [the employee's] conduct failed to violate the CFAA, Arc

cannot be [held] liable under the statute for any role that it played in encouraging such conduct"),

*cert. denied*, 133 S. Ct. 831 (2013).

      Accordingly, the Court should grant summary judgment to Marotta and Powell on Count

VI to the extent that Synthes' allegations relate to Defendants' alleged inducing of Synthes

employees to access information.[19]

## VIII.   THERE IS NO EVIDENCE OF ANY TRESPASS TO CHATTELS (COUNT IX).

      Defendants are entitled to summary judgment as to Count IX, which alleges trespass to

chattels.

      Synthes' claim for trespass to chattels against Defendants Marotta, Powell, and Emerge is

based on the allegation that Defendants put Emerge product into or removed or changed Synthes'

labels on Synthes Inventory Management System cabinets ("SIMS cabinets") that were on loan

or consignment from Synthes at hospitals.[20] The Court previously acknowledged that this claim

---

[19] Synthes brings the CFAA claim against all Defendants, including Emerge. Because the CFAA claim must be dismissed as to Marotta and Powell, the claims as to Emerge must be dismissed as well. *See Dresser-Rand*, 2013 WL 3810859, at *10 ("Dresser-Rand brings the CFAA claim against all Defendants, including Global Power. Dresser-Rand argues that Global Power is implicated under the CFAA through Jones, King and Wadsworth, working as agents of Global Power. Because the CFAA claim cannot survive against any of these Defendants, it cannot survive against Global Power.").

[20] In the briefing on Powell's motion to dismiss this claim, Synthes clarified and limited the claim to those SIMS cabinets that Synthes loaned or consigned to medical facilities, rather than SIMS cabinets over which Synthes retained no ownership interest. *Synthes*, 2012 WL 4205476, at *36 (citing Pl.'s Resp. Opp'n Powell Mot. Dismiss 40-41).

"stands on somewhat tenuous grounds," but afforded Synthes a chance to substantiate its claims through discovery. *Synthes, Inc. v. Emerge Med., Inc.*, 2012 WL 4205476, at *36. Synthes has failed to do so. Trespass to chattels is the intentional "(a) dispossessing another of their chattel, or (b) using or intermeddling with chattel in the possession of another." *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 650 (E.D. Pa. 2007). Pennsylvania courts look to the Restatement in evaluating trespass to chattels claims. *See, e.g.*, *Synthes*, 2012 WL 4205476, at *36. "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." Restatement (Second) of Torts § 218 (1965). Someone "who would otherwise be liable for another for trespass to a chattel or for conversion is not liable to the extent that he has acted with the consent of a third person with power to give a consent effective as to the other." *Id.* § 253.

Synthes has failed to produce evidence to support its trespass to chattel claims, and summary judgment for Defendants is therefore warranted. First, there is no evidence, or even an allegation, that Marotta himself accessed any SIMS cabinets. Marotta is therefore entitled to summary judgment on Synthes' trespass claim.

Second, although Powell, acting in the scope of his employment for Emerge, did place Emerge products and dividers in SIMS cabinets at certain medical facilities, SUMF ¶ 34, Synthes has not adduced any evidence that it owned the particular SIMS cabinets at issue. Moreover, Powell, as the corporate representative for Emerge, testified that Emerge accessed the SIMS cabinets and placed Emerge products in them only after receiving authorization from the

particular medical facility to do so.  *Id.*  Thus, even if Synthes could establish that some, or even

all, of the SIMS cabinets that Emerge accessed were owned by Synthes, Emerge and Powell are

nevertheless not liable to Synthes.  If a property owner loans or consigns a chattel to a bailee and

prohibits the bailee from authorizing a third party to access the chattel, but the bailee

nevertheless does permit a third party to access the chattel, the third party is not liable for

trespass unless the third party was aware of the owner's original restriction.  Restatement

(Second) of Torts § 253 & cmt c.  Because the undisputed evidence shows that Emerge, acting

through Powell, acted with the consent of the hospitals in possession of the SIMS cabinets and

was not aware of any particular restriction preventing it from touching the SIMS cabinets, SUMF

¶ 34, Emerge, and likewise Powell, are entitled to summary judgment on Synthes' claim for

trespass to chattels.

Third, there is no evidence that Emerge's access to the SIMS cabinets through its

employee Powell dispossessed Synthes of its property, impaired Synthes' property "as to its

condition, quality, or value," or deprived Synthes of its use of its property "for a substantial

time."  Restatement (Second) of Torts § 218.  For these reasons, Emerge, Powell and Marotta all

are entitled to summary judgment on Synthes' claim for trespass to chattels.

## IX.   PLAINTIFFS' CLAIMS OF FRAUD ARE BARRED BY THE GIST OF THE ACTION DOCTRINE AND THERE IS NO EVIDENCE OF FRAUD IN CONNECTION WITH THIS LITIGATION (COUNT XI).

Defendants are entitled to summary judgment as to Count XI, which alleges fraud.

Synthes alleges that Marotta[21] defrauded Synthes "during and after [his] employment with

Synthes by misappropriating Synthes' resources, by materially misrepresenting [his] compliance

---

[21] Although Count XI asserts that the claim of fraud is being brought against all of the defendants, Plaintiff subsequently dismissed the claim with respect to Powell.  *See Synthes*, 2012 WL 4205476, at *6 n.3.

with [his] fiduciary and contractual obligations to Synthes, by misrepresenting and omitting [his] intention to compete with Synthes (and Marotta's intention to do so immediately after his resignation), and by misrepresenting and omitting [his] conception, development, and operation of Emerge." Am. Compl. ¶ 299.  Synthes further alleges that it "reasonably relied on Marotta's . . . misrepresentations and omissions." *Id.* ¶ 300.  Synthes alleges further that Emerge and Marotta "have also fraudulently concealed and/or failed to preserve physical and electronic documents and information highly relevant to Synthes' claims in this matter." *Id.* ¶ 301.

To prevail on these claims, Synthes must establish six elements: (1) a representation; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  *See Aubrey v. Sanders*, 346 F. App'x 847, 849 (3d Cir. 2009).  As this Court has noted, courts are generally cautious about permitting tort recovery on contractual breaches, *see Fid. Nat'l Title Ins. Co.*, 2012 WL 5881856, at *6, and the Court should not do so here, for several reasons.  First, Synthes' fraud claims are inextricably intertwined with Defendants' purported contractual obligations.  Accordingly, the gist of the action doctrine bars these claims.  Second, Synthes has uncovered no evidence that would support its claims of fraud in connection with the physical and electronic evidence in this case.  Synthes does not (and cannot) identify any relevant statement or representation by Emerge or Marotta in this regard, much less one that is knowingly false or intentionally misleading, and the Court should grant Defendants summary judgment on Count XI.

## A.    Synthes' Fraud Claim Against Marotta Is Barred by the Gist of the Action Doctrine.

Synthes' claim of fraud against Marotta is based on Marotta's conduct in forming and operating Emerge—the same conduct that constitutes the alleged breach of his contractual duties. *See supra* Part II.  In support of its breach of contract claims, Synthes alleges that Marotta signed several contracts that prevented the disclosure of certain confidential information.  *See* Am. Compl. ¶ 40 (alleging a Non-Competition Agreement signed on June 25, 2004); *id.* ¶ 41 (alleging a Non-Disclosure Agreement signed on June 25, 2004); *id.* ¶ 48 (alleging a Non-Competition Agreement signed on September 23, 2007).  Synthes then alleges, in Count II, that Marotta breached these contracts in precisely the same manner that is alleged under Count XI (Fraud).  In Count XI, Synthes alleges that Marotta materially misrepresented his compliance with his fiduciary and contractual obligations to Synthes.  *See* Am. Compl. ¶ 299.  The alleged misrepresentation in this allegation is "entirely embodied in the terms" of Marotta's above-referenced contracts.  *See Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176  at *12 (E.D. Pa. Nov. 30, 2010).  Count XI further alleges that Marotta misrepresented and omitted his "intention to compete with Synthes" immediately after his resignation as well as his conception, development, and operation of Emerge.  *See* Am. Compl. ¶ 299.  These allegations are precisely the ones Synthes lodges in its breach of contract claims. For example, in Count II (Breach of Contract Under the Non-Competition and Non-Disclosure Agreements), Synthes alleges that Marotta was "contractually prohibited from competing with Synthes during [his] employment and for a period of one year after terminating [his] employment with Synthes."  *Id.* ¶ 192.  Count II further alleges that Marotta breached his contracts by "providing Synthes' sensitive, confidential, proprietary, or trade secret information to Emerge." *Id.* ¶ 202.

56

Pennsylvania law has "not carved out a categorical exception for fraud, and [has] not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself." *eToll*, 811 A.2d at 19. Rather, where "the duties in question are intertwined with contractual obligations," the claim sounds in contract. *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.,* No. 06-3957, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006). In this case, Synthes' fraud claims are explicitly, and inextricably, intertwined with the contract claims, and the Court should find that the gist of the action is contractual, and the fraud claim should be dismissed. *See Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548-49 (3d Cir. 2010); *see also Williams v. Hilton Grp. PLC,* 93 F. App'x 384 (3d Cir. 2004) (per curiam) (affirming dismissal of fraud claims involving breach of an exclusive negotiation agreement that the defendant never intended to honor); *Hart v. Arnold*, 884 A.2d 316, 341 (Pa. Super. Ct. 2005) (affirming dismissal of fraud-in-the-performance claim that "essentially duplicate[d] . . . breach of contract claim [and its] success . . . [wa]s wholly dependent on the terms of a contract") (internal quotation marks omitted).

### B.   There Is No Evidence of Fraud in Connection with the Litigation of this Case.

Synthes also alleges that Emerge and Marotta have "fraudulently concealed and/or failed to preserve physical and electronic documents and information highly relevant to Synthes' claims in this matter," as evidenced by the fact that Synthes supposedly received the documents through third party discovery in this litigation. Am. Compl. ¶ 301. This claim, too, should be dismissed.

First, Synthes fails to show that Pennsylvania law recognizes an independent cause of action for fraud based on alleged spoliation in litigation. Second, even assuming such a cause of action exists, the gist of the action doctrine precludes this fraud claim against Marotta because

Synthes also alleges that Marotta "breached [his] contractual non-disclosure obligations with respect to Synthes' confidential information by failing to return all confidential information and property to Synthes at the termination of their employment with Synthes, including the documents produced by Marotta . . . during discovery in this litigation." *Id.* ¶ 201.  Third, Synthes fails to identify any particular document it contends was concealed or not preserved and does not allege any misrepresentation, by Marotta or Emerge, relating to the alleged fraudulent concealment and/or failure to preserve, and the evidence in this case does not reflect any such misrepresentation.[22]  Because Synthes cannot meet the first—or any other—element of fraud here, the Court should dismiss this claim.

## X.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON SYNTHES' CLAIM FOR CIVIL CONSPIRACY (COUNT XII).

Defendants are entitled to summary judgment as to Count XII, which alleges civil conspiracy.

### A.    There Is No Evidence that the Purpose of the Alleged Conspiracy Was To Injure Synthes.

It is undisputed that "the Defendants' alleged improper actions were taken for the *purpose* of economically benefitting them in their new endeavor" and had, at most, "the side effect of affecting Synthes's operations and profitability," *Synthes*, 2012 WL 4205476, at *37 (emphasis in original), and all Defendants are entitled to summary judgment in their favor on Synthes' claim for civil conspiracy.  As this Court has previously stated:

> To state a cause of action for civil conspiracy, the plaintiff must demonstrate: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by

---

[22] A Synthes ediscovery expert was permitted to do a forensic examination of an Emerge computer.  The report of that expert did not suggest any fraudulent concealment or intentional failure to preserve materials relevant to the litigation.  In fact, by Synthes' own allegation, it has actually received in discovery the documents that Marotta or Emerge allegedly failed to preserve, Am. Compl. ¶ 301.

unlawful means or for an unlawful purpose; (2) an overt act done
in pursuance of the common purpose; and (3) actual legal damage.

*Id.* at \*36 (quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir.

2003)).  Under Pennsylvania law, "'malice, *i.e.*, an intent to injure, is essential in proof of a

conspiracy.'"  *Id.* at \*37 (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa.

1979)).  "As malice can only be found when the sole purpose of the conspiracy is to injure the

plaintiff, a showing that a person acted for professional reasons, and not solely to injure the

plaintiff, negates a finding of malice."  *Id.* (citing *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp.

2d 378, 419 (E.D. Pa. 2009)).

"The Amended Complaint specifically alleges that the common purpose of the

conspiracy was to 'found, develop, and operate a business that unlawfully competes with

Synthes.'"  *Id.* (quoting Am. Compl. ¶ 307).  This Court also found that the Amended Complaint

clearly demonstrated that Defendants intended "to develop a new company which would provide

financial benefit to those participating" and that any competitive injury to Synthes was

"incidental" to that primary purpose.  *Id.*  On that basis, the Court dismissed the conspiracy claim

as to Powell, and subsequent discovery has revealed nothing contrary to the Court's prior

decision.  In short, there is no evidence that the true intent of Defendants' collective action—

assuming that Plaintiff could establish such collective intent—was "solely to injure [Synthes]."

*Id.*

### B. Under the Intracorporate Conspiracy Doctrine, Emerge Cannot Conspire with Its Own Employees.

Synthes' conspiracy claim also fails as between Emerge, Marotta, Powell, and Stassen

under the intracorporate conspiracy doctrine.[23]  Marotta, Powell, and Stassen are (or were) all

---

[23] Former Defendant Stassen has been dismissed from the case; the Court dismissed Defendant Powell from this count of the Amended Complaint.  *Synthes*, 2012 WL 4205476, at \*37.  We reference

employees of Emerge.[24]  "[A]gents of an entity cannot conspire with their employer."  *Parker v. Learn Skills Corp.*, 219 F. App'x. 187, 190 (3d Cir. 2007) (per curiam) (citing *Gen. Refractories Co.*, 337 F.3d at 313-14) (dismissing conspiracy claim between employer and employee).  Nor can employees of the same company, acting in the course of their job responsibilities, conspire with one another.  *See Lee v. Se. Pa. Transp. Auth.*, 418 F. Supp. 2d 675, 681 (E.D. Pa. 2005) ("An employer and its officers and employees acting in the scope of their duties constitute one legal person for purposes of conspiracy law, and therefore cannot conspire together.").  To the extent that Defendants Emerge and Marotta are alleged to have conspired with each other, Powell, and/or Stassen, such a conspiracy is a legal impossibility, and the Court should grant them summary judgment.

### C.        There Is No Evidence Emerge Conspired with Former Defendant Brown.

Synthes identifies former Defendant Brown as the only other alleged party to the conspiracy.  But as has previously been described, *see supra* Part V.C, there is no evidence that Emerge ever had any contact with Brown, much less conspired with him to engage in any activity.  To establish a conspiracy between Emerge and Brown, Synthes must provide evidence of some agreement between Emerge and Brown to act against Synthes.  *See, e.g.*, *Brown v. Beard*, No. 07-637, 2011 WL 1085890, at *22 (W.D. Pa. Mar. 21, 2011) ("[T]o successfully counter the Defendants' motion for summary judgment, Plaintiff must provide specific evidence establishing that the Defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose.").  ████████████████████████████████

---

defendants Stassen and Powell in connection with this count only to the extent that Emerge or Marotta may be alleged to have conspired with them.

[24] Although Defendant Powell was not employed by Emerge at the time of the formation of the company, he was employed by Emerge at the time of any underlying allegedly tortious conduct of "operat[ing] a company that would wrongfully compete" with Synthes.  Am. Compl. ¶ 304.  It is undisputed that Powell was not involved in the development or formation of Emerge.  SUMF ¶ 31.

████████████████████████████████████  Brown did

not participate in any activities relating to what would become Emerge after December 15, 2009;

he had no affiliation with the company and, in fact, no knowledge of what it became or how it

operated.  SUMF ¶¶ 29-30.  It is also undisputed that Emerge did not come into existence until

January 13, 2010—after Brown was cut off from participation.  SUMF ¶ 7.  At the time Emerge

came into existence—and, therefore, became theoretically capable of conspiring—Brown no

longer had any involvement in any of its activities.  Accordingly, to the extent that Plaintiff

alleges that Emerge conspired with Brown, Emerge is entitled to summary judgment.[25]

## **CONCLUSION**

For all the foregoing reasons, Defendants are entitled to partial summary judgment on

Plaintiffs' claims discussed herein.

---

[25] Brown's clear and intentional separation from the planning discussions that led to Emerge's formation constitutes a withdrawal from any conspiracy and means that Emerge cannot be liable for any supposedly concerted conduct with Brown.  *See Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) ("In the context of a business conspiracy, one in which the conspiracy is carried out through the regular activities of an otherwise legitimate business enterprise, the law has given effect to a conspirator's abandonment of the conspiracy only where the conspirator can demonstrate that he retired from the business, severed all ties to the business, and deprived the remaining conspirator group of the services which he provided to the conspiracy."); *see also United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992) ("[A] defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from a conspiracy.").

Dated:  November 18, 2013          Respectfully submitted,

WILLIAMS & CONNOLLY LLP

 /s/ Enu Mainigi
Enu Mainigi
Alex G. Romain
Jennifer G. Wicht
Daniel M. Dockery
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel Admitted Pro Hac Vice for
Defendants Emerge Medical, Inc., John
Marotta and Charles Q. Powell*

Andrew C. Efaw, Esquire
Sean G. Saxon, Esquire
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street
Suite 4500
Denver, Colorado 80202-5647
Telephone: (303) 244-1800

*Counsel Admitted Pro Hac Vice for
Defendants Emerge Medical, Inc., John
Marotta and Charles Q. Powell*

John P. McShea
MCSHEA LAW FIRM, P.C.
Centre Square, West Tower
1500 Market Street, 40th Floor
Philadelphia, PA 19102
Telephone: (215) 599-0800

*Counsel for Defendants Emerge Medical, Inc.,
John Marotta and Charles Q. Powell*

## <u>CERTIFICATE OF SERVICE</u>

I, Suzanne Salgado, hereby certify that on December 4, 2013, I caused a true and correct copy of the foregoing Memorandum of Points and Authorities in Support of Defendants Emerge Medical, Inc., John P. Marotta, and Charles Q. Powell's Motion for Summary Judgment to be served via first-class mail to the following counsel:

Anthony B. Haller, Esquire
Michael P. Broadhurst, Esquire
Kevin N. Passerini, Esquire
Blank Rome LLP
One Logan Square
18th and Cherry Streets
Philadelphia, Pennsylvania 19103-6998

*Counsel for Plaintiffs*

/s/ Suzanne Salgado
Suzanne Salgado